# EXHIBIT A

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8300
*Attorneys for plaintiff*

Wendy J. Lindstrom, Esq.
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    **Commercial Division**

ATHENA ART FINANCE CORP.,

Plaintiff,

   -against-    **Summons With Notice**

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT    Index No._____
ENTITLED HUMIDITY, 1982, *In Rem*,

Defendant.

------------------------------------------------------------------------X

**To the Following Interested Persons:**

> SATFINANCE INVESTMENT LIMITED
> BORIS PESKO
> ALEKSANDAR PESKO
> DELAHUNTY FINE ART LTD.
> DAMIAN DELAHUNTY
> INIGO PHILBRICK LIMITED
> INIGO PHILBRICK
> 18 BOXWOOD GREEN LIMITED
>
> AND TO ANY PERSON WHO MAY CLAIM
> AN INTEREST IN THE *IN REM* DEFENDANT.

Please take notice that plaintiff ATHENA ART FINANCE CORP. hereby commences

this action to foreclose its lien upon, quiet title to, and to obtain an order permitting it to conduct

a public or private sale of the above-referenced *in rem* defendant – to wit, that CERTAIN

ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, *In Rem*.

**1**

You, the aforesaid interested persons, are hereby notified that should you fail to appear and state a claim to the *in rem* defendant, a judgment will be entered against the *in rem* defendant on default on the cause of action to foreclose its lien, pursuant to the Uniform Commercial Code, based upon the following:

> On or about March 31, 2017, plaintiff loaned certain moneys to borrower, 18 Boxwood Green Limited, on a debt guaranteed by Inigo Philbrick Limited and Inigo Philbrick and collateralized in part by the defendant in rem, which loan was defaulted upon, and as a result thereof, and pursuant to the loan agreement of March 31, 2017, and as amended thereafter, plaintiff ATHENA ART FINANCE CORP., having possession of the *in rem* defendant, became entitled to sell the *in rem* defendant at public or private sale.

As you, the aforesaid interested persons, have served notice upon plaintiff that you believe that you have legally enforceable interests to the *in rem* defendant, you are hereby invited to interpose your claim in this *in rem* proceeding.

Accordingly, you, the aforesaid interested persons, are hereby summoned to appear in this action by serving a pleading on counsel for plaintiff, address below, within 20 days after service of this summons (not counting the day of service), or within 30 days after service is complete if the summons is not delivered personally to you within New York State, such pleading to identify whether you claim an interest in the subject artwork and the basis or bases for such claim.

Plaintiff designates the Supreme Court of the State of New York, County of New York, 60 Centre Street, New York, New York as the place of trial. The basis of this designation is that the *res* – to wit, the subject artwork is presently within the jurisdiction of the County of New York. If you fail to interpose a pleading setting forth whether you claim an interest in the subject artwork and the basis or bases therefor, a judgment by default will be taken, establishing that

**2**

plaintiff ATHENA ART FINANCE CORP. is vested with the right to dispose of the *in rem* defendant at public or private sale forthwith.

Plaintiff designates this for Commercial Division assignment, as the *in rem* defendant has a value greatly in excess of the $500,000 monetary threshold of the Commercial Division, exclusive of punitive damages, interests, costs, disbursements and counsel fees claimed, and the claim arises under the Uniform Commercial Code. (See Uniform Rule 202.70(a), and 202.70(b)(2)).

WHEREFORE, plaintiff ATHENA ART FINANCE CORP. demands that it be permitted to sell that CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, the *in rem* defendant herein, and that any interested person, having had an opportunity to intervene and state a claim thereto, is foreclosed from further claim against the *in rem* defendant.

Dated: New York, New York
      June 2, 2020

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

By: *Wendy J. Lindstrom*

Wendy J. Lindstrom
Counsel for plaintiff Athena Art Finance Corp.
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

Service List Attached:

**3**

**Service**

SATFINANCE INVESTMENT LIMITED
BORIS PESKO and
ALEKSANDER PESKO
c/o Derek J.T. Adler, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 17th floor
New York, New York 10004-1482
(212) 837-6086
derek.adler@hugheshubbard.com

INIGO PHILBRICK LIMITED
INIGO PHILBRICK
18 BOXWOOD GREEN LIMITED
17 Grosvenor Square, Flat 3
London W1K 6LB, England

– and –

c/o Brebners, as agent for service of process
for 18 Boxwood Green Limited
30 Shaftesbury Ave, London, UK W ID SAR;
london@brebners.com

DELAHUNTY FINE ART LTD.
DAMIAN DELAHUNTY
c/o Daniel McClean, Esq.
Cypress LLP
11111 Santa Monica Boulevard, Suite 500
Los Angeles, California 90025
(424) 313-5674
dmcclean@cypressllp.com

**4**

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8300
*Attorneys for plaintiff*

Wendy J. Lindstrom, Esq.
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------X     **Commercial Division**

ATHENA ART FINANCE CORP.,

                                             Plaintiff,

          -against-                                                             **Verified Complaint**

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT                  Index No. 652258/2020
ENTITLED HUMIDITY, 1982, *In Rem*,

                                             Defendant.

-------------------------------------------------------------------------X

          COMES NOW plaintiff Athena Art Finance Corp. ("Athena"), a specialty lender engaged

in the business of providing loans secured by high value fine art.  Athena made a loan to a

borrower that was collateralized by the above-referenced *in rem* defendant, a painting known as

"Humidity" by Jean-Michel Basquiat, 1982 (the "Basquiat"). As this Court is aware, that loan is

in default. Athena now brings this verified complaint to sell the Basquiat in order to satisfy this

Court's previously entered $14,306,800.47 judgment in Athena's favor.  By and through its

attorneys, Mazzola Lindstrom, LLP, Athena alleges therefor upon information and belief as

follows:

1

**5**

## Nature of Claim

1.      This is an *in rem* action to foreclose Athena's lien, and to obtain an order permitting Athena to sell the Basquiat, an oil painting with dimensions of 96" x 72", which is fairly and accurately reproduced here:



2.      The Basquiat is currently in the possession of Athena at a secure facility in New York, within the jurisdiction of the Supreme Court of the State of New York for the County of New York.

3.      This action arises out of a loan and security agreement, as amended from time to time between Athena and 18 Boxwood Green Limited ("Boxwood") (the "LSA"), an entity which is 100% owned by Inigo Philbrick ("Philbrick"), who also separately provided both a personal guarantee and a corporate guarantee from his London company, Inigo Philbrick Limited ("IPL") (collectively, the "Loan Obligors"), which loan was collateralized by the defendant *in rem*, and which loan was defaulted upon.

**6**

2

4.      This Court has already entered a judgment for Athena and against the Loan

Obligors in the amount of $14,306,800.47. See *Athena Art Finance Corp. v. 18 Boxwood Green

Limited, et al*., NY County Index No. 657322/19 (Docket Entry 29, March 2, 2020) (Ostrager, J.)

(the "Judgment").

5.      As a result of this Court's Judgment and under the explicit terms of the LSA,

Athena, having possession of the Basquiat, is now entitled to sell it.

6.      The LSA, upon which this Court already has awarded judgment, is explicit that

Athena already has the right to sell the painting unilaterally. It therefore now only seeks a

declaration from this Court that it may sell the Basquiat without regard to outstanding claims

from third parties purporting to hold some sort of interest in the painting.

### Procedural History and Record

7.      On March 31, 2017, Athena entered into the LSA and a promissory note (the

"Original Note") with Boxwood.

8.      Athena extended a loan commitment to Boxwood in the original amount of $10

million under the LSA and the Original Note.

9.      On March 31, 2017, the same day as Athena and Boxwood entered into the LSA

and the Original Note, IPL entered into a corporate guaranty and Philbrick entered into a

personal guaranty.

10.     Also on March 31, 2017, Athena filed a UCC-1 statement in the District of

Columbia against "all assets of [Boxwood] and all proceeds thereof."  Athena filed in the District

of Columbia given Boxwood's status as a foreign borrower incorporated under the laws of

Jersey.

3

**7**

11.     Pursuant to Section 3.4 of the LSA, on April 7, 2017, the Basquiat was pledged as loan collateral.

12.     On May 28, 2018, the loan commitment was increased by $3.5 million permitting a total principal amount of up to $13.5 million.

