coverage) and containing no exclusions for mysterious disappearance, terrorism, flood or earthquake coverage; (i) issued by financially sound and reputable insurance companies acceptable to Lender and having a Best's Financial Strength Rating of "A" or higher and a Financial Size Category rating of "VII" or higher, as determined or otherwise as rated by A.M. Best Company, Inc. (and any successor thereto) (the "**Collateral Insurer**"); (ii) in form, amounts, coverages and basis satisfactory to Lender; provided, however, that, with respect to each Artwork Collateral Piece, the aggregate insurance coverage, net of any deductible amount, shall equal at all times at least 100% of the Fair Market Value, as defined by USPAP, of such Artwork Collateral Piece; (iii) require losses to be paid on an agreed value basis; (iv) name Lender as an additional insured and loss payee thereunder, via an endorsement to such insurance policy in form acceptable to Lender, with Lender's rights not to be affected by any act or neglect of Borrower; (v) provide that Lender be copied on all correspondence with the Collateral Insurer and insurance brokers, and cause the Collateral Insurer and insurance broker, to be so notified; and (vi) provide that at least thirty (30) days' prior written notice of cancellation, expiration, nonrenewal or substantial modification, and the opportunity to cure any failure by Borrower to pay premiums for such Collateral Insurance Policy, as defined below, shall be given to Lender.

    5.4.2. Borrower shall deliver, or cause to be delivered, to Lender copies of all policies required to be maintained under Section 5.4.1 (collectively, the "**Collateral Insurance Policies**"), as well as all endorsements, amendments and schedules thereto and certificates concerning the same (i) prior to the Closing Date, (ii) upon renewal or modification thereof. Borrower shall, within (5) Business Days after request by Lender, deliver to Lender originals of all Collateral Insurance Policies with respect to any Artwork Collateral Piece as Lender may request.

    5.4.3. In the event that Borrower at any time or times shall fail to obtain or maintain any of the Collateral Insurance Policies required hereby or to pay any premium in whole or part relating thereto, Lender may in its sole discretion, without waiving or releasing any obligation or liability of Borrower hereunder or any Event of Default, obtain and maintain such Collateral Insurance Policies and pay such premiums and take any other actions with respect thereto as Lender deems necessary to maintain the Borrower Collateral. In the event Lender pays any insurance premiums pursuant to this Section 5.4.3, Borrower shall reimburse Lender on demand for all out-of-pocket expenses of Lender in respect thereof.

    5.4.4. Borrower irrevocably makes, constitutes and appoints Lender (and all officers, employees or agents designated by Lender) as Borrower's true and lawful agent (and attorney in fact) for the purpose of making, settling and adjusting claims in respect of the Borrower Collateral, endorsing the name of Borrower on any check, draft, instrument or other item of payment for the proceeds of such Collateral Insurance Policies and for making all determinations and decisions with respect thereto.

   5.5 Location of Artwork Collateral Pieces. All Artwork Collateral Pieces shall at all times be located at the Approved Storage Facility. Lender shall contract directly with the Approved Storage Facility Bailee. The Approved Storage Facility Bailee shall act as Lender's agent (and not Borrower's Agent) with respect to possession of the Artwork Collateral Pieces and, after the Closing Date, shall only accept instructions from Lender with respect to the Artwork Collateral Pieces. Borrower shall pay Lender for all storage fees and other costs and expenses for all Artwork Collateral Pieces (collectively, "**Storage Costs**"). On the first day of each calendar quarter, Borrower shall pay to Lender in advance for all storage costs for such calendar quarter. In the event Borrower fails to timely pay any Storage Costs, Lender may (but shall not be obligated to) pay such Storage Costs directly to the Approved Storage Facility Bailee. In the event Lender directly pays any Storage Costs pursuant to this Section 5.5, Borrower shall reimburse Lender on demand for all out-of-pocket expenses of Lender in respect thereof.

   5.6 Preservation of Collateral. Borrower will (at Borrower's expense) defend and enforce on a timely basis Borrower's and Lender's right, title and interest in and to the Borrower Collateral against any adverse claims and demands of any third-party. Borrower shall take any and all actions necessary to (i) preserve the Borrower Collateral, (ii) defend and enforce on a timely basis, to the fullest extent permitted by applicable law, Borrower's and Lender's right, title and interest in and to the Borrower Collateral against any adverse claims and demands, (iii) defend the Lien on the Borrower Collateral granted by it to Lender and the priority thereof against any other Lien and all other claims and demands, (iv) timely pay all costs necessary to preserve, defend and enforce the Borrower Collateral, including, but not limited to, taxes, assessments, insurance premiums, repairs, rent, storage costs and expenses of sales, and any costs to perfect Lender's security interest in such Borrower Collateral. In the event that any such

Borrower Collateral is attached or levied, or if any Lien is imposed on any such Borrower Collateral in favor of any Person other than Lender (a "**Third Party Claimant**"), Borrower shall pay, discharge or bond the underlying obligation or cause the release of the affected Borrower Collateral from such Lien, attachment or levy, no later than five (5) days after Borrower's obtaining knowledge of any such attachment, levy or Lien, but in any event before such Third Party Claimant has the right to defeat Borrower's right to bond, contest or redeem.

