ANNEX C

LOAN MECHANICS; INTEREST; PREPAYMENTS; LATE FEE; ETC.

1.    Loan and Terms of Payment

1.1    Procedure for Borrowing. To request a Loan, Borrower shall notify Lender of such request by submitting a Draw Request, duly executed by Borrower, not later than 10 Business Days prior to the proposed funding date of such Loan. On each Loan Closing Date, Lender shall, by wire transfer of U.S. Dollars, pay the proceeds of the applicable Loan, net of all Lender Expenses (including, fees of Qualified Art Appraisers and Conservators, Art Loss Register searches, provenance research, due diligence research, UCC and other search fees and filing costs, and all fees and disbursements of Lender's counsel) incurred by Lender in respect of such Loan Closing Date; provided, that, on the Closing Date, the proceeds of the Loan made on the Closing Date shall also be funded net of the Loan Origination Fee.

1.2    Promise to Pay; Repayment of Loan; Late Fee. In addition to any other payment obligations under the Loan Documents, Borrower hereby unconditionally promises to pay to Lender the outstanding principal amount of each Loan, the accrued and unpaid interest thereon, and the accrued and unpaid Lender Expenses, as and when due and payable in accordance with this Agreement. The aggregate principal amount of each Loan outstanding, together with any accrued and unpaid interest in respect of such Loan and Lender Expenses ascribed by Lender to such Loan, shall be payable by Borrower to Lender on the Maturity Date in respect of such Loan in full and in cash in U.S. Dollars. To the extent not previously repaid, all unpaid Loans shall be payable in full in cash in U.S. Dollars, together with all accrued but unpaid interest, on the Final Maturity Date. If Borrower fails to make any payment of principal or interest on any Loan within seven (7) days after the same becomes due, whether by reason of maturity, acceleration or otherwise, in addition to other rights and remedies (if any) of Lender under this Agreement and at law or in equity, Borrower shall pay Lender (upon demand with respect to each such late payment) a late fee in an amount equal to two percent (2%) of such unpaid amount.

1.3    Evidence of Debt. Lender shall maintain in accordance with its usual practice an account or accounts evidencing indebtedness of Borrower to Lender resulting from the Loans, including the amounts of principal and interest payable and paid to Lender from time to time under this Agreement. Such records of Lender shall be presumptively correct.

1.4    Voluntary Prepayments; Mandatory Prepayments.

1.4.1.  Voluntary Prepayments.

(a)    Subject to the Make Whole Prepayment Fee set forth in Section 1.4.1(b) of this Annex C and the notice requirement set forth in Section 1.4.1(c) of this Annex C, Borrower may prepay the Loans, in whole or in part, at any time and from time to time.

(b)    If Borrower prepays any Loan (in whole or in part) prior to the One-Year Anniversary Date of such Loan pursuant to Section 1.4.1(a) of this Annex C, Borrower shall pay to Lender (on the date of such prepayment) the Makewhole Prepayment Fee with respect to each such prepayment.

(c)    Borrower shall notify Lender in writing of any voluntary prepayment no later than five (5) Business Days prior to any proposed prepayment date. Each such notice shall be irrevocable and shall specify the prepayment date and the principal amount to be prepaid.

(d)    Each prepayment made under this Section 1.4.1 shall be (i) in an amount that is an integral multiple of $100,000 and not less than $100,000 and (ii) accompanied by accrued and unpaid interest on the amount being prepaid through the date of prepayment.

**73**

i

1.4.2.  Mandatory Prepayments.

(a)  Readjustment of Artwork Collateral Value.  Lender shall have the right to adjust the Artwork Collateral Piece Value of any Artwork Collateral Piece based upon (i) any Specified Collateral Event pursuant to Section 5.7, (ii) any Qualified Art Appraisal performed in accordance with Section 2.3.1 or (iii) any Qualified Art Appraisal performed in accordance with Section 2.3.2 at any time that (x) a material adverse art market event has occurred (as determined by Lender in its sole discretion) since the most current Qualified Art Appraisal or (y) an Event of Default has occurred and is continuing.

(b)  Mandatory Prepayment Upon Collateral Devaluation.  If, after the adjustment of the Artwork Collateral Value pursuant to Section 1.4.2(a) of this Annex C, Lender determines that the Borrowing Base is less than the Outstanding Amount, then Borrower shall, within thirty (30) days of Borrower's receipt of written notice from Lender of such shortfall, either (A) provide additional unencumbered collateral, satisfactory to Lender in its sole discretion, with sufficient value (as determined by Lender in its sole discretion) to increase the Borrowing Base to an amount equal to or greater than the Outstanding Amount, (B) repay the Outstanding Amount such that the Outstanding Amount shall not exceed the Borrowing Base or (C) any combination of the foregoing that will result in the Borrowing Base being equal to or greater than the Outstanding Amount, provided that, if such adjustment of the Artwork Collateral Value occurs pursuant to clause (ii) or (iii)(x) of Section 1.4.2(a) of this Annex C, Borrower shall not be required to effect any of the actions described in clauses (A), (B) or (C) above unless the Artwork Collateral Value has decreased by more than ten percent (10%) since the Closing Date.

