UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ATHENA ART FINANCE CORP.,

                               Plaintiff,                        Docket No.: 20-cv-4669
                                                                             (GBD)

          -against-                                                     **ANSWER AND
COUNTERCLAIM**

that

CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT
ENTITLED HUMIDITY, 1982, *In Rem*,

                                 Defendant,

SATFINANCE INVESTMENT LIMITED and
DELAHUNTY LIMITED d/b/a DELAHUNTY FINE ART,

                                 Interested Parties.
-----------------------------------------------------------------------x

## ANSWER

      Interested Party Delahunty Limited d/b/a Delahunty Fine Art ("Delahunty"), by its attorneys Clarick Gueron Reisbaum LLP, answers the allegations in Athena Art Finance Corp.'s ("Plaintiff's") Verified Complaint as follows:

### Nature of Claim

      1.     Delahunty admits that Plaintiff purports to assert the claims and to seek the relief summarized in Paragraph 1 and denies that those claims have merit or that such relief is appropriate.

      2.     Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 2.

3. Paragraph 3 sets forth conclusions of law, not allegations of fact, and therefore no response is required. To the extent any response is deemed to be required, Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3.

4. The court document referred to in Paragraph 4 speaks for itself and Delahunty denies any partial characterization of the document contained in the allegation.

5. Paragraph 5 sets forth conclusions of law, not allegations of fact, and therefore no response is required. To the extent any response is deemed to be required, Delahunty denies the allegations and expressly denies that Athena is entitled to sell the "Basquiat" painting.

6. Delahunty admits that Plaintiff purports to assert the claims and to seek the relief summarized in Paragraph 6 and denies that those claims have merit or that such relief is appropriate. Paragraph 6 also sets forth conclusions of law, not allegations of fact, and therefore no response is required. To the extent any response is deemed to be required, Delahunty denies the allegations and expressly denies that Athena is entitled to sell the "Basquiat" painting.

**Procedural History and Record**

7. The document referred to in Paragraph 7 speaks for itself and Delahunty denies any partial characterization of the document contained in the allegation. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 7.

8. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 8.

9. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 9.

10. The document referred to in Paragraph 10 speaks for itself and Delahunty denies any partial characterization of the document contained in the allegation. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 10.

11. The document referred to in Paragraph 11 speaks for itself and Delahunty denies any partial characterization of the document contained in the allegation. Delahunty denies that 18 Boxwood Green Limited was legally able to pledge the "Basquiat" painting as collateral because the transfer of the work to 18 Boxwood Green Limited purported to transfer an interest in the work that Inigo Philbrick Ltd. did not have to transfer, and it was an actual fraudulent conveyance and a constructive fraudulent conveyance by Inigo Philbrick Ltd.

12. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 12.

13. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and further answers as follows:

    a. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13(a).

    b. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13(b).

    c. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13(c).

    d. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13(d).

  e. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13(e).

  f. The document referred to in Paragraph 13(f) speaks for itself and Delahunty denies any partial characterization of the document contained in the allegation.

  14. Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation contained in the first sentence of Paragraph 14. Delahunty admits the allegations contained in the second sentence of Paragraph 14.

  15. Delahunty admits the allegations contained in Paragraph 15.

### Third Parties' Purported Claims

  16. With respect to the first sentence of Paragraph 16, Delahunty denies knowledge or information sufficient to form a belief as to the truth of the allegation in that sentence. With respect to the second sentence in Paragraph 16, Delahunty admits the allegation in that sentence. With respect to the third sentence in Paragraph 16, the English court's decision referred to in the sentence speaks for itself and Delahunty denies any partial characterization of the document contained in the allegation. With respect to the final sentence in Paragraph 16, Delahunty admits this allegation.