13.     The following facts were presented to the Court in the proceeding at which the aforementioned Judgment was awarded against the Loan Obligors:

a.     On October 1, 2019, Boxwood was obligated to, but did not, make a regularly scheduled monthly interest payment of $102,590.00, representing 30-days of accrued interest from September 1, 2019 through September 30, 2019.[1]

b.     On October 4, 2019, Athena notified Boxwood that it had failed to make the interest payment due on October 1, 2019, which failure Boxwood did not remedy within the 30 day grace period, as required by the LSA, and has never been paid to date.

c.     Athena served a notice of default upon all of Boxwood, IPL, and Philbrick on October 14, 2019 based on other breaches of the LSA.

d.     As of October 31, 2019, Boxwood's failure to pay interest constituted another event of default under the LSA.

e.     Athena chose to exercise its rights under the LSA to "declare the outstanding principal of the Loans, all interest thereon and all other Obligations to be forthwith due and payable," and its right to subject the entire outstanding amount to the default interest rate and late fees as of October 31, 2019, the date

---

[1]  As of May 31, 2020, Athena is owed in excess of $15.5 million.

4

**8**

that Boxwood's missed interest payment became another event of default under the LSA.

f.      As set forth in the Judgment, the loan is subject to the contractual default rate of 14.0701% per annum plus the late fee of 2%, and other fees, costs and penalties.

14.     Today, June 12, 2020, Athena learned that Inigo Philbrick was taken into custody on June 11, 2020 by U.S. federal law enforcement agents in Vanuatu. According to a press release by the U.S. Department of Justice, Philbrick was transported to Guam, where he is expected to appear in federal court on June 15, 2020.

15.     Also today, June 12, 2020, a criminal complaint filed April 30, 2020 in the United States District Court for the Southern District of New York (Index No. 20 MAG 4507) was unsealed. Pursuant to that criminal complaint, Philbrick is charged with wire fraud and aggravated identity theft.

**Third Parties' Purported Claims**

16.      By email dated October 18, 2019, attorney Simon Bushell of Signature Litigation LLP in London advised Athena that his client, Satfinance Investment Limited ("Satfinance"), claimed an interest in the Basquiat.[2] Shortly thereafter, Satfinance commenced an action against Athena in London, England ("Satfinance's London Action"). The English court initially entered – but then on June 2, 2020 lifted – an injunction to prevent the sale of the Basquiat, dismissed Satfinance's action against Athena altogether and awarded attorneys' fees to Athena. Immediately thereafter, Athena filed the instant action.

---

[2] Subsequently, attorney Derek J.T. Adler of Hughes Hubbard & Reed LLP, advised that he represents Satfinance's interests in New York.

5

**9**

17.     By email dated October 21, 2019, attorney Diana Wierbicki of the Withers law firm advised that her client, Delahunty Fine Art Ltd., claimed an interest in the Basquiat. On November 5, 2019 Athena was informed that Dan McClean of Cypress LLP had taken over that representation.  Delahunty was subsequently joined to Satfinance's London Action.

**Prayer for Relief: Declaration that Athena May Sell the In Rem Defendant**

18.     Athena repeats and realleges the allegations set forth above.

19.     Based upon the foregoing allegations, Athena is entitled to a declaration that it may now collect on the Judgment, plus accrued and unpaid stated interest, accrued and unpaid default interest, late fees, Collateral Administration Fees and Lender Expenses, as those terms are defined by the LSA, by selling the Basquiat as provided in the LSA upon which that Judgment was based.

WHEREFORE, plaintiff Athena Art Finance Corp. seeks a declaration that its right to sell the Basquiat in order to satisfy the Judgment, plus accrued and unpaid stated interest, accrued and unpaid default interest, late fees, Collateral Administration Fees and Lender Expenses in accordance with the LSA, is not separately violative of whatever rights any other person or entity may claim to have with respect to the *in rem* defendant – to wit, that Certain Artwork by Jean-Michel Basquiat entitled Humidity, 1982 –and that notice be deemed sufficient to the following potentially interested persons by delivery of these papers to the following addresses via email and Federal Express:

| | |
|---|---|
| SATFINANCE INVESTMENT LIMITED | DELAHUNTY FINE ART LTD. |
| BORIS PESKO and ALEKSANDAR PESKO | DAMIAN DELAHUNTY |
| c/o Derek J.T. Adler, Esq. | c/o Daniel McClean, Esq. |
| Hughes Hubbard & Reed LLP | Cypress LLP |
| One Battery Park Plaza, 17th floor | 11111 Santa Monica Boulevard, Suite 500 |
| New York, New York 10004-1482 | Los Angeles, California 90025 |
| (212) 837-6086 | (424) 313-5674 |
| derek.adler@hugheshubbard.com | dmcclean@cypressllp.com |

**10**

6

INIGO PHILBRICK LIMITED
INIGO PHILBRICK
18 BOXWOOD GREEN LIMITED
c/o Brebners, as agent for service of process
for 18 Boxwood Green Limited
30 Shaftesbury Ave, London, UK W ID SAR;
london@brebners.com

Dated: New York, New York
        June 12, 2020                    Respectfully submitted,

                                         MAZZOLA LINDSTROM, LLP

                                         By: *Wendy J. Lindstrom*
                                         Wendy J. Lindstrom
                                         Counsel for plaintiff Athena Art Finance Corp.
                                         1350 Avenue of the Americas, 2nd Floor
                                         New York, New York 10019
                                         D: 646.216.8440
                                         M: 516.680.2889
                                         wendy@mazzolalindstrom.com

**11**

7

## Verification

State of New York )
                  )     ss.:
County of New York )

Cynthia Sachs, being duly sworn, deposes and says:

I am the Chief Investment Officer of Athena Art Finance Corp., the plaintiff in this action. I have read the complaint herein and know the contents thereof to be true to my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Cynthia Sachs

Sworn to before me this
12th day of June, 2020

Wendy J. Lindstrom
Notary Public

WENDY J. LINDSTROM
NOTARY PUBLIC STATE OF NEW YORK
Registration No.: 02LI6035990
Qualified in Nassau County
Commission Expires January 3, 2022

8

**12**

At Part ___ of the Supreme Court of the State of New York held in and for the County of New York, on the _____ day of June, 2020

**P R E S E N T : _____, JSC**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X     **Commercial Division**
ATHENA ART FINANCE CORP.,

                               Plaintiff,                   Index No. 652258/2020

      -against-

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT       **Order to Show Cause to Permit**
ENTITLED HUMIDITY, 1982, *In Rem*,                **Immediate Sale of Collateral**

                               Defendant.
------------------------------------------------------------------------X

WHEREAS, a summons with notice (dated June 2, 2020) and a verified complaint (dated June 12, 2020) against the *in rem* defendant – to wit, that Certain Artwork by Jean-Michel Basquiat entitled Humidity, 1982 – were filed with the Clerk of the Court, and were assigned the above-referenced index number; and

WHEREAS, pursuant to the verified complaint, plaintiff Athena Art Finance Corp. ("Athena") seeks an order permitting it to immediately sell the *in rem* defendant, which is collateral on a loan that has been defaulted upon, and as to which a $14,306,800.47 default judgment in favor of plaintiff Athena was obtained in the New York State Supreme Court, New York County action entitled *Athena Art Finance Corp. v. 18 Boxwood Green Limited, et al.*, NY County Index No. 657322/19 (Docket Entry 29, March 2, 2020) (Ostrager, J.); and

1

**13**

WHEREAS, the *in rem* defendant, an artwork having considerable value, is now in the possession of plaintiff Athena, within the County of New York, and thus within the jurisdiction of this court; and

WHEREAS, plaintiff Athena is both a secured lender and a judgment creditor with full rights to sell the *in rem* defendant; and

WHEREAS, certain persons and entities – to wit, Satfinance Investment Limited ("Satfinance"), Boris Pesko, Aleksandar Pesko, Delahunty Fine Art Ltd. and Damian Delahunty – may wish to be heard and oppose the sale, as they claim a purported interest in the *in rem* defendant; and

WHEREAS, Inigo Philbrick was arrested and has been in federal custody since at least June 12, 2020 and is the subject of a criminal complaint in the United States District Court for the Southern District of New York unsealed as of that same date (Docket No. 20-MAG-4507);

NOW, upon the annexed affirmation dated June 17, 2020 of Wendy J. Lindstrom, together with the papers attached to this order to show cause;

LET all persons receiving notice hereof show cause before this court, at Part ___, at 60 Centre Street, New York, New York, courtroom _____, on the ____ day of June, 2020, at _____am/pm, or as soon thereafter as the parties can be heard;

Why an order should not be made and entered:

a)    Permitting the immediate sale of that Certain Artwork by Jean-Michel Basquiat entitled Humidity, 1982, defendant *in rem*;

**14**

b)      Requiring any person or entity who seeks to stay such sale to post a bond in the amount of $20 million, or such amount as is deemed reasonable by the Court, within ten days of the issuance of any order staying such sale; and

c)      Granting such other and further relief as to the court seems just and proper.