5.7 Claims With Respect to Artwork Collateral Pieces. If at any time Lender shall become aware of a Provenance Claim with respect to any Artwork Collateral Piece (a "**Specified Collateral Event**") whether as a result of notice from Borrower or otherwise, then Borrower (i) shall, within five (5) Business Days after notice by Lender, provide such information as Lender may request regarding any Specified Collateral Event and (ii) may provide such other information as Borrower wishes to provide for Lender's consideration regarding the Specified Collateral Event. Lender shall have the right to engage one (1) or more Qualified Art Appraisers, experts and/or other examiners as it deems appropriate, in its sole discretion, to evaluate the Specified Collateral Event and the merits thereof and any potential impact on such Specified Artwork Collateral Piece's status in respect of the Eligibility Criteria and on its Artwork Collateral Value. After the occurrence of any such Specified Collateral Event, Lender shall be permitted to notify Borrower in writing that, as a result of such Specified Collateral Event, Lender (x) has determined that the Artwork Collateral Piece no longer satisfies the Eligibility Criteria or (y) has reduced the Artwork Collateral Piece Value of such Artwork Collateral Piece, whereupon the Borrowing Base shall immediately be adjusted as provided in such notice. If, as a result of the adjustment of the Artwork Collateral Piece Value of such Artwork Collateral Piece due to the Specified Collateral Event, the Borrowing Base exceeds the Outstanding Amount, Borrower shall, within ten (10) days provide additional collateral and/or repay the Loans in accordance with Section 1.4.2(b) of Annex C. Any reasonable costs and expenses incurred by Lender in connection with its examination and evaluation of any Specified Collateral Event, including any reasonable fees, costs and expenses of any Qualified Art Appraisers, attorneys, experts and other examiners, shall be borne solely by Borrower, and shall be payable by Borrower to Lender on demand.

5.8 Notices of Material Changes. Within five (5) Business Days of any of the following events, Borrower shall furnish to Lender written notice:

(a) of the occurrence of any Event Default, or any event that with the passage of time, giving of notice or both, would become an Event of Default;

(b) of the filing or commencement of any action, suit or proceeding by or before any arbitrator or Governmental Authority against or affecting Borrower or any of its properties that, if adversely determined, could be expected to result in a Material Adverse Change;

(c) of any damage to or impairment of any Artwork Collateral Piece (such notice to include a detailed description regarding the same and whether or not the same is covered by an insurance policy);

(d) of any theft, destruction or loss of any Artwork Collateral Piece (such notice to include a detailed description regarding the same and whether or not the same is covered by an insurance policy);

(e) that any Provenance Claim has been made by any Person with respect to any Artwork Collateral Piece; or of any filing or commencement of any action, suit or proceeding by or before any arbitrator or Governmental Authority with respect to, or the raising or discovery by any other means of, any adverse allegation or question with respect to (i) the authenticity, attribution or provenance of any Artwork Collateral Piece or (ii) the title of Borrower or of any of its predecessors in interest in or to any Artwork Collateral Piece;

(f) that any Artwork Collateral Piece does not satisfy any of the Eligibility Criteria; and

(g) of any other development or event that could reasonably be expected to result in a Material Adverse Change.

Each notice delivered under this Section shall be accompanied by a statement of Borrower setting forth the details of the event or development requiring such notice and any action taken or proposed to be taken with respect thereto.

NYSCEF DOC. NO. 8                                                          RECEIVED NYSCEF: 06/17/2020

5.9     Further Assurances. Borrower will execute and deliver, or cause to be executed and delivered, to Lender such documents, agreements and instruments, and will take or cause to be taken such further actions (including the filing and recording of financing statements and other documents), which may be required by law or which Lender may, from time to time, request to carry out the terms and conditions of this Agreement and the other Loan Documents and to ensure the validity, perfection and priority of the Liens created or intended to be created by this Agreement, all at the expense of Borrower.