(c)  Mandatory Prepayment Upon Collateral Sale/Loss.  If, in connection with any Artwork Collateral Piece, Borrower receives Net Cash Proceeds, Borrower shall (on the date it receives such Net Cash Proceeds) repay the Outstanding Amount in an amount such that the Outstanding Amount is less than the Borrowing Base, *provided that*, in connection with the sale of any Artwork Collateral Piece, Borrower shall direct the purchaser of such Artwork Collateral Piece to remit all of the gross sale proceeds in respect of such sale directly to such account of Lender as Lender shall specify, and Lender shall (x) apply a portion of such gross sale proceeds to the Obligations in the amount required under this Section 1.4.2(c) for application in accordance with Section 1.4.3 of this Annex C and (y) remit any excess amount to Borrower.  If Borrower prepays any Loan (in whole or in part) on or before the One-Year Anniversary Date of such Loan pursuant to this Section 1.4.2(c), Borrower shall pay Lender (on the date of such prepayment) the Makewhole Prepayment Fee with respect to such prepayment.

1.4.3.  Application of Voluntary Prepayments and Mandatory Prepayments.  Each prepayment or repayment in accordance with Section 1.4.1 or 1.4.2 of this Annex C shall be applied (A) first to any Lender Expenses, (B) second to any accrued and unpaid interest due on the amount prepaid, and (C) third to principal of the Loan in such manner as Lender in its sole discretion shall determine.

1.5  Interest.

1.5.1.  Interest Rate.  Each Loan shall bear interest on the outstanding principal amount thereof at a floating daily rate equal to the sum of (i) Applicable Margin plus (ii) the higher of (x) the Applicable LIBOR Rate and (y) 0.75%.

1.5.2.  Default Rate.  Notwithstanding anything herein to the contrary, immediately upon the occurrence and during the continuance of any Event of Default, at the option of Lender, the entire Outstanding Amount shall bear interest at the Default Rate.  Interest accruing under this Section 1.5.2 shall be payable on demand. Payment or acceptance of the Default Rate provided in this Section 1.5.2 is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of Lender.

1.5.3.  Interest Payments; Interest and Fee Computation.  Accrued interest on each Loan through the last day of the prior calendar month shall be due and payable in arrears, (i) on the first day of each calendar month (commencing on May 1, 2017), (ii) on the Maturity Date and (iii) on the date of any repayment or prepayment of the Loans.  Interest on the Loans and fees payable under this Agreement shall be computed on the basis of a 360-day year for the actual number of days elapsed.  In computing interest, (x) all payments received after 2:00 p.m. New York City time on any day shall be deemed received at the opening of business on the next Business Day, and (y) the day on which such Loan is made shall be included and the day on which all or any portion of such

ii

Loan is paid shall be excluded. When a payment is due on a day that is not a Business Day, the payment shall be due on the next Business Day. Each determination by Lender of an interest rate under the Loan Documents shall be conclusive and binding for all purposes, absent manifest error. All interest payments due with respect to the Loans under this Agreement shall be made without setoff, deduction or counterclaim before 2:00 p.m. New York City time on the date when due, in immediately available funds in U.S. Dollars.

1.6     [RESERVED]

1.7     [RESERVED]

1.8     Payments Generally.  Borrower shall make each payment to be made by it under this Agreement or under any other Loan Document (whether of principal, interest or fees, or otherwise) before 2:00 p.m. New York City time on the date when due, in immediately available funds in U.S. Dollars, without setoff, deduction or counterclaim.

1.9     Lender Expenses and Fees.

1.9.1.  Lender Expenses.  Borrower agrees to pay Lender all Lender Expenses.  All Lender Expenses shall be payable by Borrower to Lender upon demand by Lender; provided that all Lender Expenses incurred by Lender prior to the Closing Date shall be payable by Borrower to Lender in full on the Closing Date; provided, further that, Lender hereby acknowledges that prior to the Closing Date Borrower paid to Lender an engagement fee in the amount set forth in Annex B (the "**Engagement Fee**"), and the full amount of such Engagement Fee (to the extent not used for Lender Expenses prior to the Closing Date) shall be applied by Lender to pay the Lender Expenses payable by Borrower to Lender on the Closing Date under this Section 1.9, and Borrower shall be obligated to pay any portion of the Lender Expenses not covered by application of the Engagement Fee.

1.9.2.  Loan Origination Fee.  Borrower agrees to pay to Lender, on the Closing Date, the Loan Origination Fee.

1.9.3.  Collateral Administration Fee.  If Lender liquidates the Borrower Collateral following an Event of Default, Borrower shall pay to Lender a Collateral administration fee in the amount set forth in Annex B (the "**Collateral Administration Fee**").

1.9.4.  Computation of Lender Expenses; Fees Fully Earned.  Each determination by Lender of Lender Expenses under the Loan Documents shall be conclusive and binding for all purposes, absent manifest error.  Unless otherwise expressly provided in the Loan Documents, Borrower shall not be entitled to any credit, rebate, or repayment of any fees earned or expenses incurred by Lender under the Loan Documents notwithstanding any termination of any of the Loan Documents or the suspension or termination of Lender's obligation to make the Loan hereunder.

1.9.5.  Commitment Fee.         Borrower agrees to pay to Lender a commitment fee which shall accrue at the Commitment Fee Rate on the daily undrawn portion of the Commitment during the period from and including the Closing Date to but excluding the date on which the Commitment terminates.  Accrued commitment fees shall be payable in arrears on the first day of each calendar month and on the date on which the Commitment terminates, commencing on the first such date to occur after the date hereof.