  17. Delahunty admits the allegations contained in Paragraph 17.

### Prayer for Relief: Declaration that Athena May Sell the In Rem Defendant

  18. Delahunty repeats its responses to the Paragraphs 1 through 17 above.

  19. Paragraph 19 sets forth conclusions of law, not allegations of fact, and therefore no response is required. To the extent any response is deemed to be required, Delahunty denies that Plaintiff's claims have merit or that such relief is appropriate.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

20. The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

21. Plaintiff is barred in whole or in part from maintaining this action and recovering the relief it seeks under the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

22. Plaintiff is barred in whole or in part from maintaining this action and recovering the relief it seeks because 18 Boxwood Green Ltd. did not have the rights to convey to Plaintiff the "Basquiat" painting on which Plaintiff's claims rest or any interest in the "Basquiat" painting, and thus did not lawfully convey any interest in the painting.

23. Delahunty reserves the right to rely upon such other affirmative defenses as may be supported by the facts to be determined by full and complete discovery and reserves the right to amend these affirmative defenses accordingly.

## COUNTERCLAIM

Interested Party and counterclaim plaintiff Delahunty Fine Arts ("Delahunty"), by its attorneys Clarick Gueron Reisbaum LLP, asserts a counterclaim against Athena Art Finance Corp. ("Athena") as follows:

### Nature of the Case

1. This is one of several actions arising from a series of fraudulent transactions engineered by the now-indicted Inigo Philbrick. Unfortunately for Athena, it is the victim of Philbrick's fraud in this action, but that does not change the fact that Delahunty is entitled to a

declaration that Athena has no security or other interest in the artwork at issue and that Delahunty is entitled to a declaration that it has a 12.5% interest in that work.

2. This action arises out of a title dispute involving a painting by Jean-Michel Basquiat entitled *Humidity* (the "Painting").

3. Athena has rushed into Court seeking a declaration that it is entitled to foreclose upon and sell the Painting.[1] But, Athena's attempt to force a sale of the Painting is a premature attempt to avoid judicial scrutiny of whether it has *any* enforceable rights in the work—which it does not.

4. Inigo Philbrick Ltd. ("IPL")—a company owned and controlled by its namesake, Inigo Philbrick—acquired the Painting in a private sale from Phillips Auctioneers LLP ("Phillips").

5. In an agreement governed by English law, IPL then sold a 12.5% beneficial interest in the Painting to Delahunty, an art dealer based in London, in exchange for $2.75 million.

6. IPL, subsequently strapped for cash, used another Inigo Philbrick owned and controlled shell company, 18 Boxwood Green Ltd. ("18 Boxwood"), to obtain loans of over $13 million from Athena, an art financing company. In exchange for these loans, 18 Boxwood purported to pledge to Athena a number of valuable artworks as collateral, including the Painting at issue in this litigation.

---

[1] *See* Athena's Motion for an Order to Show Cause to Permit Immediate Sale of Collateral (ECF No. 23, July 29, 2020) and supporting affidavit of Wendy Lindstrom (ECF No. 24). Athena's motion, which fails to describe the urgency behind its request, fails to include any supporting Memorandum of Law, and fails to address the bases of Delahunty's (and Satfinance Investment Limited's) claim, is utterly insufficient to obtain an order permitting the immediate sale of the Painting.

7. On information and belief, to pledge the collateral to Athena, 18 Boxwood signed an agreement with IPL pursuant to which IPL purported to sell and/or transfer ownership of the Painting to 18 Boxwood.

8. But this sham transaction was void from the outset and is utterly unenforceable. The transaction defied Delahunty's rights in the painting (and apparently the rights of other Interested Parties too) and was an actual and constructive fraudulent conveyance. IPL had nothing to give to 18 Boxwood (and certainly not a full interest in the Painting) and, because the transaction was a sham, 18 Boxwood received nothing from it. In consequence, 18 Boxwood lacked rights in the Painting and its pledge to Athena could not and did not include the Painting as collateral.

9. When Philbrick's art fraud scheme publicly imploded, Philbrick and his companies 18 Boxwood and IPL defaulted on their loan obligations to Athena. Philbrick has subsequently been charged by federal prosecutors with wire fraud and aggravated identity theft in connection with his conduct in the art world.

10. Delahunty owns no less than a 12.5% beneficial interest in the Painting and has filed this declaratory judgment action seeking, among other things, a declaration confirming its rights in and to the Painting and an Order preventing Athena's wrongful interference with those rights.