**And it is,**

ORDERED that service of this order, along with the accompanying papers, along with the summons and complaint, shall be good and sufficient if made on or before the _____ day of June _____, 2020 by FedEx and email, as indicated below:

SATFINANCE INVESTMENT LIMITED
BORIS PESKO and
ALEKSANDER PESKO
c/o Derek J.T. Adler, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 17th floor
New York, New York 10004-1482
(212) 837-6086
derek.adler@hugheshubbard.com

DELAHUNTY FINE ART LTD.
DAMIAN DELAHUNTY
c/o Daniel McClean, Esq.
Cypress LLP
11111 Santa Monica Boulevard, Suite 500
Los Angeles, California 90025
(424) 313-5674
dmcclean@cypressllp.com

INIGO PHILBRICK (personally and as
Principal of INIGO PHILBRICK LIMITED
and 18 BOXWOOD GREEN LIMITED)
c/o Warden Marti Licon-Vitale
Metropolitan Correctional Center,
Federal Bureau of Prisons
150 Park Row
New York, New York 10007

And

John T. Gorman, Esq.
Federal Public Defender
Email: john_t_gorman@fd.org


Dated: New York, New York
      June __, 2020

_____
                      , JSC

**15**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
ATHENA ART FINANCE CORP.,

| | Plaintiff, | Index No. 652258/2020 |

    -against-

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT     **Affirmation of Wendy J.**
ENTITLED HUMIDITY, 1982, *In Rem*,                  **Lindstrom in Support of OTSC**

                         Defendant.
------------------------------------------------------------------------X

      I, Wendy J. Lindstrom, an attorney duly admitted to practice before the courts of the State of

New York, affirm under penalty of perjury as follows:

      1.     I am an attorney with the firm Mazzola Lindstrom, LLP, counsel for plaintiff Athena

Art Finance Corp. ("Athena"), and am familiar with the facts set forth herein based upon my review

of the file maintained for the prosecution of this action.

      2.     This is an *in rem* action, requesting an order that Athena be permitted to sell – publicly

or privately, at its discretion – that Certain Artwork by Jean-Michel Basquiat entitled Humidity, 1982,

*in rem* defendant, ("the Basquiat"), as provided in the controlling Loan and Security Agreement

described below.

      3.     In advance of the submission of this order to show cause to the court, a courtesy copy

will have been forwarded via email to the attorneys for the individuals and entities set forth in the

service list, and the transmittal email provided as an exhibit.

      4.     Additionally, these papers will be forwarded to Inigo Philbrick (in his personal

capacity and as principal of Inigo Philbrick Ltd. and 18 Boxwood Green Ltd.) c/o Warden Marti

**16**

Licon-Vitale at the Metropolitan Correctional Center, Federal Bureau of Prisons,150 Park Row, New

York, New York 10007.[1]

    5.    In support of this motion, I annex the following exhibits:

| | |
|---|---|
| Exhibit "A" | Summons with notice, dated June 2, 2020; |
| Exhibit "B" | Verified complaint, dated June 11, 2020; |
| Exhibit "C" | $14,306,800.47 default judgment, dated March 2, 2020, in favor of plaintiff Athena, *Athena Art Finance Corp. v. 18 Boxwood Green Limited, et al*., NY County Index No. 657322/19 (with notice of entry dated March 10, 2020); |
| Exhibit "D" | Loan and Security Agreement ("LSA") dated March 31, 2017; |
| Exhibit "E" | District of Columbia UCC-1 Statement against 18 Boxwood Green; |
| Exhibit "F" | Amended Schedule A to the LSA dated November 30, 2018; |
| Exhibit "G" | Affidavit of Cynthia E. Sachs, Chief Investment Officer of Athena Fine Art Corp., dated June 16, 2020; |
| Exhibit "H" | Transmittal email showing transmission on June 17, 2020 of this proposed order to show cause, with supporting papers and exhibits, to counsel in advance of presentation to the court. These papers are also being mailed on June 17th to Mr. Philbrick c/o the warden of the Metropolitan Correctional Center. |

    6.    On March 31, 2017, Athena entered into the LSA, pursuant to which it extended a loan

commitment to 18 Boxwood Green Limited in the amount of $10 million, collateralized with certain

artworks listed on Schedule A thereto and guaranteed by Inigo Philbrick Limited and personally by

Inigo Philbrick. **Exhibit D.**

---

[1] Please note that when this lawsuit was commenced with the filing of the summons with notice on June 2nd, Mr. Philbrick was a fugitive from justice. However, as of June 12th, he has been (as reported in the press) in federal custody in Guam, and a federal criminal complaint against him in the Southern District of New York has been unsealed. As of June 15th (as reported in the press) he has waived any objection to being transported to the Southern District of New York. We presume that he will soon be housed in the MCC. Should he be housed elsewhere, we will notify the court accordingly, and request that service of this order to show cause be made upon him elsewhere.

**17**

5

7.     Also on March 31, 2017, Athena filed a UCC-1 statement in the District of Columbia against "all assets of [Boxwood] and all proceeds thereof." **Exhibit E**. Athena filed in the District of Columbia because of Boxwood's status as a foreign borrower incorporated under the laws of Jersey.

8.     On April 7, 2017, pursuant to Section 3.4 of the LSA, the Basquiat was added to the pool of loan collateral.

9.     On May 28, 2018, the loan commitment was increased by $3.5 million permitting a total principal amount of up to $13.5 million.

10.    On November 30, 2018, Schedule A to the LSA was amended for the final time, assigning the Basquiat a value as of that date of $19 million.  **Exhibit F.**

11.    As set forth in the accompanying verified complaint, Boxwood defaulted on the loan, and therefore Athena brought an action against it, as well as corporate guarantor Inigo Philbrick Limited, and Inigo Philbrick in his personal capacity (collectively referred to herein as the "Loan Obligors"). Having failed to appear and answer, a default judgment was ultimately entered against them, for $14,306,800.47.

12.    Under the LSA, in the event of a default, Athena has the absolute right, unilaterally, to sell the collateral at public or private sale. As the loan is indeed in default, as demonstrated rather conclusively by the judgment annexed hereto as **Exhibit C**, Athena thus has the right to sell the Basquiat.

13.    This order to show cause is presented, as was the summons with notice, and verified complaint, because two separate groups – the Satfinance Group (which includes Satfinance Limited, it principals Boris Pesko, and his son and Satfinance Limited's "advisor", Aleksandar Pesko) and Delahunty Limited (*a/k/a* Delahunty Fine Art Ltd.) – have asserted purported claims to the Basquiat.

**18**

6

14. Athena denies the claims raised by the Satfinance Group and Delahunty Limited and, in the event they, or anyone else, may come forward and seek to enjoin the sale, any such injunction must be predicated upon that person or entity's posting of a bond sufficient to guarantee that, should the court determine that any such injunction or restraint on the sale was wrongly issued, Athena may be fully compensated for the loss or harm caused as a result of the injunction or restraining order.

15. Satfinance Group had previously obtained an order from a London court on November 1, 2019 – in the nature of a TRO – barring the sale of the Basquiat.[2] The London court, however, dismissed all claims against Athena on May 26, 2020, and thereafter vacated the injunction on June 2, 2020. Athena's summons with notice herein was filed immediately thereafter.

16. During the period that Athena was subject to a stay by the London court, it was harmed because the debt owed by the Loan Obligors has increased by some $800,000, at a rate of over $150,000 per month, exclusive of attorneys' fees, storage fees, insurance and other lender expenses being incurred.

17. But for Satfinance Group's wrongful injunction, Athena, as a secured lender, would have already foreclosed upon the collateral after the loan went into default and sold the painting in a stronger (pre-pandemic) market. Alternatively, Athena could have sought judicial intervention and any purported third-parties' claims could have been resolved or adjudicated pre-pandemic. Under either circumstance, Athena was forced to bear risk for a longer period than necessary by reason of Satfinance Group's wrongful injunction.