5.10     Use of Proceeds. Borrower shall use the proceeds of the Loans (i) for general corporate purposes, (ii) to pay fees and expenses in connection with the Transactions and (iii) as consideration for the purchase, from the Corporate Guarantor, of the Artwork Collateral Pieces set forth on Schedule A on the Closing Date, to refinance the Existing Corporate Guarantor Credit Agreement. Borrower shall not use the proceeds of the Loans directly or indirectly (A) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any Requirements of Law applicable to Borrower from time to time concerning or relating to bribery or corruption or (B) for the purpose of funding, financing or facilitating any activities, business or transaction of or with (a) any Person listed in any sanctions related list of designated Persons maintained by the Office of Foreign Assets Control of the U.S. Department of the Treasury, the U.S. Department of State, or by the United Nations Security Council, the European Union or any EU member state, or any Person directly or indirectly owned 25% or more, by any such Persons, (b) any Person operating, organized or resident in a country or territory that is, or whose government is, the subject or target of any sanctions or (c) an agency or instrumentality of, or an entity owned or controlled by, the government of a country, territory that is or whose government is, the subject or target of any sanctions.

5.11     Access/Inspection Rights. Borrower will permit any representatives and/or agents designated by Lender, upon reasonable prior notice, to (i) visit and inspect its properties, to examine and make extracts from its books and records, and to discuss the quality, quantity, value, condition and status of, or any other matters relating to, the Borrower Collateral, in each case with Borrower and its employees, (if applicable) officers, and independent accountants, and (ii) conduct audits and inspections of the Borrower Collateral, in each case, at such reasonable times and as often as requested, at the sole expense of Borrower.

5.12     Financial Reporting.

5.12.1. Annual Financial Reporting.     Borrower shall furnish to Lender, as soon as available and, in any event, within 120 days after the close of each fiscal year, annual financial statements for the Borrower, including, without limitation, a balance sheet of the Borrower as of the close of such fiscal year and statements of income, expenses, retained earnings, and cash flows for the year then ended together with all supporting schedules.

5.12.2. Quarterly Financial Reporting.     Borrower shall furnish to Lender, as soon as available and, in any event, within sixty (60) days after the end of each calendar quarter, quarterly financial statements for the Borrower, including, without limitation, a balance sheet of the Borrower as of the close of such calendar quarter and statements of income, expenses, retained earnings, and cash flows for the calendar quarter then ended together with all supporting schedules.

6.     Negative Covenants. In addition to the other undertakings in this Agreement, until the Discharge of Obligations, Borrower hereby covenants to Lender that, without obtaining prior written consent of Lender, which consent shall be in Lender's sole and absolute discretion:

6.1     Liens. Borrower shall not create, incur, assume or suffer to exist any Lien on any portion of its assets, whether now owned or hereafter acquired (other than Liens in favor of the Lender under the Loan Documents).

6.2     Disposition of Collateral by Borrower. Borrower shall not sell any Artwork Collateral Piece unless: (a) Borrower provides at least fifteen (15) days prior written notice to Lender of such sale, accompanied by a fully executed sale contract acceptable to Lender in its reasonable discretion; (b) the sale price (net of all third-party commissions and fees) for such Artwork Collateral Piece shall be at least equal to the Artwork Collateral Piece Value of such Artwork Collateral Piece at such time (or such lesser amount as agreed by Lender in writing in its sole

51

discretion); (c) after giving effect to such sale, the Outstanding Amount shall not exceed the Borrowing Base; and (d) Borrower repays the Obligations in accordance with Section 1.4.2(c) of Annex C. No Artwork Collateral Piece shall be released by Lender from the Approved Storage Facility until the amount due to Lender in accordance with Section 1.4.2(c) of Annex C has been paid in full.

6.3     Cleaning, Repairs, Restorations Etc.  Borrower shall not cause or permit any Artwork Collateral Piece to be cleaned, repaired, restored or otherwise altered in any way, without the prior written consent of Lender (which consent shall be in Lender's sole discretion), except in the case of an emergency when the absence of immediate intervention would result in serious damage.

6.4     Legal Name, Etc.  Borrower will not change its (i) legal name, (ii) the location of its registered office or principal places of business as set forth, (iii) identity or organizational structure, (iv) organizational identification number, if any, or (v) jurisdiction of organization or formation (as the case may be) (in each case, including by merging with or into any other entity, reorganizing, dissolving, liquidating, reorganizing or organizing in any other jurisdiction), until (a) it shall have given Lender not less than 10 days' prior written notice (in the form of an officers' certificate executed by an authorized officer of Borrower), or such lesser notice period as agreed to by Lender, of its intention to do so, clearly describing such change and providing such other information in connection therewith as Lender may request; and (b) it shall have taken all action demanded by Lender to maintain the perfection and priority of the security interest of Lender in the Borrower Collateral.  Borrower shall promptly provide Lender with certified Organizational Documents reflecting any of the changes described in the preceding sentence.