**75**

iii

HF 10678817v.5 #17926/0012

INDEX NO. 652258/2020

RECEIVED NYSCEF: 06/17/2020

ANNEX D

CONDITIONS PRECEDENT FOR LOAN

(i) Delivery of all items on the checklist following this page, and (ii) satisfaction of all other conditions indicated by such checklist, in each case (in respect of clauses (i) and (ii) above), to the satisfaction of Lender.

| **Agreement / Other deliverable** | **Signatories** |
|---|---|
| 1. Loan and Security Agreement | Lender, Borrower |
| (a) Annex A – Definitions | N/A |
| (b) Annex B - Loan Details | N/A |
| (c) Annex C - Loan Mechanics | N/A |
| (d) Annex D - Conditions Precedent | N/A |
| (e) Schedule A - Artwork Collateral | N/A |
| (f) Schedule 4.3.1 - Financing Statements | N/A |
| (g) Schedule 4.6 – Litigation | N/A |
| (h) Schedule 4.11.1 - Borrower info | N/A |
| (i) Exhibit A - Form of Promissory Note | N/A |
| (j) Exhibit B - Form of Borrowing Base Certificate Notice | N/A |
| (k) Exhibit C – Form of Draw Request | N/A |
| 2. Individual Guarantee | Individual Guarantor |
| 3. Promissory Note | Borrower |
| 4. Corporate Guaranty | Corporate Guarantor |
| 5. Subordination Agreement | Borrower, Lender, Individual Guarantor, Corporate Guarantor |
| 6. Financing Statements | N/A |
| 7. Artwork Collateral Due Diligence – Annex I | N/A |
| 8. Financial Condition Due Diligence – Annex II | N/A |
| 9. Payment of all Lender expenses | N/A |
| 10. Legal Opinions | |
| 11. Resolutions | |
| (a) Borrower | Borrower |
| 12. Payoff Letter re: Existing Corporate Guarantor Credit Agreement | Lender/Corporate Guarantor/Individual Guarantor |
| 13. Direction Letter re: Initial Draw under LSA | Borrower/Lender/Corporate Guarantor/Individual Guarantor |

**76**

iv

## ANNEX D
## ANNEX I - ARTWORK COLLATERAL DILIGENCE

1. Professional high-resolution photograph of each proposed piece of Artwork Collateral Piece

2. All information available to Borrower or of which Borrower is aware concerning the title, attribution, authenticity, description, exhibition history and provenance of each Artwork Collateral Piece

3. Evidence satisfactory to Lender that that each Artwork Collateral Piece is owned, legally and beneficially, 100% by Borrower, including without limitation bills of sale, invoices, evidence of payment, certificates of ownership and similar documents

4. Evidence satisfactory to Lender that that each Artwork Collateral Piece is free of any existing claim, mortgage, deed of trust, hypothecation, assignment (as security), deposit arrangement, lien (statutory or other), levy, charge, pledge, security interest or other encumbrance of any kind or nature whatsoever (including any conditional sale or other title retention agreement and any capital lease), in each case whether voluntarily incurred or arising by operation of law or otherwise

5. Art Loss Register (or its equivalent) with respect to each Artwork Collateral Piece, with results satisfactory to Lender

6. Copies of any export licenses relating to each Artwork Collateral Piece

7. Two (2) independent initial written appraisals (and valuations) of each Artwork Collateral Piece, each performed by fine art appraisers of national or international standing, approved by Lender in its sole and absolute discretion, and each following physical inspection of such Artwork Collateral Piece by such appraiser, in form and substance satisfactory to Lender in its sole discretion

8. A conservation report for each Artwork Collateral Piece from a fine art conservator approved by Lender in its sole discretion

9. Confirmation of authenticity and attribution, satisfactory to Lender in its sole discretion, including by means of a scholar's or other authenticator's written opinion, Catalogue Raisonne, exhibition history, provenance, certificate of authenticity and/or similar means with respect to each Artwork Collateral Piece

10. Copies of all artwork insurance policies with respect to each Artwork Collateral Piece. Each policy shall satisfy the criteria set forth on Schedule I attached hereto.

11. Endorsements in favor of Lender to each artwork insurance policy, as set forth on Schedule I attached hereto, including lender's loss payee and additional insure and requirement of notice to Lender of material alternations, cancellations and non-renewals of policy

12. Results of UCC, tax and judgment lien searches, bankruptcy and pending lawsuit searches or equivalent reports or searches

**77**

HF 10678817v.5 #17926/0012

ANNEX D
ANNEX I; SCHEDULE 1
ARTWORK INSURANCE REQUIREMENTS

All risk, worldwide fine art insurance with a worldwide geographic territory covering each Artwork Collateral Piece, including coverage against fire, damage, theft and such other risks and extended coverages (including windstorm coverage and hurricane coverage) and containing no exclusions for mysterious disappearance, terrorism, flood or earthquake coverage; (i) issued by financially sound and reputable insurance companies acceptable to Lender and having a Best's Financial Strength Rating of "A" or higher and a Financial Size Category rating of "VII" or higher, as determined or otherwise as rated by A.M. Best Company, Inc. (and any successor thereto) (the **"Collateral Insurer"**); (ii) in form, amounts, coverages and basis satisfactory to Lender; provided, however, that, with respect to each Artwork Collateral Piece, the aggregate insurance coverage, net of any deductible amount, shall equal at all times at least 100% of the Fair Market Value, as defined by USPAP, of such Artwork Collateral Piece; (iii) require losses to be paid on an agreed value basis; (iv) name Lender as an additional insured and loss payee thereunder, via an endorsement to such insurance policy in form acceptable to Lender, with Lender's rights not to be affected by any act or neglect of Borrower; (v) provide that Lender be copied on all correspondence with the Collateral Insurer and insurance brokers, and cause the Collateral Insurer and insurance broker, to be so notified; and (vi) provide that at least thirty (30) days' prior written notice of cancellation, expiration, nonrenewal or substantial modification, and the opportunity to cure any failure by Borrower to pay premiums for such Collateral Insurance Policy, as defined below, shall be given to Lender.