## Parties, Jurisdiction, and Venue

11. Counterclaim plaintiff Delahunty is an art dealer incorporated in England, with its principal place of business in London, England.

12. Counterclaim defendant Athena is a Delaware corporation with its principal place of business in New York, New York.

13. This Court has subject matter jurisdiction over Delahunty's counterclaim pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(b).

14. Venue is appropriate pursuant to 28 U.S.C. § 1391 because counterclaim defendant Athena's principal place of business is in this District and the Painting that is the subject of this action is situated in this District as well.[2]

## Statement of Facts

### A. Delahunty Purchases an Interest in the Painting from Inigo Philbrick Ltd.

15. In or about June 2016, Philbrick, an art dealer and owner of IPL, approached Damian Delahunty, the owner and principal of Delahunty, about the opportunity to purchase an interest in the Painting. All of the communications and meetings between Philbrick and Delahunty pertaining to this matter occurred in London, where Delahunty was located at all relevant times and where the parties struck their deal. Indeed, Philbrick and Damian Delahunty met five or six times to discuss and negotiate the deal, every time meeting at Philbrick's London residence.

16. In the course of these discussions, Philbrick, on behalf of IPL, represented to Delahunty that IPL had purchased the Painting in August 2016 for $22 million from SKH Management Corp. Based on Philbrick's representations, Delahunty believed that IPL had purchased the Painting in its name and held full legal and beneficial ownership of and title to the Painting.

17. On November 1, 2016, in an agreement governed by English law, Delahunty agreed to buy from IPL and IPL (with Philbrick acting on its behalf) agreed to sell to Delahunty

---

[2] Delahunty reserves all rights with respect to the convenience of this forum and reserves the right to seek dismiss or stay this action, at a later date, based upon *forum non conveniens* grounds in light of developments in the English litigation described, *infra*, ¶¶ 33-39.

8

a 12.5% interest in the Painting for a total of $2.75 million. This agreement was reflected in an invoice between Delahunty and IPL, attached to this Counterclaim as Exhibit 1.

18. The invoice between Delahunty and IPL provides that Delahunty has purchased 12.5% of the Painting and promised Delahunty "a preferred stake paying 25% of profit above the joint acquisition price of $22,000,000 USD."

19. On that same day, Delahunty paid $2.53 million to IPL to complete its purchase of its interest in the Painting. Delahunty provided the remaining $220,000 of the purchase price by agreeing to forgive a debt IPL owed Delahunty stemming from a prior art transaction.

20. As a result of the completion of this transaction, Delahunty obtained at least a 12.5% interest in the Painting.

B. **Delahunty Learns That Philbrick and IPL Defrauded Delahunty and That SIL and Athena Also Claim Interests in the Painting**

21. As it turned out, IPL's sale to Delahunty was rife with material misrepresentations and omissions. Contrary to Philbrick's representations, IPL had not acquired the Painting for $22 million. Instead, unbeknownst to Delahunty, IPL had acquired the Painting from Phillips for $12.5 million, pursuant to a private sale agreement dated July 27, 2016. Moreover, at the time of Delahunty's purchase, IPL failed to disclose that Philbrick previously had entered into an agreement with Satfinance Investment Limited ("SIL"), a company owned by U.K. residents, concerning the Painting. Nor did IPL disclose, subsequently, that it purported to transfer legal and beneficial ownership to its affiliate 18 Boxwood, which in turn purported to pledge the Painting as security to Athena.

22. While Philbrick's and IPL's machinations are complex, none interfere with the fact that Delahunty purchased and owns at least a 12.5% beneficial interest in the Painting.

9

23. *First*, IPL did not acquire the Painting for $22 million from SKH Management Corp. Instead, on or about July 27, 2016, IPL acquired the Painting from Phillips for $12.5 million. The source of IPL's purchase, however, does not impact Delahunty's rights; nor does the lower purchase price diminish its rights—if anything, the opposite. (*See, infra*, ¶ 26.)