---

[2] Delahunty was added as a party to the London proceeding by an order dated 19 May 2020, according to the recital paragraphs of the judgment of Chief Master Marsh, of May 26, 2020.

**19**

7

18.     Accordingly, it is submitted that there can be no good-faith basis to oppose the

immediate sale of the Basquiat, and it is respectfully requested that this court authorize such sale to

proceed immediately, whether by public or private sale, at the discretion of Athena.

**19.     There has been no prior application for the relief sought herein.**

WHEREFORE, it is respectfully requested that the relief set forth in the accompanying order

to show cause be granted.

Dated: New York, New York
       June 17, 2020

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

By: *Wendy J. Lindstrom*
Wendy J. Lindstrom
Counsel for plaintiff Athena Art Finance Corp.
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

**20**

8

# EXHIBIT A

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8300
*Attorneys for plaintiff*

Wendy J. Lindstrom, Esq.
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X

ATHENA ART FINANCE CORP.,

                              Plaintiff,

        -against-

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT
ENTITLED HUMIDITY, 1982, *In Rem*,

                              Defendant.

------------------------------------------------------------------------X

**Commercial Division**

**Summons With Notice**

Index No._____

**To the Following Interested Persons:**

        SATFINANCE INVESTMENT LIMITED
        BORIS PESKO
        ALEKSANDAR PESKO
        DELAHUNTY FINE ART LTD.
        DAMIAN DELAHUNTY
        INIGO PHILBRICK LIMITED
        INIGO PHILBRICK
        18 BOXWOOD GREEN LIMITED

        AND TO ANY PERSON WHO MAY CLAIM
        AN INTEREST IN THE *IN REM* DEFENDANT.

        Please take notice that plaintiff ATHENA ART FINANCE CORP. hereby commences

this action to foreclose its lien upon, quiet title to, and to obtain an order permitting it to conduct

a public or private sale of the above-referenced *in rem* defendant – to wit, that CERTAIN

ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, *In Rem*.

**22**

You, the aforesaid interested persons, are hereby notified that should you fail to appear

and state a claim to the *in rem* defendant, a judgment will be entered against the *in rem* defendant

on default on the cause of action to foreclose its lien, pursuant to the Uniform Commercial Code,

based upon the following:

> On or about March 31, 2017, plaintiff loaned certain moneys to borrower, 18
> Boxwood Green Limited, on a debt guaranteed by Inigo Philbrick Limited and
> Inigo Philbrick and collateralized in part by the defendant in rem, which loan was
> defaulted upon, and as a result thereof, and pursuant to the loan agreement of
> March 31, 2017, and as amended thereafter, plaintiff ATHENA ART FINANCE
> CORP., having possession of the *in rem* defendant, became entitled to sell the *in
> rem* defendant at public or private sale.

As you, the aforesaid interested persons, have served notice upon plaintiff that you

believe that you have legally enforceable interests to the *in rem* defendant, you are hereby invited

to interpose your claim in this *in rem* proceeding.

Accordingly, you, the aforesaid interested persons, are hereby summoned to appear in

this action by serving a pleading on counsel for plaintiff, address below, within 20 days after

service of this summons (not counting the day of service), or within 30 days after service is

complete if the summons is not delivered personally to you within New York State, such

pleading to identify whether you claim an interest in the subject artwork and the basis or bases

for such claim.

Plaintiff designates the Supreme Court of the State of New York, County of New York,

60 Centre Street, New York, New York as the place of trial. The basis of this designation is that

the *res* – to wit, the subject artwork is presently within the jurisdiction of the County of New

York. If you fail to interpose a pleading setting forth whether you claim an interest in the subject

artwork and the basis or bases therefor, a judgment by default will be taken, establishing that

23

plaintiff ATHENA ART FINANCE CORP. is vested with the right to dispose of the *in rem* defendant at public or private sale forthwith.

Plaintiff designates this for Commercial Division assignment, as the *in rem* defendant has a value greatly in excess of the $500,000 monetary threshold of the Commercial Division, exclusive of punitive damages, interests, costs, disbursements and counsel fees claimed, and the claim arises under the Uniform Commercial Code. (See Uniform Rule 202.70(a), and 202.70(b)(2)).

WHEREFORE, plaintiff ATHENA ART FINANCE CORP. demands that it be permitted to sell that CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, the *in rem* defendant herein, and that any interested person, having had an opportunity to intervene and state a claim thereto, is foreclosed from further claim against the *in rem* defendant.

Dated: New York, New York
June 2, 2020

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

By: *Wendy J. Lindstrom*

Wendy J. Lindstrom
Counsel for plaintiff Athena Art Finance Corp.
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

Service List Attached:

**24**

**Service**

SATFINANCE INVESTMENT LIMITED
BORIS PESKO and
ALEKSANDER PESKO
c/o Derek J.T. Adler, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 17th floor
New York, New York 10004-1482
(212) 837-6086
derek.adler@hugheshubbard.com

INIGO PHILBRICK LIMITED
INIGO PHILBRICK
18 BOXWOOD GREEN LIMITED
17 Grosvenor Square, Flat 3
London W1K 6LB, England

       – and –

c/o Brebners, as agent for service of process
for 18 Boxwood Green Limited
30 Shaftesbury Ave, London, UK W ID SAR;
london@brebners.com

DELAHUNTY FINE ART LTD.
DAMIAN DELAHUNTY
c/o Daniel McClean, Esq.
Cypress LLP
11111 Santa Monica Boulevard, Suite 500
Los Angeles, California 90025
(424) 313-5674
dmcclean@cypressllp.com

**25**

# EXHIBIT B

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8300
*Attorneys for plaintiff*

Wendy J. Lindstrom, Esq.
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X     **Commercial Division**
ATHENA ART FINANCE CORP.,

                                Plaintiff,

     -against-     **Verified Complaint**

that
CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT     Index No. 652258/2020
ENTITLED HUMIDITY, 1982, *In Rem*,

                                Defendant.
------------------------------------------------------------------------X

       COMES NOW plaintiff Athena Art Finance Corp. ("Athena"), a specialty lender engaged in the business of providing loans secured by high value fine art.  Athena made a loan to a borrower that was collateralized by the above-referenced *in rem* defendant, a painting known as "Humidity" by Jean-Michel Basquiat, 1982 (the "Basquiat"). As this Court is aware, that loan is in default. Athena now brings this verified complaint to sell the Basquiat in order to satisfy this Court's previously entered $14,306,800.47 judgment in Athena's favor.  By and through its attorneys, Mazzola Lindstrom, LLP, Athena alleges therefor upon information and belief as follows:

1

**27**

**Nature of Claim**

1.      This is an *in rem* action to foreclose Athena's lien, and to obtain an order permitting Athena to sell the Basquiat, an oil painting with dimensions of 96" x 72", which is fairly and accurately reproduced here:



2.      The Basquiat is currently in the possession of Athena at a secure facility in New York, within the jurisdiction of the Supreme Court of the State of New York for the County of New York.

3.      This action arises out of a loan and security agreement, as amended from time to time between Athena and 18 Boxwood Green Limited ("Boxwood") (the "LSA"), an entity which is 100% owned by Inigo Philbrick ("Philbrick"), who also separately provided both a personal guarantee and a corporate guarantee from his London company, Inigo Philbrick Limited ("IPL") (collectively, the "Loan Obligors"), which loan was collateralized by the defendant *in rem*, and which loan was defaulted upon.

4.      This Court has already entered a judgment for Athena and against the Loan

Obligors in the amount of $14,306,800.47. See *Athena Art Finance Corp. v. 18 Boxwood Green*

*Limited, et al*., NY County Index No. 657322/19 (Docket Entry 29, March 2, 2020) (Ostrager, J.)

(the "Judgment").

5.      As a result of this Court's Judgment and under the explicit terms of the LSA,

Athena, having possession of the Basquiat, is now entitled to sell it.

6.      The LSA, upon which this Court already has awarded judgment, is explicit that

Athena already has the right to sell the painting unilaterally. It therefore now only seeks a

declaration from this Court that it may sell the Basquiat without regard to outstanding claims

from third parties purporting to hold some sort of interest in the painting.

### Procedural History and Record

7.      On March 31, 2017, Athena entered into the LSA and a promissory note (the

"Original Note") with Boxwood.

8.      Athena extended a loan commitment to Boxwood in the original amount of $10

million under the LSA and the Original Note.