6.5     Fundamental Changes.  Borrower shall not merge into or consolidate with any other Person, or permit any other Person to merge into or consolidate with it, or sell, transfer, lease or otherwise dispose of (in one transaction or in a series of transactions) all or substantially all of its assets (in each case, whether now owned or hereafter acquired), or liquidate, wind-up or dissolve (or suffer any liquidation, winding up or dissolution).

6.6     Nature of Business.  Borrower shall not engage (to any material extent) in any business other than businesses of the type conducted by Borrower on the date hereof and businesses reasonably similar or related thereto.

6.7     Amendments to Organizational Documents.  Borrower shall not amend, modify, supplement, restate, replace, waive or change, or permit the amendment, modification, supplement, restatement, replacement, waiver or change of, any provision of any of its Organizational Documents, if any such amendment, modification, supplement, restatement, replacement, waiver or change would be adverse to the interests of Lender.

6.8     Creation of Subsidiaries.  Borrower will not establish, form, create or acquire any Subsidiaries.

6.9     Indebtedness.  Borrower shall not create, incur, assume or suffer to exist any Indebtedness other than: (a) the Obligations, (b) any unsecured Indebtedness of Borrower incurred for the purchase of Artwork Collateral Pieces or (c) any unsecured Indebtedness of Borrower incurred for general corporate purposes or for the purpose of servicing the Obligations hereunder, provided that, any Indebtedness under clause (b) or (c) of this Section 6.9 may only be provided to Borrower by Individual Guarantor or Corporate Guarantor and only if the payment of such Indebtedness is fully and unconditionally subordinated to the Obligations pursuant to the Subordination Agreement.

6.10    Special Purpose Entity Covenants.  Borrower shall not, without the prior written consent of Lender:

(a)     engage in any business other than activities related to the acquisition, ownership, selling or otherwise transferring of artworks;

(b)     acquire or own any material asset other than artworks and such incidental personal property as may be necessary or advisable for the ownership thereof;

(c) merge into or consolidate with any Person or dissolve, terminate or liquidate in whole or in part, or change its legal structure;

(d) fail to preserve its existence as a limited company duly organized, validly existing and in good standing (if applicable) under the Companies (Jersey) Law 1991, as amended;

(e) amend, modify, terminate or fail to comply with the provisions of the Borrower's Organizational Documents;

(f) own any Subsidiary or make any investment in or acquire the obligations or Equity Interests of any other Person;

(g) commingle its assets with the assets of any of its shareholders, partners, members, principals, equity holders, or any other Person, or transfer any material assets to any such Person, other than a purchaser pursuant to a bona-fide sale of an Artwork Collateral Piece permitted hereunder;

(h) incur any indebtedness except as permitted pursuant to Section 6.9 hereof;

(i) allow any Person, other than the Individual Guarantor, to pay its debts or liabilities, or fail to pay its own (Borrower's) debts and liabilities solely from its own assets;

(j) fail to maintain its records, books of account and bank accounts separate and apart from those of the shareholders, partners, members, equity holders and Affiliates of Borrower or any other Person, or fail to prepare and maintain its own financial statements in accordance with sound accounting principles;

(k) enter into any contract or agreement with any shareholder, partner, member, principal, equity holder or Affiliate;

(l) seek dissolution or winding up, in whole or in part;

(m) fail to correct any known misunderstandings regarding the independent and separate identity of Borrower;

(n) hold itself out to be responsible for, or pledge its assets or creditworthiness to support indebtedness of another Person, or allow any Person to hold itself out to be responsible or pledge its assets or creditworthiness for indebtedness of Borrower (except pursuant to the Loan Documents);

(o) make any dividends, loans or advances to any third-party, including any shareholder, principal or Affiliate of Borrower, or any shareholder, partner, member, principal, equity holder or Affiliate thereof;

(p) fail to file its own tax returns or to use separate contracts, purchase orders, stationery, invoices and checks;

(q) fail either to hold itself out to the public as a legal entity, separate and distinct from any other Person, or to conduct its business solely in its own name in order not (i) to mislead others as to the entity with which such other party is transacting business, or (ii) to suggest that Borrower is responsible for the indebtedness of any third-party (including any shareholder, partner, member, principal, equity holder or Affiliate of Borrower), except pursuant to the Loan Documents;

(r) fail to allocate fairly and reasonably among Borrower and any third-parties any overhead for common employees, shared office space or other overhead and administrative expenses;

(s) allow any Person to pay the salaries of Borrower's employees, if any;