**78**

HF 10678817v.5 #17926/0012

## ANNEX D
## ANNEX II - FINANCIAL CONDITION DILIGENCE (BORROWER)

1. Certified balance sheets, statements of income and statements of cash flows as of and for the end of the most current quarter and fiscal year, setting forth in each case in comparative form figures from the previous fiscal year and quarter end, prepared by a certified public accountant, acceptable to the Lender in its sole discretion, and in accordance with consistently applied generally accepted accounting principles in the United States of America as in effect from time to time ("GAAP")

2. Applicable Organizational Documents.

3. Authorizing Resolutions.

4. All documentation and other information with required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including Title III of Publ. 107-56 (signed into law October 26, 2001))

5. Such other documents and other items as Lender may request, in form and substance satisfactory to Lender

## ANNEX D
## ANNEX II - FINANCIAL CONDITION DILIGENCE (INDIVIDUAL GUARANTOR)

1. Bank and investment account statements for the two most recent calendar month ends

2. True and accurate copies of driver's license, passport, and any alternate identification issued by the state of the U.S., or other jurisdiction in which principal residence is located

3. The front two (2) summary pages of federal tax returns for the two most recent calendar years

4. Statement of annual income for the most recently completed calendar year, on Lender's form

5. Statement of total assets, total liabilities, liquid net worth, and total net worth as of the most recent month's end prior to the Closing Date, on Lender's form

6. Paystubs for the two most recent calendar months

7. All documentation and other information with required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including Title III of Publ. 107-56 (signed into law October 26, 2001))

8. All documentation and other information with respect to Individual Guarantor required for a FICO credit score report

9. Such other documents and other items as Lender may request, in form and substance satisfactory to Lender

**79**

vii

HF 10678817v.5 #17926/0012

SCHEDULE A

ARTWORK COLLATERAL PIECES

| ARTIST, TITLE OF WORK, AND DESCRIPTION | LOCATION | ARTWORK COLLATERAL PIECE VALUE (AS OF CLOSING DATE) |
|---|---|---|
| Donald Judd, *Untitled (1967)*, 5" x 69" x 8" | Approved Storage Facility | ■■■■■ |
| Rudolf Stingel, *Untitled (1994)*, 68" x 52.75" | Approved Storage Facility | ■■■■■ |
| Mark Bradford, *Rat Catcher of Hamelin II, (2011)*, 120" x 126" | Approved Storage Facility | ■■■■■ |
| Rudolf Stingel, *Untitled (2015)*, 83" x 67" (each, 3 parts) | Approved Storage Facility | ■■■■■ |
| Mark Bradford, *Untitled (2015)*, 132" x 120" | Approved Storage Facility | ■■■■■ |

**80**

i

INDEX NO. 652258/2020

RECEIVED NYSCEF: 06/17/2020

SCHEDULE 4.3.1

FINANCING STATEMENTS

None

i

SCHEDULE 4.6

LITIGATION

None

HF 10678817v.5 #17926/0012

SCHEDULE 4.11.1

CERTAIN INFORMATION WITH RESPECT TO BORROWER

| | |
|---|---|
| **Legal Name:** | 18 Boxwood Green Limited |
| **Jurisdiction of Organization:** | Jersey |
| **Type of Entity:** | Limited Liability Company |
| **Registered organization (yes/no):** | Yes |
| **Organizational Identification Number, if any:** | 119821 |
| **Registered Office**: | First Floor, 7 Esplanade, St Helier, Jersey JE2 3QA |
| **Other Places of Business:** | None |
| **Mailing Address:** | First Floor, 7 Esplanade, St Helier, Jersey JE2 3QA |
| **Location Where Books and Records Relating to Borrower Collateral are Located:** | First Floor, 7 Esplanade, St Helier, Jersey JE2 3QA |
| **All of the foregoing information for the past 5 years:** | Past address re Borrower Collateral records:<br><br>• 22 Davies Street, London W1K 3DE<br><br>• 5 Grosvenor Street, Mayfair, London, W1K 3HY |

SCHEDULE 4.11.2

ORGANIZATIONAL CHART

See attached

**83**

i

INIGO PHILBRICK LTD/ATHENA ART FINANCE
PRO FORMA CORPORATE STRUCTURE
March 31, 2017

INIGO PHILBRICK
(US Citizen/UK Resident)
Springing Guarantor

**Inigo Philbrick Ltd.**
(UK)
Guarantor (Interest & Fees)
Springing Guarantor

Stingel – Untitled, 2012
($6.0mm Philips Guarantee)

Existing
Collateral
Transfer

Stingel – Untitled, 1994
Stingel – Untitled, 1995
Judd – Untitled, 1987
Bradford – Net Catcher, 2013
Bradford – Untitled, 2015

**18 Boxwood Green Ltd.**
(Jersey)
Borrower I
(Working Capital Purposes)

Artwork Collateral – $12.285mm
($10.0mm Revolving Credit Facility)

**Ark Wright Holdings Ltd.**
(Jersey)
Borrower II
(Auction Guaranteed Bridge Loans)

Athena Art Finance

Athena Art Finance

Athena Art Finance

$4.0mm
Loan

$4.0mm
Note (P&I)

$6.75mm
Loan

$6.75mm
Note (P&I)