24. *Second*, on information and belief, on or about August 11, 2016 (before Delahunty's purchase), Inigo Philbrick entered into an undisclosed agreement with SIL (an agreement to which IPL itself was not a party). On information and belief, under the Philbrick-SIL agreement, SIL agreed to contribute 50% of the then-reported $18.4 million purchase price for the Painting (*i.e.*, $9.2 million) in exchange for legal title to, and a 50% beneficial interest in, the Painting. While the agreement purports to transfer legal title in the Painting to SIL (even though IPL, not Philbrick, acquired the Painting from Phillips), the agreement recites that the parties would own the Painting *jointly* and that they would share any profits and losses from the sale of the Painting *equally*.

25. On information and belief, under the Philbrick-SIL agreement, SIL also agreed to provide Philbrick a loan in the amount of $3 million, and these parties further agreed that SIL's loan would be senior to Philbrick's retained 50% beneficial interest in the Painting.

26. While SIL has asserted a claim to an interest in the Painting, this claim—to the extent that it is valid—does not interfere with Delahunty's 12.5% interest in the Painting:

    a. On the face of the Philbrick-SIL agreement, SIL obtained only a 50% interest in the Painting, leaving IPL (on any view) a 50% interest as well, *i.e.* more than enough to convey 12.5% to Delahunty.

    b. In the event that the Court re-writes the transaction to reflect a conveyance to SIL proportionate to its investment in the Painting ($9.2 million) based on its actual

purchase price ($12.5 million), such a conversion would provide SIL a 74% interest in the Painting, leaving IPL a 26% interest, again more than enough to convey 12.5% to Delahunty. (Delahunty reserves the right to assert, on the same theory, that its $2.75 million investment in the Painting yielded a 22% interest in the Painting, as its investment represented 22% of the actual purchase price.)

c. While SIL also claims a percentage interest in the Painting based on its alleged $3 million loan to Philbrick, the loan admittedly is *not* equity in the Painting so does not provide that interest and, in any event, SIL did not timely file a security financing statement concerning any purported security interest it may have in the Painting before Delahunty made its purchase.

d. While SIL may claim that the Philbrick-SIL agreement stated that Philbrick ought not convey any portion of IPL's remaining interest to a third party, even if IPL breached the Philbrick-SIL agreement by making such a conveyance to Delahunty, the conveyance itself remains valid (notwithstanding any claim that SIL might have against IPL or Philbrick for breach of contract).

27. *Third*, on information and belief, on March 31, 2017, five months after Delahunty purchased its interest, Athena entered into a loan and security agreement ("LSA") with IPL affiliate 18 Boxwood, a second entity owned, created, and controlled by Philbrick.

28. On information and belief, under the LSA, Athena made available to 18 Boxwood a revolving loan facility of $10 million that was secured by certain works of art. On information and belief, on May 28, 2018, 18 Boxwood's loan commitment was increased by $3.5 million, permitting a total principal amount of up to $13.5 million.

29. Further, on information and belief, under the LSA on April 7, 2017, 18 Boxwood purported to pledge to Athena the Painting as collateral for the loan. Upon information and belief, IPL purported to transfer a full ownership interest in the Painting to 18 Boxwood to enable the collateral pledge.

30. In the instant action, Athena claims that, pursuant to the terms of the LSA and because 18 Boxwood defaulted on its loans, Athena is entitled to an Order declaring that it may foreclose on the collateral, including the Painting.

31. Athena has no rights to the Painting because 18 Boxwood had no interest to pledge.

32. IPL's alleged transfer of ownership in the Painting to 18 Boxwood was not valid and is void, including because: (1) IPL itself did not have legal title to or a 100% interest in the Painting to transfer to 18 Boxwood, since it previously had transferred a 12.5% interest to Delahunty and, purportedly, legal title and a 50% interest to SIL; (2) the transaction was an actual fraudulent conveyance because IPL made the conveyance to 18 Boxwood with intent to defraud Delahunty, as well as IPL's other creditors; and (3) the conveyance was a constructive fraudulent conveyance because it was made without fair consideration and the conveyance rendered IPL insolvent.