9.      On March 31, 2017, the same day as Athena and Boxwood entered into the LSA

and the Original Note, IPL entered into a corporate guaranty and Philbrick entered into a

personal guaranty.

10.     Also on March 31, 2017, Athena filed a UCC-1 statement in the District of

Columbia against "all assets of [Boxwood] and all proceeds thereof."  Athena filed in the District

of Columbia given Boxwood's status as a foreign borrower incorporated under the laws of

Jersey.

3

**29**

11.     Pursuant to Section 3.4 of the LSA, on April 7, 2017, the Basquiat was pledged as loan collateral.

12.     On May 28, 2018, the loan commitment was increased by $3.5 million permitting a total principal amount of up to $13.5 million.

13.     The following facts were presented to the Court in the proceeding at which the aforementioned Judgment was awarded against the Loan Obligors:

a.     On October 1, 2019, Boxwood was obligated to, but did not, make a regularly scheduled monthly interest payment of $102,590.00, representing 30-days of accrued interest from September 1, 2019 through September 30, 2019.[1]

b.     On October 4, 2019, Athena notified Boxwood that it had failed to make the interest payment due on October 1, 2019, which failure Boxwood did not remedy within the 30 day grace period, as required by the LSA, and has never been paid to date.

c.     Athena served a notice of default upon all of Boxwood, IPL, and Philbrick on October 14, 2019 based on other breaches of the LSA.

d.     As of October 31, 2019, Boxwood's failure to pay interest constituted another event of default under the LSA.

e.     Athena chose to exercise its rights under the LSA to "declare the outstanding principal of the Loans, all interest thereon and all other Obligations to be forthwith due and payable," and its right to subject the entire outstanding amount to the default interest rate and late fees as of October 31, 2019, the date

---

[1]  As of May 31, 2020, Athena is owed in excess of $15.5 million.

4

**30**

that Boxwood's missed interest payment became another event of default under the LSA.

f.    As set forth in the Judgment, the loan is subject to the contractual default rate of 14.0701% per annum plus the late fee of 2%, and other fees, costs and penalties.

14.    Today, June 12, 2020, Athena learned that Inigo Philbrick was taken into custody on June 11, 2020 by U.S. federal law enforcement agents in Vanuatu.  According to a press release by the U.S. Department of Justice, Philbrick was transported to Guam, where he is expected to appear in federal court on June 15, 2020.

15.    Also today, June 12, 2020, a criminal complaint filed April 30, 2020 in the United States District Court for the Southern District of New York (Index No. 20 MAG 4507) was unsealed.  Pursuant to that criminal complaint, Philbrick is charged with wire fraud and aggravated identity theft.

**Third Parties' Purported Claims**

16.    By email dated October 18, 2019, attorney Simon Bushell of Signature Litigation LLP in London advised Athena that his client, Satfinance Investment Limited ("Satfinance"), claimed an interest in the Basquiat.[2]  Shortly thereafter, Satfinance commenced an action against Athena in London, England ("Satfinance's London Action"). The English court initially entered – but then on June 2, 2020 lifted – an injunction to prevent the sale of the Basquiat, dismissed Satfinance's action against Athena altogether and awarded attorneys' fees to Athena. Immediately thereafter, Athena filed the instant action.

---

[2]  Subsequently, attorney Derek J.T. Adler of Hughes Hubbard & Reed LLP, advised that he represents Satfinance's interests in New York.

5

**31**

17.     By email dated October 21, 2019, attorney Diana Wierbicki of the Withers law firm advised that her client, Delahunty Fine Art Ltd., claimed an interest in the Basquiat. On November 5, 2019 Athena was informed that Dan McClean of Cypress LLP had taken over that representation.  Delahunty was subsequently joined to Satfinance's London Action.

### Prayer for Relief: Declaration that Athena May Sell the In Rem Defendant

18.     Athena repeats and realleges the allegations set forth above.

19.     Based upon the foregoing allegations, Athena is entitled to a declaration that it may now collect on the Judgment, plus accrued and unpaid stated interest, accrued and unpaid default interest, late fees, Collateral Administration Fees and Lender Expenses, as those terms are defined by the LSA, by selling the Basquiat as provided in the LSA upon which that Judgment was based.

WHEREFORE, plaintiff Athena Art Finance Corp. seeks a declaration that its right to sell the Basquiat in order to satisfy the Judgment, plus accrued and unpaid stated interest, accrued and unpaid default interest, late fees, Collateral Administration Fees and Lender Expenses in accordance with the LSA, is not separately violative of whatever rights any other person or entity may claim to have with respect to the *in rem* defendant – to wit, that Certain Artwork by Jean-Michel Basquiat entitled Humidity, 1982 –and that notice be deemed sufficient to the following potentially interested persons by delivery of these papers to the following addresses via email and Federal Express:

| | |
|---|---|
| SATFINANCE INVESTMENT LIMITED | DELAHUNTY FINE ART LTD. |
| BORIS PESKO and ALEKSANDAR PESKO | DAMIAN DELAHUNTY |
| c/o Derek J.T. Adler, Esq. | c/o Daniel McClean, Esq. |
| Hughes Hubbard & Reed LLP | Cypress LLP |
| One Battery Park Plaza, 17th floor | 11111 Santa Monica Boulevard, Suite 500 |
| New York, New York 10004-1482 | Los Angeles, California 90025 |
| (212) 837-6086 | (424) 313-5674 |
| derek.adler@hugheshubbard.com | dmcclean@cypressllp.com |

**32**

6

INIGO PHILBRICK LIMITED
INIGO PHILBRICK
18 BOXWOOD GREEN LIMITED
c/o Brebners, as agent for service of process
for 18 Boxwood Green Limited
30 Shaftesbury Ave, London, UK W ID SAR;
london@brebners.com

Dated: New York, New York
       June 12, 2020

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

By: *Wendy J. Lindstrom*

Wendy J. Lindstrom
Counsel for plaintiff Athena Art Finance Corp.
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
D: 646.216.8440
M: 516.680.2889
wendy@mazzolalindstrom.com

7

**33**

## Verification

State of New York )
                  )  ss.:
County of New York )

Cynthia Sachs, being duly sworn, deposes and says:

I am the Chief Investment Officer of Athena Art Finance Corp., the plaintiff in this
action. I have read the complaint herein and know the contents thereof to be true to my own
knowledge, except as to those matters stated on information and belief, and as to those matters I
believe them to be true.

_Cynthia Sachs_

Sworn to before me this
12th day of June, 2020

_Wendy J. Lindstrom_
Notary Public

WENDY J. LINDSTROM
NOTARY PUBLIC STATE OF NEW YORK
Registration No.: 02LI6035990
Qualified in Nassau County
Commission Expires January 3, 2022

8

**34**

# EXHIBIT C

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

ATHENA ART FINANCE CORP.,

                  *Plaintiff*,

    -against-

18 BOXWOOD GREEN LIMITED, INIGO
PHILBRICK LTD., and INIGO PHILBRICK,

                *Defendants*.

Index No. 657322/2019

**NOTICE OF ENTRY**

      **PLEASE TAKE NOTICE**, that attached is a true and correct copy of the Judgment duly

entered and filed in the office of the New York County Clerk on March 2, 2020.