(t) file a voluntary petition or otherwise initiate proceedings seeking liquidation, reorganization or other relief under any Federal, state or foreign Debtor Relief Laws, for Borrower, or consent to the institution of, or fail to contest in a timely and appropriate manner, a proceeding or petition under Debtor Relief Laws against Borrower, or file a petition seeking or consenting to reorganization or similar relief of Borrower, or seek or consent to the appointment of any trustee, receiver, conservator, assignee, sequestrator, custodian, liquidator (or other similar official) of Borrower or all or any substantial part of the properties and assets of Borrower, or make any general assignment for the benefit of creditors of Borrower, or admit in writing the inability of Borrower to pay its debts generally as they become due or declare or effect a moratorium on Borrower's debt, or take any action in furtherance of any such action;

(u) share any common logo with or hold itself out as or be considered as a department or division of (x) any shareholder, partner, member, principal, equity holder or Affiliate of Borrower, (y) any Affiliate of a shareholder, partner, member, principal, equity holder or Affiliate of Borrower, or (z) any other Person; or allow any Person to identify Borrower as a department or division of that Person; or

(v) conceal assets from any creditor, or enter into any transaction with the intent to hinder, delay or defraud creditors of Borrower or the creditors of any other Person.

7. <u>Events of Default</u>. Each of the following events or conditions shall constitute an "**Event of Default**" (whether it shall be voluntary or involuntary or come about or be effected by any law or otherwise):

7.1 <u>Failure to Pay</u>. Borrower shall fail to pay any principal, interest, fee or other amount payable under any Loan Document, when and as the same shall become due and payable, and such failure shall continue un-remedied for a period of thirty (30) days from the due date thereof.

7.2 <u>Breach of Covenants</u>.

7.2.1. Breach of any covenant made by Borrower in this Agreement or any Loan Document to which Borrower is a party;

7.2.2. Breach of any covenant made by Individual Guarantor in the Individual Guaranty or any Loan Document to which Individual Guarantor is a party;

7.2.3. Breach of any covenant made by Corporate Guarantor in the Corporate Guaranty or any Loan Document to which Corporate Guarantor is a party

7.3 <u>Misrepresentations</u>. Any representation, warranty or certification made by any Loan Party on or in connection with this Agreement or any other Loan Document or any amendment or modification hereof or thereof or wavier hereunder or thereunder, or in any report, certificate, financial statement or other document furnished pursuant to or in connection with this Agreement or any other Loan Document or any amendment or modification hereof or thereof or waiver hereunder or thereunder, shall prove to have been false or misleading in any material respect when made or deemed made.

7.4 <u>Occurrence of Material Adverse Change</u>. There occurs, in the good faith judgment of Lender, a Material Adverse Change.

7.5 <u>Bankruptcy; Insolvency</u>.

7.5.1. Any Loan Party is unable to, or admits in writing its inability to, pay its debts as they become due.

7.5.2. An involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (A) liquidation, reorganization or other relief in respect of any Loan Party, or the debts of any Loan Party, or of a substantial part of the assets of Borrower or Individual Guarantor, under any Federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect, or (B) the appointment of a receiver,

trustee, custodian, sequestrator, conservator or similar official for any Loan Party, or for a substantial part of the assets of any Loan Party, and, in any such case, such proceeding or petition shall continue un-dismissed for thirty (30) days or an order or decree approving or ordering any of the foregoing shall be entered.

      7.5.3. Any Loan Party shall (i) voluntarily commence any proceeding or file any petition seeking reorganization or other relief under any Federal, state or foreign bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (ii) consent to, or acquiesce in, the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in Section 7.5.2, (iii) apply for, consent to, or acquiesce in, the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for any Loan Party, or for a substantial part of its assets, (iv) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors or (vi) take any action for the purpose of effecting any of the foregoing.

      7.5.4. Any steps are taken towards the Borrower being declared "bankrupt", as defined in the Interpretation (Jersey) Law 1954.

   7.6  Validity of Loan Documents. (a) Any provision of any Loan Document ceases for any reason to be valid, binding and in full force and effect, other than as expressly permitted hereunder or thereunder; (b) any Loan Party contests in any manner the validity or enforceability of any material provision of any Loan Document; (c) any Loan Party denies that it has any or further liability or obligation under any provision of any Loan Document (other than the Discharge of Obligations) or purports to revoke, terminate or rescind any provision of any Loan Document; or (d) this Agreement shall at any time after its execution and delivery for any reason cease to create a valid and perfected first priority Lien in and to the Borrower Collateral.