TBD

TBD

100%

100%

100%

1. Existing $5.0mm January 2017 loan to be fully refinanced and Existing Collateral (including new Bradford) to be transferred to 18 Boxwood Green Ltd. ("BGL")
2. Existing $4.0mm March 2017 loan secured by Stingel/Philips Guarantee to remain in Inigo Philbrick Ltd. ("IPL") until fully repaid
3. Existing $5.0mm IPL Loan to be refinanced via drawing under BGL's new $10.0mm Revolving Credit Facility
4. Ark Wright Holdings Ltd. (new SPV) formed in Jersey to become the borrowing vehicle for all new auction guarantee bridge loan financings
5. No cross-collateralization/cross-default between BGL and IPL/New SPV. Cross-collateralization/cross-default between IPL and New SPV
6. Minimum net worth covenants of £5.0mm at IPL and $25.0mm at Inigo Philbrick

84

EXHIBIT A

FORM OF PROMISSORY NOTE

$10,000 000

New York, New York
Dated: March 31, 2017

FOR VALUE RECEIVED, the undersigned, 18 BOXWOOD GREEN LIMITED, a private limited liability company incorporated under the laws of Jersey having a registered office at First Floor, 7 Esplanade, St Helier, Jersey JE2 3QA ("**Borrower**"), hereby promises to pay to the order of Athena Art Finance Corp., a Delaware corporation, with offices located at 400 Park Avenue, 12th Floor, New York, New York 10022 ("**Lender**"), the principal amount of the lesser of (a) TEN MILLION and 00/100 ($10,000,000.00) and (b) the aggregate unpaid principal amount of the Loans (as defined in the Loan and Security Agreement referred to below) outstanding under the Loan and Security Agreement referred to below, which principal amount shall be due and payable in such amounts and on such dates as are set forth in the Loan and Security Agreement referred to below.

Borrower further promises to pay interest on the unpaid principal amount hereof, from the date hereof until paid in full, at the interest rate(s), and on the dates, specified in the Loan and Security Agreement.

This Promissory Note (as amended, restated, supplemented or otherwise modified from time to time, this "**Note**") is the Note referred to in the Loan and Security Agreement, dated as of the date hereof (as amended, restated, supplemented or otherwise modified from time to time, the "**Loan and Security Agreement**"), by and between Borrower and Lender, and is subject to the provisions thereof and is subject to optional and mandatory prepayment in whole or in part as provided therein. Capitalized terms used in this Note which are defined in the Loan and Security Agreement shall have such defined meanings unless otherwise defined in this Note or unless the context otherwise requires.

All payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in immediately available funds, in accordance with the Loan and Security Agreement.

This Note is secured as provided in the Loan and Security Agreement. Reference is hereby made to the Loan and Security Agreement for a description of the properties and assets in which a security interest has been granted, the nature and extent of the security, the terms and conditions upon which the security interest was granted and the rights of the holder of this Note in respect thereof.

Upon the occurrence of any one or more of the Events of Default specified in the Loan and Security Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable, all as provided in the Loan and Security Agreement.

All parties now and hereafter liable with respect to this Note, whether maker, principal, surety, guarantor, endorser or otherwise, hereby waive presentment, demand, protest and all other notices of any kind.

THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

BORROWER, AND LENDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY DISPUTE ARISING UNDER OR IN ANY WAY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

**85**

HF 10678817v 5 #17926/0012

INDEX NO. 652258/2020

RECEIVED NYSCEF: 06/17/2020

IN WITNESS WHEREOF, Borrower has duly executed and delivered this Note on the date first written above.

BORROWER:

18 BOXWOOD GREEN LIMITED

By:_____
Name:
Title:

[Signature Page to Promissory Note]

**86**

HF 10678817v.5 #17926/0012

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _____   )

On the __ day of _____ in the year ____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/they executed the same in his/their capacity(ies), and that by his/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**87**

EXHIBIT B

FORM OF
BORROWING BASE NOTIFICATION

Athena Art Finance Corp.
400 Park Avenue, 12th Floor,
New York, New York 10022

Dated _____

18 BOXWOOD GREEN LIMITED
First Floor, 7 Esplanade
St Helier, Jersey JE2 3QA
Attention: _____

Ladies and Gentlemen:

Reference is hereby made to that certain Loan and Security Agreement, dated as of March 31, 2017 (the "**Loan and Security Agreement**"), by and between Athena Art Finance Corp., a Delaware corporation ("**Lender**") and 18 BOXWOOD GREEN LIMITED, a limited liability company incorporated under the laws of Jersey (company number 119821) (the "**Borrower**"). Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Loan and Security Agreement.

This Borrowing Base Notice is being delivered pursuant to Section 2.3.1 of the Loan and Security Agreement, in connection with the Qualified Art Appraisal(s) dated [_____] (the "**Reporting Date**").

[List the current Artwork Collateral Piece Value of each Artwork Collateral Piece (x) as of the Closing Date and (y) as of the Reporting Date, and with respect to each Artwork Collateral Piece the difference (expressed as a percentage) between the Artwork Collateral Piece Value thereof as of the Closing Date and as of the Reporting Date]

Artwork Collateral Piece Value as of the Closing Date:      $_____
Artwork Collateral Piece Value as of the Reporting Date:    $_____

Difference between Artwork Collateral Piece Value
as of Closing Date and Reporting Date:                     $_____

Percentage Difference between Artwork Collateral Piece Value
as of Closing Date and Reporting Date:                     _____%

The Artwork Collateral Value has decreased by more than [ten percent (10%)] since the Closing Date: [YES] [NO]

[Pursuant to Section 1.4.2(b) of Annex C of the Loan and Security Agreement, Borrower is required, within thirty (30) days of Borrower's receipt of this Borrowing Base Notice, to either (A) provide additional unencumbered collateral, satisfactory to Lender in its sole discretion, with sufficient value (as determined by Lender in its sole discretion) to increase the Artwork Collateral Piece Value such that Borrowing Base is equal to or greater than the Outstanding Amount, or (B) repay the principal amount of the Loan such that the Outstanding Amount shall not exceed the Borrowing Base, or (C) any combination of the foregoing that will result in the Borrowing Base being equal to or greater than the Outstanding Amount.]