### C. Proceedings in England Related to the Painting

33. Following the news of Philbrick's fraud and subsequent flight, SIL filed a claim in the High Court of Justice Business and Property Courts of England and Wales against Philbrick, IPL, 18 Boxwood, and Athena seeking a declaration that SIL had full legal title to and beneficial interest in the Painting and that Philbrick, IPL, 18 Boxwood, and Athena had no interest in the Painting.

34. In November 2019, SIL also sought and obtained injunctive relief in the English court. The English court ordered Philbrick, IPL, 18 Boxwood, and Athena not to sell, pledge, or in any way dispose of any interest in the Painting.

35. In December 2019, Athena appeared in a limited fashion and challenged the jurisdiction of the English court to try the claims against it on the basis that the court lacked personal jurisdiction over it.

36. In May 2020, SIL amended its claim in the English court to include Delahunty as a party and sought a declaration that Delahunty also had no legal or beneficial interest in the Painting.

37. In the English proceeding, Delahunty has answered these claims and has counterclaimed (i) against SIL seeking a declaration that it does indeed have a beneficial interest in the Painting and (ii) against Philbrick and IPL for damages and indemnification based on Philbrick's fraudulent representations to Delahunty about the Painting.

38. In June 2020, the English court issued an order granting Athena's jurisdictional challenge. SIL has appealed this decision.

39. Accordingly, in the English proceedings, while Athena has prevailed on its jurisdictional challenge, ongoing litigation continues between SIL, Delahunty, IPL, 18 Boxwood, and Philbrick to determine the interest and rights of each party in the Painting.

**FIRST CAUSE OF ACTION**
DECLARATORY JUDGMENT

40. Delahunty repeats and realleges the allegations contained in Paragraph 1 through 39 of this Complaint as if fully alleged herein.

41. Delahunty purchased and paid in full for a 12.5% interest in the Painting from IPL, which held a sufficient interest in the Painting to convey to Delahunty the interest it

13

purchased.

42. Pursuant to the agreement between Delahunty and IPL, Delahunty acquired an ownership and/or beneficial interest in the Painting.

43. Delahunty did not authorize anyone, including IPL, Philbrick or 18 Boxwood, to pledge the Painting, or its interest in the Painting, as collateral.

44. On information and belief, pursuant to the agreement between SIL and Philbrick, IPL did not have the authority to transfer SIL's ownership, beneficial interest, or any other rights in the Painting to 18 Boxwood.

45. Accordingly, any purported transfer of any interest in the Painting from IPL to 18 Boxwood should be void as beyond the scope of IPL's ownership and/or authority and as an actual and/or constructive fraudulent conveyance.

46. Athena has no security interest in the Painting because the debtor, 18 Boxwood, did not have rights in the Painting and could not pledge the Painting as collateral.

47. A justiciable controversy exists between Athena and Delahunty as to whether Athena has any valid security interest in or claim to the Painting, or Delahunty's interest in the Painting, and declaratory relief that Athena has no rights or interest in the Painting, or, in the alternative, that Delahunty has a 12.5% interest in the Painting, will effectively resolve this controversy between Athena and Delahunty.

48. Delahunty is hereby entitled to seek a declaratory judgment that Athena has no interest in the Painting, or, in the alternative, that Delahunty has a 12.5% interest in the Painting.

## **PRAYER FOR RELIEF**

WHEREFORE, Delahunty respectfully requests a judgment: (1) declaring that Athena has no rights or interest in the Painting; (2) dismissing and/or staying the remainder of this action

to permit the claims between SIL and Delahunty as to their respective interests in the Painting to be adjudicated in an English court; (3) should the Court determine to adjudicate the respective interests of Delahunty in the Painting, declaring that Delahunty has and owns a 12.5% interest in the Painting; and (4) awarding any other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 30, 2020

                                      CLARICK GUERON REISBAUM LLP

                                      */s/ Gregory A. Clarick*
                                      Gregory A. Clarick
                                      Emily A. Weissler
                                      220 5th Avenue, 14th Floor
                                      New York, NY 10001
                                      gclarick@cgr-law.com
                                      212-633-4310

                                      *Attorneys for Delahunty Fine Arts*