Dated: March 10, 2020
      New York, New York

Respectfully,

BOIES SCHILLER FLEXNER LLP

/s/ Nicholas A. Gravante

Nicholas A. Gravante, Jr.
Karen Dyer
Demetri Brumis Blaisdell
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
Email: ngravante@bsfllp.com
      kdyer@bsfllp.com
      dblaisdell@bsfllp.com

*Attorneys for Plaintiff Athena Art Finance*
*Corp.*

**36**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ATHENA ART FINANCE CORP.,

                           *Plaintiff,*

          -against-

18 BOXWOOD GREEN LIMITED, INIGO
PHILBRICK LTD., and INIGO PHILBRICK,

                           *Defendants.*

Index No. 657322/2019

JUDGMENT

Plaintiff having moved for summary judgment in lieu of complaint herein, and the Court
having rendered its Decision and Order, dated January 2█, 2020, by which it granted Plaintiff's
motion against the Defendants, and the Court having further directed Plaintiff to submit a
judgment; consistent with said Decision and Order;

NOW, on motion of NICHOLAS A. GRAVANTE, JR., counsel for Plaintiff, it is

ADJUDGED that the Plaintiff, ATHENA ART FINANCE CORP., with offices at 300
*have judgement and*
PARK AVENUE, 15TH FLOOR, NEW YORK, NEW YORK 10022, recover of Defendant 18
BOXWOOD GREEN LIMITED, with offices at FIRST FLOOR, 7 ESPLANADE, ST HELIER,
JERSEY JE2 3QA, Defendant INIGO PHILBRICK LTD., with offices at 55 GROSVENOR
STREET, MAYFAIR, LONDON, W1K 3HY, ENGLAND, and Defendant INIGO PHILBRICK,
*jointly and severally,*
who resides at 43 GREEN STREET, FLAT 3, LONDON, W1K 7FJ, ENGLAND, the sum of
$13.5 MILLION ($13,500,000) DOLLARS, with default interest at the contractual rate of
14.0701% per annum from the date of the 31st day of October, 2019, in the amount of

    *$ 640,093.17*

and late fees at the rate of 2% per annum from the date of the 31st day of October, 2019, in the

**37**

amount of $ 90,986.30

together with attorney's fees in the amount of TWENTY FIVE THOUSAND ($25,000.00)

DOLLARS, insurance costs in the amount of THIRTY-EIGHT THOUSAND THREE

HUNDRED EIGHTY ($38,380.00), and storage fees in the amount of ELEVEN THOUSAND

and disbursements as Taxed by The clerk

SEVEN HUNDRED NINETY ONE ($11,791.00), and ~~~~~~ costs, in the amount of ~~~~~~
$ 550.00,

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ making in all the sum of

X $ 14,306,800.47 )

and that the Plaintiff have execution therefore.

_M.A.T_

Clerk

# FILED

MAR 0 2 2020

COUNTY CLERK'S OFFICE
NEW YORK

2

38

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ATHENA ART FINANCE CORP.,

Plaintiff,

-against-

18 BOXWOOD GREEN LIMITED, INIGO
PHILBRICK LTD., and INIGO PHILBRICK,

Defendants.

Index No. 657322/2019

BILL OF COSTS

Costs by Statute ---------------------------------------- $ 200.00
Prospective Marshal's Fee ------------------------------ $ 40.00
Fee for Notice of Motion ------------------------------- $ 45.00
Fee for Request for Judicial Intervention -------------- $ 95.00
Fee for U.K. Notary for Affidavits of Service --------- $ 248.35 [£192 GBP]
Fee for Index Number ---------------------------------- $ 210.00

TOTAL    $ 838.35  $ 550.00

STATE OF NEW YORK, COUNTY OF NEW YORK    ATTORNEY'S AFFIRMATION

The undersigned, attorney at law of the State of New York, one of the attorneys of record

for the plaintiff in the above entitled action, states that the disbursements above specified have

been or will necessarily be made or incurred therein and are reasonable in amount.

The undersigned affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
February 20, 2020

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$        550.00

MAR 02 2020

CLERK

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

/s/ Nicholas A. Gravante

FILED

MAR 02 2020
**39**

COUNTY CLERK'S OFFICE
NEW YORK

Nicholas A. Gravante, Jr.
55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
Email: ngravante@bsfllp.com

*Attorneys for Plaintiff Athena Art Finance
Corp.*

2

**40**

BOIES SCHILLER FLEXNER LLP

55 Hudson Yards
New York, New York 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiff*

1 - 3

FILED AND
DOCKETED

MAR 0 2 2020

AT     2:15   P M
N.Y., CO. CLK'S OFFICE

41

# EXHIBIT D

*Execution Copy*

## LOAN AND SECURITY AGREEMENT

This LOAN AND SECURITY AGREEMENT (as amended, amended and restated, supplemented, or otherwise modified from time to time, this "**Agreement**") made and entered into as of March 31, 2017, by and among ATHENA ART FINANCE CORP., a Delaware corporation, with offices located at 400 Park Avenue, 12th Floor, New York, New York 10022 ("**Lender**") and 18 BOXWOOD GREEN LIMITED, a limited liability company incorporated under the laws of Jersey (company number 119821) having a registered office at First Floor, 7 Esplanade, St Helier, Jersey JE2 3QA, ("**Borrower**").

## RECITALS

WHEREAS, Borrower has requested Lender to make available to Borrower a revolving USD loan facility (the "Facility") in an aggregate amount not to exceed the Commitment (as defined below), and Lender is willing to make the Facility available to Borrower on the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the terms, covenants, provisions and conditions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender, intending to be legally bound, hereby agree as follows:

1.  Definitions. All capitalized terms and not otherwise defined shall have the meanings assigned to such terms in Annex A attached hereto. Terms defined in the UCC which are not otherwise defined in this Agreement are used herein as defined in the UCC.

2.  Loan and Terms of Payment

    2.1    Loan Commitment; Utilization.

        2.1.1.    Subject to the terms and conditions of this Agreement, Lender agrees to make loans (each, a "Loan" and collectively, the "Loans") to Borrower from time to time during the period commencing on the Closing Date and ending on the earlier of (a) the Maturity Date and (b) the termination of the Commitment, in an aggregate principal amount that will not result in the Outstanding Amount at any time exceeding the lesser of (x) the Commitment and (y) the Borrowing Base. The Loans shall be evidenced by the Note.

        2.1.2.    The obligation of Lender to make a Loan to Borrower on any date under this Agreement shall be subject to the following:

        (a)    each of the conditions set forth on Annex D attached hereto are satisfied to the satisfaction of Lender in its sole discretion as of such date;

        (b)    no Default or Event of Default has occurred and is continuing as of such date or would exist after giving immediate effect to such Loan;

        (c)    all representations and warranties made by the Loan Parties in any Loan Document are true and correct in all material respects as of such date and immediately after giving effect to such Loan;

        (d)    Lender has determined that (as of such date), immediately after giving effect to such Loan, the Outstanding Amount will not exceed the lesser of (1) the Borrowing Base and (2) the Commitment; and

        (e)    Borrower has delivered (no later than 10 Business Days prior to the proposed date of such Loan) a Draw Request to Lender.

1

**43**

2.1.3.   Each proposed Loan under a Draw Request shall (i) be in an amount not less than $1,000,000 (or the Available Loan Amount as of the date of such Draw Request if the Available Loan Amount is less than $1,000,000 as of such date), (ii) have a Maturity Date on or after the One-Year Anniversary Date of such Loan (or the Final Maturity Date if the Final Maturity Date is before such One-Year Anniversary Date) and (iii) be funded by the Lender (subject to the terms and conditions hereof) on or after the date that is 10 Business Days from the date of such Draw Request.

2.1.4.   Within the foregoing limits and subject to the terms and conditions set forth herein, Borrower may borrow, prepay and reborrow Loans.

2.2      Loan Mechanics; Interest; Prepayments; Reserve Account; Etc.  Certain provisions relating to, among other things, borrowing and other loan mechanics, prepayments, and the reserve account are set forth in Annex C attached hereto.

2.3      Qualified Art Appraisals.

2.3.1.   On or about the last day of each Facility Year, Lender may request, or obtain or cause to be obtained, or conduct or cause to be conducted, a Qualified Art Appraisal of the Artwork Collateral Pieces (or any one or combination of them).  Borrower shall bear the costs and expenses of any Qualified Art Appraisal conducted in accordance with this Section 2.3.1.  Promptly after Lender's receipt of any Qualified Art Appraisal conducted in accordance with this Section 2.3.1, Lender shall deliver to Borrower a written notice, substantially in the form attached hereto as Exhibit B, showing, as of the date of such Qualified Art Appraisal, calculations of the Borrowing Base, and attaching thereto supporting information in connection therewith.

2.3.2.   At any time, Lender may request, or obtain or cause to be obtained, or conduct or cause to be conducted, additional Qualified Art Appraisals of the Artwork Collateral Pieces (or any combination of them).  Lender shall bear the costs and expenses of any Qualified Art Appraisal conducted in accordance with this Section 2.3.2, provided, that if any Qualified Art Appraisal is conducted at any time that an Event of Default has occurred and is continuing, Borrower shall bear the costs and expenses of all such Qualified Art Appraisals.

2.3.3.   In connection with any Qualified Art Appraisal conducted in accordance with Section 2.3, (i) Lender shall engage Qualified Art Appraisers directly to perform each Qualified Art Appraisal and (ii) Borrower shall indemnify each Qualified Art Appraiser pursuant to Section 9.