   7.7  Death/Incapacity. Individual Guarantor (x) becomes incapacitated or incompetent, as determined by a court of competent jurisdiction or (y) dies unless, within thirty (30) days of such death or determination (as the case may be), either (i) in the case of any determination of incapacity or incompetency, a guardian is appointed by such court for Individual Guarantor and Lender has received assurance acceptable to Lender in its sole discretion that Individual Guarantor will continue to be bound by, and will continue to satisfy his obligations under the Individual Guarantee, or (ii) all liabilities, covenants and other obligations of Individual Guarantor under the Individual Guarantee are assumed by (x) in the case of death, the estate of the Individual Guarantor and/or (y) one or more Persons who are acceptable to Lender in its sole discretion, in each case with respect to the foregoing clauses (i) and (ii), pursuant to definitive documentation that is acceptable to Lender in form and substance.

   7.8  Change in Control. Individual Guarantor shall fail to directly own 100% of the issued and outstanding Equity Interest in each of Borrower and Corporate Guarantor, free and clear of all Liens or other encumbrances.

8.  Remedies of Lender. If an Event of Default occurs and is continuing:

   8.1  Remedies Generally. Lender may, by notice to Borrower, (a) declare the outstanding principal of the Loans, all interest thereon and all other Obligations to be forthwith due and payable, whereupon the Loans, all such interest and all other Obligations shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Borrower, (b) terminate the Commitment, whereupon the Commitment shall terminate immediately and (c) exercise and pursue such rights and remedies available under the Loan Documents, at law and/or in equity; provided, however, that, in the case of an Event of Default referred to in Section 7.5, the Commitment shall terminate automatically, the Loans, all interest thereon and all other Obligations shall be immediately due and payable, and the Default Rate shall immediately take effect with respect to all unpaid Obligations, all without notice, presentment, demand, protest or other formalities of any kind, all of which are hereby expressly waived by Borrower.

   8.2  Disposition of Collateral. Lender may from time to time without notice, except as specified in this Agreement, assign or otherwise Dispose of the Borrower Collateral or any Artwork Collateral Piece in one or more parcels at public or private sale or sales (which sales may be adjourned or continued from time to time with or without notice and may take place at any of Lender's premises or elsewhere), for cash, or credit or for future delivery, and upon such other terms as are commercially reasonable. Lender may comply with any applicable state or federal

law requirements in connection with a Disposition of the Borrower Collateral or any Artwork Collateral Piece and compliance shall not be considered to adversely affect the commercial reasonableness of any sale of the Borrower Collateral or any Artwork Collateral Piece. Lender or any of its Affiliates or designees shall have the right upon any such public sale or sales and, to the extent permitted by law, to purchase for its own benefit, the whole or any part of the Borrower Collateral so sold, free of any right of equity of redemption, which equity of redemption Borrower hereby expressly releases.

8.3   Right to Take Possession. Lender shall have the right to take possession of any Borrower Collateral not already in its possession.

8.4   Receiver/Custodian. Lender may, if it so elects, seek the appointment of a receiver or custodian to take possession of the Borrower Collateral or any portion thereof and to enforce any of Lender's remedies, with respect to such appointment without prior notice or hearing as to such appointment.

8.5   Limitation of Lender's Duties Generally. Notwithstanding anything in any of the Loan Documents to the contrary, Lender shall not be required to (i) make any demand upon, or pursue or exhaust any of its rights or remedies against, Borrower, any other obligor, guarantor, pledgor or any other Person with respect to the payment of the Obligations, or to pursue or exhaust any of its rights or remedies with respect to any Borrower Collateral or any direct or indirect guarantee thereof, (ii) marshal the Borrower Collateral or any guarantee of the Obligations, or to resort to the Borrower Collateral or any such guarantee in any particular order, or (iii) effect a public sale of any Borrower Collateral.

8.6   Private Sales. Borrower recognizes that Lender may be unable to effect a public sale of any or all the Borrower Collateral and may be compelled to resort to one or more private sales thereof in accordance with Section 8.2. Borrower also acknowledges that any private sale may result in prices and other terms less favorable to the seller than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of such sale being private.

8.7   Limitation of Lender's Duties With Respect to Dispositions. Notwithstanding anything to the contrary contained in this Agreement, in connection with any Disposition of Borrower Collateral pursuant to this Section 8: (i) Lender may in its sole discretion, but shall not be under any obligation to, engage an auction house for the purpose of selling any of the Artwork Collateral Pieces; (ii) Lender may set a commercially reasonable (in light of current market conditions) reserve or minimum bid price (whether disclosed or undisclosed) below which any referenced Artwork Collateral Piece may not be sold at such auction, and Lender may purchase any Artwork Collateral Piece at such price if no bids satisfactory to Lender for the same are received; (iii) notice of any sale of any Artwork Collateral Piece may be given by publishing during the period commencing ten (10) days prior to the date of the sale an advertisement describing such Artwork Collateral Piece (to be sold) by artist, title and medium (which advertisement need not make any reference to Lender, to any Loan Documents, or to the foreclosure or other circumstances surrounding the sale), which may be published in the New York Times or in such other publication as may be reasonably selected by the auction house, and it is agreed that such notice shall constitute adequate and reasonable notice to Borrower and the public of any such auction or other sale; and (iv) any such Artwork Collateral Piece may be pictured and described to the extent deemed desirable by the auction house in any catalogue(s) produced by it with respect to the proposed sale, provided that any license for such depiction and description required to be obtained from any Person with intellectual property rights in such Artwork Collateral Piece (other than Borrower) shall have been obtained.