Attached hereto is supporting information with respect to the calculations set forth above.

**88**

i

HF 10678817v.5 #17926/0012

INDEX NO. 652258/2020

RECEIVED NYSCEF: 06/17/2020

Very truly yours,

ATHENA ART FINANCE CORP.


By: _____
Name:
Title:


Acknowledged and agreed:

The undersigned hereby certifies, represents and warrants that (i) the information set forth in this Borrowing Base Certificate (including the supporting information attached hereto) is true, correct and complete in all material respects and (ii) such Borrowing Base Certificate sets forth a true, correct and complete list of all Artwork Collateral Pieces.

18 BOXWOOD GREEN LIMITED


By: _____
Name:
Title:

ii

**89**

HF 10678817v.5 #17926/0012

EXHIBIT C

FORM OF DRAW REQUEST

Date: [                    ]

To:     Athena Art Finance Corp.
        400 Park Ave.
        New York, NY 10022

From:   18 BOXWOOD GREEN LIMITED

Re: Loan and Security Agreement, dated as of March 31, 2017 (the "**Loan Agreement**"), by and among ATHENA ART FINANCE CORP. ("**Lender**") and 18 BOXWOOD GREEN LIMITED ("**Borrower**").

1.  Reference is made to the Loan Agreement. Capitalized terms used in this Draw Request shall have the meaning ascribed thereto in the Loan Agreement.

2.  This is a Draw Request pursuant to the Loan Agreement and Borrower hereby requests a Loan as follows:

    a.  Proposed draw amount: [                ] (NOTE: this must be at least $1,000,000 or the Available Loan Amount as of the date hereof if the Available Loan Amount is less than $1,000,000)

    b.  Maturity Date: [                ] (NOTE: this must be a Business Day on or after the One-Year Anniversary Date of such Loan (or the Final Maturity Date if the Final Maturity Date is before such One-Year Anniversary Date).

    c.  Proposed funding date: [                ] (NOTE: this must be a Business Day on or after the date that is 10 Business Days from the date of this Draw Request.)

3.  Borrower hereby confirms that each condition set forth in Section 2.1.2 of the Loan Agreement is satisfied on the date hereof.

4.  This Draw Request is irrevocable.

18 BOXWOOD GREEN LIMITED

By:     _____
Name:
Title:

iii

**90**

INDEX NO. 652258/2020
RECEIVED NYSCEF: 06/17/2020

# EXHIBIT E

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| 212-592-1400 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| 579383 001 |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

        NDG

    CORPORATION SERVICE COMPANY
    801 ADLAI STEVENSON DRIVE
    SPRINGFIELD, ILLINOIS 62703

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 18 Boxwood Green Limited | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| First Floor, 7 Esplanade | St. Helier | | JE2 3QA | JE |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Athena Art Finance Corp. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 400 Park Avenue, 12th Floor | New York | NY | 10022 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets of Debtor and all proceeds thereof, in each case, whether now owned or hereafter acquired, or in which Debtor now has or at any time in the future may acquire any right, title or interest, and wherever located.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
|---|

| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien ☐ Non-UCC Filing | |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**Filed in Washington D.C.**

92

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

Doc #: 2017035655
Filed & Recorded
03/31/2017 03:32 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
  SURCHARGE               $6.50
TOTAL:                    $31.50

**93**

# EXHIBIT F

Exhibit A

SCHEDULE A

ARTWORK COLLATERAL PIECES

|  | ARTIST, TITLE OF WORK, AND DESCRIPTION | LOCATION | ARTWORK COLLATERAL PIECE VALUE (AS OF THE SEVENTH AMENDMENT EFFECTIVE DATE) | BORROWING BASE COLLATERAL (YES/NO) |
|---|---|---|---|---|
| 1. | Rudolf Stingel, *Untitled (1994)*, 68" x 52.75" | Approved Storage Facility – ▮ | ▮ | Yes |
| 2. | Jean Michel Basquiat, *Humidity (1982)*, 96" x 72" | Approved Storage Facility – ▮ | $19,000,000 | Yes |
| 3. | Donald Judd, *Untitled (1976)*, 10" x 72" x 26" | Approved Storage Facility – ▮ | ▮ | Yes |
| 4. | Rudolf Stingel, *Untitled (2015)*, 96" x 96" | Approved Storage Facility – ▮ | ▮ | Yes |
| 5. | Christopher Wool, *Untitled*, 2010 Silkscreen ink on linen 304.75 x 243.75 cm. (120 x 96 in.) | Approved Storage Facility – ▮ | ▮ | Yes |
| 6. | Rudolf Stingel, *Untitled (Triptych)*, 2015 Oil and enamel on canvas Each 83" x 67" | Approved Storage Facility – ▮ | ▮ | Yes |

**95**

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
ATHENA ART FINANCE CORP.,

                              Plaintiff,                    Index No. 652258/2020

       -against-

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT     **Affidavit of Cynthia E. Sachs**
ENTITLED HUMIDITY, 1982, *In Rem*,

                              Defendant.
------------------------------------------------------------------------X

STATE OF NEW YORK     )
                          )   SS.:
COUNTY OF NEW YORK  )

     I, Cynthia E. Sachs, being duly sworn, depose and say:

     1.     I am the Chief Investment Officer of Athena Art Finance Corp.

     2.     I state the following facts upon personal knowledge, and based upon my review and familiarity with the transaction documents relative to Athena's $13.5 million loan to 18 Boxwood Green Limited ("Boxwood"), which documents include the Loan and Security Agreement, amendments, guarantees, schedule of collateral, confirmations of transfers of funds, confirmations of receipt of collateral, among other loan documents executed by the Loan Obligors ("LSA").