2.4      ACKNOWLEDGMENTS BY BORROWER.   BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT BORROWER HAS NOT BEEN PRESSURED, COERCED OR FORCED BY LENDER, ANY OF LENDER'S AFFILIATES, OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, MEMBERS, SHAREHOLDERS, REPRESENTATIVES, COUNSEL OR AGENTS, OR ANY OTHER PERSON, TO ENTER INTO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS OR TO OBTAIN THE LOAN EVIDENCED HEREBY.  BORROWER HEREBY ACKNOWLEDGES THAT LENDER HAS ADVISED BORROWER TO SEEK INDEPENDENT LEGAL ADVICE FROM COUNSEL OF ITS OWN SELECTION IN ORDER TO BE FULLY INFORMED OF ITS LEGAL RIGHTS AND OBLIGATIONS WITH RESPECT TO THE SUBJECT MATTER OF THE LOAN DOCUMENTS.   BORROWER HEREBY ACKNOWLEDGES AND CONFIRMS THAT (I) BORROWER HAS OBTAINED SUCH INDEPENDENT LEGAL ADVICE OR (II) BORROWER HAS CHOSEN TO NOT OBTAIN SUCH INDEPENDENT LEGAL ADVICE. BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY DEFENSE BORROWER MAY HAVE (NOW OR IN THE FUTURE) TO THE ENFORCEMENT OF ANY OBLIGATIONS OF BORROWER UNDER ANY LOAN DOCUMENT BY REASON OF OR IN CONNECTION WITH BORROWER'S INDEPENDENT LEGAL ADVICE OR BORROWER'S FAILURE TO OBTAIN SUCH INDEPENDENT LEGAL ADVICE.   BORROWER ACKNOWLEDGES THAT LENDER'S COUNSEL IS REPRESENTING ONLY LENDER IN THIS TRANSACTION.

3.       Creation of Security Interest; Other Collateral Provisions

3.1      Grant of Security Interests.  Borrower hereby pledges, assigns and grants to Lender, a security interest in all of its right, title and interest in, to and under all property of Borrower, wherever located, and

2

**44**

whether now owned or existing or hereafter owned, acquired or arising from time to time (collectively, the "**Borrower Collateral**"), to secure the prompt and complete payment and performance of all the Obligations, including, without limitation: (a) all Artwork Collateral Pieces; (b) all negotiable and non-negotiable documents of title and invoices covering the Artwork Collateral Pieces and all Accounts (as defined in the UCC), contract rights (as defined in the UCC), Chattel Paper (as defined in the UCC), Documents (as defined in the UCC), warehouse receipts, and General Intangibles (as defined in the UCC) and other obligations of any kind, now or hereafter existing, in each case solely arising from or with respect to all or any of the Artwork Collateral Pieces; (c) all cash or non-cash Proceeds (as defined in the UCC) of any of the foregoing, including, without limitation (i) all rights under warranties and insurance contracts, covering any of the foregoing, (ii) any causes of action (including all tort claims and liquidation claims) relating to any of the foregoing, and (iii) all proceeds (including insurance proceeds) from the sale, destruction, loss or other Disposition of any of the foregoing and sums due from a third-party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due in judgment, settlement, or other process; and (d) all books, data and records pertaining to the foregoing, whether in the form of a writing, photograph, microfilm or electronic media, including, but not limited to, any computer-readable memory and any computer hardware or software necessary to process such memory.

3.2     Authorization to File Financing Statements; Ratification.  Borrower authorizes Lender, counsel and other representatives, at any time and from time to time, to file or record financing statements, amendments to financing statements, and other filing or recording documents or instruments with respect to the Borrower Collateral in such form and in such offices appropriate to perfect (and to continue) the security interest of Lender under this Agreement in the Borrower Collateral and to maintain such security interest as a first priority perfected security interest in the Borrower Collateral.  Borrower hereby ratifies its authorization for Lender to file in any relevant jurisdiction any financing statements relating to the Borrower Collateral if filed prior to the Closing Date.

3.3     Continuing Security Interest.  This Agreement shall create a continuing security interest in the Borrower Collateral and shall (i) remain in full force and effect until the Discharge of Obligations, or, with respect to any Borrower Collateral, Lender's written agreement to release such Borrower Collateral, (ii) be binding upon Lender and Borrower and each of its successors and assigns and (iii) inure together with the rights and remedies of Lender hereunder, to the benefit of Lender and its successors, transferees and assigns.

3.4     Addition of Artwork Collateral Pieces.     At any time and from time to time, Borrower may add artwork(s) to the then existing pool of Borrower Collateral (each, a "**Collateral Addition**") or substitute other artwork(s) for any Artwork Collateral Piece that is subject to the Lien granted by this Agreement (each, a "**Collateral Substitution**" and each such additional or other artwork being referred to as, the "**Proposed Artwork Piece**"), provided that, any such Collateral Addition or Collateral Substitution is approved in writing by Lender in its sole discretion prior to such Collateral Addition or Collateral Substitution, as the case may be, and such approval may be conditioned upon the satisfaction of certain conditions precedent prescribed by Lender, including, without limitation: (a) Borrower shall have notified Lender of its intention to effect a Collateral Addition or Collateral Substitution at least fifteen (15) days prior to the proposed effective date of such Collateral Addition or Collateral Substitution, (b) both immediately before and after giving effect to such Collateral Addition or Collateral Substitution, no Default or Event of Default shall have occurred and be continuing, (c) before and after giving effect to such Collateral Addition or Collateral Substitution, the Outstanding Amount shall not exceed the Borrowing Base, (d) the Proposed Artwork Piece shall satisfy all Eligibility Criteria, (e) Borrower shall have provided Lender with all items set forth in Annex I (Artwork Collateral Diligence) of Annex D hereof with respect to the Proposed Artwork Piece and (f) the Proposed Artwork Piece shall have been delivered to the Approved Storage Facility in a condition fully satisfactory to the Lender.

3.5     Amendments to Schedule A.     If, in connection with any Collateral Addition or Collateral Substitution in accordance with Section 3.4, any Artwork Collateral Piece is released from the Borrower Collateral or any Proposed Artwork Piece is added to the Borrower Collateral, Schedule A shall be deemed to be automatically amended by Lender to reflect such changes and Borrower hereby approves each such unilateral amendment. All reasonable costs and expenses incurred by Lender in connection with any of the foregoing shall be the sole responsibility of Borrower.

4.     Representations and Warranties.  Borrower hereby represents and warrants to Lender that:

4.1     Organization; Powers.  Borrower is duly organized, registered or incorporated, as the case may be, validly existing and in good standing under the laws of the jurisdiction of its organization, registration or incorporation, as the case may be, has all requisite power and authority to carry on its business as now conducted and, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Change, is qualified to do business, and is in good standing in, every jurisdiction where such qualification is required.

4.2     Authorization; Enforceability.  The Transactions are within Borrower's organizational powers and have been duly authorized by all necessary organizational actions of Borrower, and, if required, all stockholders' or other equity holders' actions on the part of Borrower. This Agreement and each other Loan Document to which Borrower is party have been duly executed and delivered by Borrower and constitute legal, valid and binding obligations of Borrower, enforceable against Borrower in accordance with their respective terms, subject to applicable Debtor Relief Laws.

4.3     Borrower Collateral.

4.3.1.     No financing statement, security agreement, instrument or other document purporting to cover any interest in all or any portion of the Borrower Collateral which has not lapsed or been terminated, naming Borrower (or any Affiliate of Borrower or, to the best knowledge of Borrower, any other Person) as debtor has been filed or is of record in any jurisdiction, except (i) financing statements filed or to be filed in respect of and covering the security interests granted hereby and (ii) those set forth on Schedule 4.3.1 hereto.

4.3.2.     Borrower is the sole and absolute lawful and beneficial owner of all Borrower Collateral.  The Borrower Collateral is free and clear of all Liens (other than those contemplated by clauses (i) and (ii) of Section 4.3.1).

4.3.3.     Borrower has the authority to sell and/or transfer good and marketable title to all Borrower Collateral.

4.3.4.     The Disposition of all or any part of the Borrower Collateral by Lender following an Event of Default in accordance with applicable law and the terms of this Agreement shall not require the consent of any Person and shall not constitute a breach or default under any agreement to which Borrower is a party or is bound by or to which its property is subject.