8.8   Proceeds of Collateral Sale. All cash proceeds received by Lender in respect of any sale, collection from, or other realization upon all Borrower Collateral or any Artwork Collateral Piece shall be applied in whole or in part by Lender against all or any part of any Obligations in such order as Lender shall elect in its sole discretion. After all Obligations are paid in full, all remaining excess cash proceeds in respect of any sale, collection from, or other realization upon any Borrower Collateral shall be refunded to Borrower.

8.9   Waivers. Borrower hereby waives notice of the time and place of any public sale or the time after which any private sale or other Disposition of any part of the Borrower Collateral may be made. To the extent such notice may not be waived under applicable law any notice made shall be deemed reasonable if sent to

Borrower, addressed as set forth in Section 12.10, at least fifteen (15) days prior to (i) the date of any such public sale, or (ii) the time after which any such private sale or other Disposition may be made. To the maximum extent permitted by applicable law, Borrower waives all claims, damages, and demands against Lender and all other Indemnified Persons arising out of the lawful repossession, retention or sale of the Borrower Collateral including any Artwork Collateral Piece, except, as to Lender or any other Indemnified Person, as applicable, such as arise solely out of the gross negligence, or willful misconduct, of Lender or such Indemnified Person, as finally determined by a court of competent jurisdiction. To the extent it may lawfully do so, Borrower absolutely and irrevocably waives and relinquishes the benefit and advantage of, and covenants not to assert against Lender, any claim or demand on account of any valuation, stay, appraisal, extension, moratorium, redemption or similar laws and any and all rights or defenses it may have as a surety now or hereafter existing which, but for this provision, might be applicable to the sale of any Borrower Collateral made under the judgment, order or decree of any court, or privately under the power of sale conferred by this Agreement, or otherwise.

8.10 Limitation of Lender's Duties With Respect to Collateral Maintenance. Lender shall have no obligation to restore or otherwise prepare the Borrower Collateral for sale. Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Borrower Collateral in its possession if such Borrower Collateral is accorded treatment substantially equivalent to that which Lender, in its own capacity, accords its own property of a similar nature and value, it being understood that Lender shall have no responsibility for taking any necessary steps to preserve rights against any Person with respect to any Borrower Collateral. Lender shall not have any other duty as to any Borrower Collateral in its possession or control or in the possession or control of any agent or nominee of Lender, or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto. To the extent that applicable law imposes duties on Lender to exercise remedies in a commercially reasonable manner, Borrower acknowledges and agrees that it is commercially reasonable for Lender: (i) to fail to incur expenses (including for the removal of Liens) deemed material relative to the value of the Borrower Collateral by Lender in its sole discretion to prepare Borrower Collateral for Disposition; or (ii) to disclaim Disposition warranties, such as title, attribution, provenance, authenticity, possession or quiet enjoyment. Borrower acknowledges that a purpose of this Section is to provide non-exhaustive indications of the kinds of actions and omissions by Lender would be commercially reasonable in Lender's exercise of remedies against the Borrower Collateral or any Artwork Collateral Piece.

8.11 No Duty to Mitigate Damages. Lender shall not be required to do any act whatsoever or exercise any due diligence whatsoever to mitigate any damages if any Event of Default shall occur and be continuing.

8.12 Cumulative Rights. All rights and remedies specified herein are cumulative and are in addition to such other rights and remedies as are otherwise available to Lender.

8.13 Power of Attorney. Effective upon the occurrence and during the continuance of an Event of Default, Borrower hereby irrevocably makes, constitutes and appoints Lender and any of its officers, agents or designees, its true and lawful attorney in fact, with full power and authority in the stead of Borrower and in the name of Borrower or otherwise to do any and all acts necessary or proper to carry out the intent of this Agreement. The authorization contained in this Section shall not relieve Borrower of any of its obligations under this Agreement or any other Loan Document. All acts of said attorney in fact or designee(s) in accordance with this Section are hereby ratified and approved. The powers conferred on Lender under this Section are solely to protect Lender's interests in the Borrower Collateral and shall not impose any duty upon Lender to exercise any such powers.