     3.     Pursuant to the LSA dated March 31, 2017, Athena initially provided Boxwood with a $10 million loan commitment, which was initially collateralized by certain artworks listed on Schedule A thereto, and guaranteed by Inigo Philbrick Limited and Inigo Philbrick. **Exhibit D.**

     4.     Boxwood immediately drew down $6.75 million of the $10 million loan principal.

     5.     Shortly thereafter, on April 7, 2017, pursuant to Section 3.4 of the LSA, the Basquiat *Humidity* was added to the pool of loan collateral and Boxwood drew down the remaining $3.25 million of loan principal.

**97**

6.      On May 28, 2018, the loan commitment was increased by $3.5 million permitting a total principal amount of up to $13.5 million.

7.      On November 30, 2018, Schedule A to the LSA was amended for the final time, assigning the Basquiat a value as of that date of $19 million.  **Exhibit F.**

8.      Having defaulted on its payment obligations as of October, 2019, an action was brought against Boxwood, and the guarantors in December, 2019, resulting in a $14,306,800.47 judgment on March 2, 2020 (see Exhibit "C" to Lindstrom affirmation).

9.      The aggregate outstanding amount of the loan is increasing by over $150,000 per month.

10.     As noted in the Lindstrom affirmation, on November 1, 2019, Satfinance obtained a restraining order from a London court that temporarily barred Athena from selling the Basquiat.  The London court, however, dismissed all claims against Athena on May 26, 2020, and thereafter vacated the injunction on June 2, 2020. Athena's summons with notice herein was filed immediately thereafter. As of the filing of the summons with notice herein, and this order to show cause, there is no legal impediment to selling the Basquiat.

11.     As the defaulted debt increases by some $150,000 per month, the potential net recovery to interested persons who may claim an ownership interest in the Basquiat decreases. At present, Athena is owed $15.5 million. It is likely that the sale of the Basquiat will satisfy the outstanding debt owed to Athena.

12.     Such likelihood is diminished with each passing day, as the interest mounts,  because it is not foreseeable that the Basquiat will increase in value at a rate commensurate with the interest rate, particularly in this post-coronavirus economic environment.

13.     Athena therefore respectfully requests that it be permitted to immediately move forward with a sale of the Basquiat, in order to satisfy Athena's default judgment and all other

**98**

amounts owed to Athena pursuant to the Loan and Security Agreement, but also to maximize the sale

proceeds such that any amount in excess of amounts due to Athena could potentially be shared among

legitimate claimants, if any. Such residual amount would represent the remaining equity value in the

Basquiat.

Cynthia E. Sachs

Sworn to before me this 16th
day of June, 2020

Notary Public

WENDY J LANDSTREEN
NOTARY PUBLIC STATE OF NEW YORK
Registration No. 02LI6035790
Qualified in Nassau County
Commission Expires 04/03/2022

**99**

INDEX NO. 652258/2020
RECEIVED NYSCEF: 06/17/2020

# EXHIBIT H

**Nina Edelman**

| | |
|---|---|
| **From:** | Nina Edelman |
| **Sent:** | Wednesday, June 17, 2020 12:36 PM |
| **To:** | 'derek.adler@hugheshubbard.com'; 'dmcclean@cypressllp.com'; 'john_t_gorman@fd.org' |
| **Cc:** | Wendy Lindstrom; Richard Lerner |
| **Subject:** | Index No. 652258/2020 - Athena Art Finance Corp. v. Certain Artwork by Jean Michel Basquiat Entitled Humidity, 1982, In Rem |
| **Attachments:** | OTSC.pdf; Lindstrom Affirmation 6.17.20.pdf; Lindstrom Exhibit A.pdf; Lindstrom Exhibit B.pdf; Lindstrom Exhibit C.pdf; Lindstrom Exhibit D.pdf; Lindstrom Exhibit E.pdf; Lindstrom Exhibit F.pdf; Lindstrom Exhibit G (Sachs).pdf |

Counsel:

Please take note the attached Order to Show Cause and supporting documentation will be filed today in the above-referenced action.

Respectfully,
Nina T. Edelman



## Nina T. Edelman

Mazzola Lindstrom LLP
1350 Sixth Avenue, 2nd Floor
New York, New York 10019
D: 646.216.9690 | nina@mazzolalindstrom.com
www.mazzolalindstrom.com

**101**

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 07/29/2019)

New York Supreme COURT, COUNTY OF New York

Index No: 652258/2020        Date Index Issued: 06/12/2020

| | For Court Use Only: |
|---|---|

**CAPTION** Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

ATHENA ART FINANCE CORP,

IAS Entry Date

-against-                                                                 Plaintiff(s)/Petitioner(s)

Judge Assigned

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, In Rem

RJI Filed Date

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING:** Check only one box and specify where indicated.