4.3.5.     (i) No Provenance Claim has been made with respect to any Artwork Collateral Piece, and (ii) no action, suit or proceeding by or before any arbitrator or Governmental Authority has been commenced or is pending regarding the authenticity of any Artwork Collateral Piece, the provenance of any Artwork Collateral Piece or Borrower's title to any Artwork Collateral Piece, (iii) no Person has raised, by any other means, any adverse allegation or question with respect to the authenticity of any Artwork Collateral Piece, the provenance of any Artwork Collateral Piece or Borrower's title to any Artwork Collateral Piece, and (iv) Borrower has no basis for concern that any adverse claim may exist with respect to the authenticity of any Artwork Collateral Piece, the provenance of any Artwork Collateral Piece or Borrower's title to any Artwork Collateral Piece.

4.3.6.     Borrower has not received any third-party claim, and to the best knowledge of Borrower there are no third-party claims, that would prevent any seller, assignee or purchaser of any Artwork Collateral Piece from receiving any payments or proceeds in respect thereof, without defense, counterclaim, setoff, right of recoupment, abatement or other claim or determination whatsoever.

4.3.7.     Borrower has not signed any legally binding agreement, contract or option to sell any Artwork Collateral Piece.

4.3.8.     If any Artwork Collateral Piece was imported to the United States, each such Artwork Collateral Piece has been permanently exported from its country of origin and/or country where it was located immediately prior to its importation into the United States ("**Country of Exportation**") in accordance with

4

**46**

all applicable laws of both its country of origin (if applicable), Country of Exportation and of the United States, all required declarations upon the export and import of such Artwork Collateral Piece have been properly made, and all duties and taxes on such export and import have been paid. Borrower further represents and warrants that Borrower has delivered to Lender, prior to the Closing Date, true, correct and complete copies of all documents and instruments pertaining to such export and import (including, without limitation, all import and export licenses, customs forms and bills of lading), and all other relevant information pertaining to such export and import, to demonstrate the accuracy of the representation and warranty contained in the immediately preceding sentence.

4.3.9.   Each Artwork Collateral Piece is authentic and was created by the artist indicated on Schedule A hereto, and the attribution, provenance, exhibition history and description of each Artwork Collateral Piece is as set forth in Schedule A hereto. Borrower further represents and warrants that the bill of sale (or other proof of ownership) and all documents and information with respect to each Artwork Collateral Piece delivered by Borrower to Lender on or prior to the Closing Date is authentic and accurately reflects all of the information in the foregoing sentence, to the extent applicable. To the knowledge of Borrower, the Collateral was not confiscated by any Governmental Authority at any time.

4.3.10. This Agreement creates in favor of Lender a legal, valid, continuing and enforceable security interest in the Borrower Collateral. Upon either (or both) of the delivery of possession of the Artwork Collateral Pieces to the Approved Storage Facility and/or the filing of a Uniform Commercial Code financing statement naming Borrower as debtor and Lender as Secured Party and describing the Borrower Collateral, Lender will have a fully perfected first priority security interest in each Artwork Collateral Piece (including without limitation the proceeds of such Borrower Collateral), in each case being prior and superior in right to any Lien or any other Person.

4.3.11. Each Artwork Collateral Piece shall be delivered to the Approved Storage Facility on or prior to the date that such Artwork Collateral Piece becomes Borrower Collateral under this Agreement.

4.4     No Consents. The Transactions (a) do not and will not require any consent or approval of, registration or filing with, or any other action by, any Governmental Authority or any other Person, except (i) such as have been obtained or made and are in full force and effect and (ii) filings and registrations necessary to perfect the Liens created hereunder; (b) do not and will not violate any applicable Requirements of Law; (c) do not and will not violate or result in a default under any indenture, agreement or other instrument binding upon Borrower or any of its assets, or give rise to a right thereunder to require any payment to be made by Borrower; (d) do not and will not result in the creation or imposition of any Lien on any asset of Borrower, except the Liens created hereunder, and (e) do not and will not violate or result in a default under any Organizational Documents.

4.5     Taxes. Borrower has filed all United States federal and other income tax returns and all other tax returns (federal, state, local and foreign) required to be filed by Borrower and has paid all taxes shown as due on such returns, assessments and governmental charges and levies thereon, in each case due and payable by Borrower, including interest and penalties, except for taxes being contested in good faith by appropriate proceedings and for which appropriate reserves are maintained.

4.6     Litigation. There are no actions or proceedings pending or, to the knowledge of Borrower, threatened against Borrower or any of Borrower's assets before any court, Governmental Authority or arbitrator, except as set forth in Schedule 4.6.

4.7     Solvency. Immediately after the consummation of the Transactions, Borrower will be Solvent. None of the Transactions will, or have been made with an intent to, hinder, delay or defraud any present or future creditor of Borrower, and Borrower has received reasonably equivalent value in exchange for its respective obligations under the Loan Documents.

4.8     Accuracy of Information, Etc. No written representation, warranty or other statement of Borrower in any Loan Document, affidavit, certificate or statement given by or on behalf of Borrower to Lender, for use in connection with the transactions contemplated by the Loan Documents, when taken as a whole, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

**47**

5

4.9     Compliance with Laws. Borrower is in compliance with all Requirements of Law binding or applicable upon Borrower or the property of Borrower.

4.10     [RESERVED].

4.11     Certain Information With Respect to Borrower.

4.11.1. Schedule 4.11.1 sets forth the following information with respect to Borrower: (i) its exact legal name of, as such name appears in its Organizational Documents; (ii) its jurisdiction of organization, incorporation or formation, as the case may be; (iii) the type of entity it is; (iv) whether it is a registered organization; (v) its organizational identification number, if any, if it registered organizations; (vi) the addresses where its registered office and places of businesses is located; (vii) its mailing address; and (viii) the addresses where all books and records relating to any Borrower Collateral is located. Except as set forth on Schedule 4.11.1, Borrower (i) has not changed its name, jurisdiction of organization, registered office or sole place of business or its corporate or organizational structure in any way (e.g., by merger, consolidation, change in corporate form or otherwise) or (ii) has not done business under any other name, in each case, within the past five (5) years immediately prior to the date of this Agreement.

4.11.2. Set forth on Schedule 4.11.2 is a true, correct and complete organizational structure chart of Borrower and its Affiliates and Subsidiaries, including each owner of each class of Borrower's Equity Interests and the percentage ownership of each such owner.

4.12     Investment Company Status. Borrower is not an "investment company" as defined in, or subject to regulation under, the Investment Company Act of 1940, as amended. Borrower is not subject to regulation under any Requirement of Law that limits its ability to incur indebtedness.

All representations and warranties contained herein or made in writing by Borrower in connection herewith shall survive the execution and delivery of this Agreement and any and all other Loan Documents or any of the Obligations and shall terminate only upon the Discharge of Obligations.

5.     Affirmative Covenants. Until the Discharge of Obligations, Borrower agrees as follows:

5.1     Additional Information. Borrower shall furnish to Lender promptly, but in any event no later than five (5) days following any request therefor, such information regarding (i) Borrower, (ii) Borrower's compliance with the terms of any Loan Document, and (iii) the Borrower Collateral, in each case as Lender may request from time to time.

5.2     Compliance with Laws; Payment of Obligations. Borrower will comply with all Requirements of Law applicable to it and its properties, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Change. Borrower will comply with all its payment obligations, including, without limitation, liabilities in respect of Taxes that, if not paid, could reasonably be expected to result in a Material Adverse Change before the same shall become delinquent or in default, except where (i) the validity or amount thereof is being contested in good faith by appropriate proceedings, and (ii) Borrower has set aside on its books (if any) adequate reserves with respect thereto. To the extent Borrower defers payment of any contested Taxes, Borrower shall (i) notify Lender in writing of the commencement of, and any material development in, the Tax determent proceedings, and (ii) post bonds or take any other steps required to prevent the Governmental Authority levying such contested Taxes from obtaining a Lien upon any of the Borrower Collateral.

5.3     Solvency. Borrower shall at all times remain Solvent.

5.4     Maintain Collateral Insurance.

5.4.1.   Borrower shall, at Borrower's own expense, maintain and keep in full force and effect at all times with respect to each Artwork Collateral Piece, a stand-alone "all risk", worldwide fine art insurance policy with a worldwide geographic territory covering each Artwork Collateral Piece, including coverage against fire, damage, theft and such other risks and extended coverages (including windstorm coverage and hurricane **48**

6