8.14 Collateral Administration Fee. If Lender liquidates the Borrower Collateral following an Event of Default, Borrower shall pay a Collateral Administration Fee in accordance with Section 1.9.3 of Annex C.

9. Indemnification. Borrower shall indemnify Lender and its Affiliates, and their respective directors, officers, employees, managers, members, partners, attorneys, agents (including, without limitation, all Qualified Art Appraisers, other appraisers, Conservators, authenticators, provenance researchers, third party due-diligence researchers, any third party engaged by Lender in connection with a Disposition or otherwise engaged by Lender in connection with this Agreement) (each such Person being called an "**Indemnified Person**") against, and hold each Indemnified Person harmless from, any and all losses, actions, claims, demands, suits, judgments, damages, fines, penalties, liabilities, costs, disbursements and related expenses, including the fees, charges and disbursements of any counsel for any Indemnified Person, incurred by or asserted against any Indemnified Person arising out of, in

connection with, or as a result of (i) the preparation, negotiation, execution, delivery, performance or administration of any Loan Document, or any other agreement, instrument or other document contemplated by any of the Loan Documents, the performance by any Loan Party of its obligations thereunder, or the consummation of the Transactions or any other transactions contemplated hereby or thereby, (ii) the enforcement of any Loan Document, or any other agreement, instrument or other document contemplated by any of the Loan Documents, (iii) the Loans or the use of the proceeds therefrom, or (iv) any actual or prospective suit, claim, litigation, dispute, inquiry, investigation or proceeding, or the preparation of any defense thereto, arising out of or relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnified Person is a party thereto; provided, that, such indemnity and hold harmless agreement shall not, as to any Indemnified Person, be available to the extent that any such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnified Person. To the fullest extent permitted by applicable law, Borrower hereby agrees not to assert, and hereby unconditionally and irrevocably waives, any claim against any Indemnified Person, on any theory of liability, for special, exemplary, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the transactions contemplated hereby or thereby, the Loans or the use of proceeds thereof. This Section shall survive the termination of this Agreement.

10. <u>Taxes</u>. Borrower shall pay to Lender the amount of all taxes assessed upon Lender with respect to any amount payable by Borrower to Lender under any Loan Document (other than income or franchise taxes). In the event that any Taxes are imposed with respect to or deducted from the payment of any amounts required payable under this Agreement, Borrower shall increase and add to the amount payable under this Agreement in amounts necessary so that the net amount actually received by Lender after the imposition or deduction of Taxes will equal the amount that would have been received by Lender had such Taxes not been imposed or deducted.

11. <u>Confidentiality and Publicity</u>.

    11.1 <u>Confidentiality of Borrower Information</u>. Lender agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed: (a) to Lender's Affiliates and any of its Affiliates' directors, officers, employees and agents, including accountants, legal counsel and other advisors involved in the Transactions (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (b) to the extent requested by any Governmental Authority, (c) to the extent required by applicable laws or regulations or by any subpoena or similar legal process, (d) to any other party to any of the Loan Documents, (e) in connection with the exercise of any remedies hereunder or any suit, action or proceeding relating to this Agreement or any other Loan Document or the enforcement of rights hereunder or thereunder, (f) with Borrower's prior written consent and, (g) subject to an agreement containing provisions substantially the same as those of this Section, to (i) any assignee of or participant in, or sub-participant of any such participant, or any prospective assignee of or participant in, any of its rights or obligations under this Agreement or (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to Borrower or its obligations hereunder, or (h) to the extent such Information (A) becomes publicly available other than as a result of a breach of this Section, or (B) becomes available to Lender on a non-confidential basis from a source other than a Loan Party. As used herein, "**Information**" means the Loan Documents and all information received from Borrower relating to any Loan Party, other than any such information that is available to Lender on a non-confidential basis prior to disclosure by the applicable Loan Party. Any Person required to maintain the confidentiality of Information as provided in this Section shall be considered to have complied with its obligation to do so if such Person has exercised the same degree of care to maintain the confidentiality of such Information as such Person would accord to its own confidential information. In no event shall Lender or any other Person that holds Information be obligated to return or destroy such Information.

    11.2 <u>Confidentiality of Loan Documents</u>. Borrower agrees to maintain the confidentiality of the existence of the Loan Documents and the terms and other subject matter thereof, except such information may be disclosed (a) to Borrower's advisors and agents, including accountants and legal counsel, involved in the Transaction in connection with the Loans and the Transactions (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such information and instructed to keep such information confidential), (b) to the extent requested by any Governmental Authority, (c) to the extent required by applicable laws or regulations or by any subpoena or similar legal process and (d) with the prior written consent of Lender.