**COMMERCIAL**

- [ ] Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- [ ] Contract
- [ ] Insurance (where insurance company is a party, except arbitration)
- [x] UCC (includes sales and negotiable instruments)
- [ ] Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY:** Specify how many properties the application includes: _____

- [ ] Condemnation
- [ ] Mortgage Foreclosure (specify): [ ] Residential   [ ] Commercial
  Property Address: _____

  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*

- [ ] Tax Certiorari - Section:           Block:           Lot:
- [ ] Tax Foreclosure
- [ ] Other Real Property (specify): _____

**OTHER MATTERS**

- [ ] Certificate of Incorporation/Dissolution   [see *NOTE* in **COMMERCIAL** section]
- [ ] Emergency Medical Treatment
- [ ] Habeas Corpus
- [ ] Local Court Appeal
- [ ] Mechanic's Lien
- [ ] Name Change
- [ ] Pistol Permit Revocation Hearing
- [ ] Sale or Finance of Religious/Not-for-Profit Property
- [ ] Other (specify): _____

**MATRIMONIAL**

- [ ] Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*

  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**

- [ ] Asbestos
- [ ] Child Victims Act
- [ ] Environmental (specify): _____
- [ ] Medical, Dental, or Podiatric Malpractice
- [ ] Motor Vehicle
- [ ] Products Liability (specify): _____
- [ ] Other Negligence (specify): _____
- [ ] Other Professional Malpractice (specify): _____
- [ ] Other Tort (specify): _____

**SPECIAL PROCEEDINGS**

- [ ] CPLR Article 75 (Arbitration)   [see *NOTE* in **COMMERCIAL** section]
- [ ] CPLR Article 78 (Body or Officer)
- [ ] Election Law
- [ ] Extreme Risk Protection Order
- [ ] MHL Article 9.60 (Kendra's Law)
- [ ] MHL Article 10 (Sex Offender Confinement-Initial)
- [ ] MHL Article 10 (Sex Offender Confinement-Review)
- [ ] MHL Article 81 (Guardianship)
- [ ] Other Mental Hygiene (specify): _____
- [ ] Other Special Proceeding (specify): _____

**STATUS OF ACTION OR PROCEEDING:** Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | [x] | [ ] | If yes, date filed: 06/02/2020 |
| Has a summons and complaint or summons with notice been served? | [ ] | [x] | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | [ ] | [x] | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION:** Check one box only and enter additional information where indicated.

- [ ] Infant's Compromise
- [ ] Extreme Risk Protection Order Application
- [ ] Note of Issue/Certificate of Readiness
- [ ] Notice of Medical, Dental, or Podiatric Malpractice   Date Issue Joined: _____
- [ ] Notice of Motion         Relief Requested: _____   Return Date: _____
- [ ] Notice of Petition       Relief Requested: _____   Return Date: _____
- [ ] Order to Show Cause      Relief Requested: _____   Return Date: _____
- [ ] Other Ex Parte Application   Relief Requested: _____
- [ ] Poor Person Application
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Writ of Habeas Corpus
- [x] Other (specify): Order to Show Cause

**102**

**RELATED CASES:** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| Athena Art Finance Corp. v. 18 Boxwood Green Li... | 657322/2019 | Supreme Court New York County | Ostrager | Related facts |
| | | | | |
| | | | | |
| | | | | |

**PARTIES:** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties | Attorneys and/or Unrepresented Litigants | Issue Joined | Insurance |
|---|---|---|---|---|
| | List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant; 3rd party plaintiff, etc.) | For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | For each defendant, indicate if issue has been joined. | For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: ATHENA ART FINANCE CORP., Role(s): Plaintiff/Petitioner | RICHARD LERNER, Mazzola Lindstrom LLP, 1350 Avenue of The Americas FL 2 , New York, NY 10019, richardlerner@msn.com | ☐ YES ☒ NO | |
| ☒ | Name: CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 198... Role(s): Defendant/Respondent | Plaintiff's Storage, New York, NY 10022 | ☐ YES ☒ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name: Role(s): | | ☐ YES ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: 06/17/2020

RICHARD E. LERNER
Signature

2312510
Attorney Registration Number

RICHARD E. LERNER
Print Name

*This form was generated by NYSCEF*

**103**

## Request for Judicial Intervention Addendum

UCS-840A (7/2012)

New York Supreme COURT, COUNTY OF New York

**Index No:** 652258/2020

**For use when additional space is needed to provide party or related case information.**

**PARTIES:** For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in "Attorneys" space.

| Un-Rep | Parties | Attorneys and/or Unrepresented Litigants | Issue Joined | Insurance |
|---|---|---|---|---|
| | List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant; 3rd party plaintiff, etc.) | For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | For each defendant, indicate if issue has been joined. | For each defendant, indicate insurance carrier, if applicable. |
| ☒ | Name: CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, In Rem<br>Role(s): Defendant/Respondent | Plaintiff's Storage, New York, NY 10022 | ☐ YES ☒ NO | |

**RELATED CASES:** List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| Athena Art Finance Corp. v. 18 Boxwood Green Limited et al | 657322/2019 | Supreme Court New York County | Ostrager | Related facts |

**104**

INDEX NO. 652258/2020

RECEIVED NYSCEF: 06/17/2020

UCS-840C
3/2011

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF  New York

_____x

ATHENA ART FINANCE CORP,

**Plaintiff(s)/Petitioner(s)**

-against-

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED
HUMIDITY, 1982, In Rem

**Defendant(s)/Respondent(s)**
_____x

Index No:  652258/2020

RJI No. (if any):

## COMMERCIAL DIVISION

**Request for Judicial Intervention Addendum**

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☐ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☒ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:

20000000.00

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

Declaration that Plaintiff may sell defendant Artwork.

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) and (c).**

**Dated:**     06/17/2020

RICHARD E. LERNER

**SIGNATURE**

**105**

RICHARD E. LERNER

**PRINT OR TYPE NAME**

*This form was generated by NYSCEF*