

745 Fifth Avenue, 5th Floor, New York, NY 10151
T. 646-770-7445   F. 646-417-7997

GROSSMANLLP.COM

September 4, 2020

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11A
New York, New York  10007

      Re:    *Athena Art Finance Corp. v. Certain Artwork by Jean-Michel Basquiat Entitled Humidity, 1982, in Rem*, **Case No. 20 Civ. 4669 (GBD)**

Dear Judge Daniels,

      We write under the Court's September 1, 2020, directive, on behalf of Interested Party Satfinance Investment Limited ("Satfinance"), jointly with Interested Party Delahunty Limited d/b/a Delahunty Fine Art ("Delahunty"), concerning the motion by Athena Art Finance Corp. ("Athena") seeking to permit the "immediate sale" of the *in rem* Defendant, a valuable painting by the abstract-expressionist artist, Jean-Michel Basquiat (the "Painting") (Dkt. Nos. 19-24).

      Athena's motion is facially inscrutable and deficient on multiple grounds:  (i) Athena does not bring the motion under any federal rule or statute; (ii) Athena failed to submit a memorandum of law, in violation of the Local Rules; (iii) Athena has submitted no admissible evidence, relying exclusively on an attorney affirmation; and (iv) Athena's request for an "immediate sale" is the ultimate relief sought in this case, which cannot be granted on the face of the pleadings, especially where Satfinance and Delahunty have collectively asserted complete ownership of the Painting in various substantive claims, counterclaims, and affirmative defenses filed in concurrent proceedings here and in England.

      In seeking what effectively amounts to a judgment on the pleadings, Athena has misleadingly suggested to this Court that an English tribunal already has rejected the merits of Satfinance's claims in its first-filed action seeking to adjudicate the ownership of the Painting.  In stark contrast to Athena's representations to this Court, however, after granting a preliminary injunction—based partly on a finding that Satfinance was likely to prevail on the merits of its claims against Athena—the lower court dismissed the claim against Athena  solely on jurisdictional grounds.  What is more, that decision currently is on appeal, and the English court already held that "the points raised by the Appellant [Satfinance] on this appeal have a real prospect of success[.]"  (August 22, 2020, High Court Order, attached as Exhibit A.)  Earlier today, Satfinance sent a letter to Athena asking for consent to request an expedited appeal in the English suit to limit any delay to the New York proceedings.  Especially where a hearing on that appeal is forthcoming, and a decision there could warrant a stay of these proceedings, Athena's request for

an "immediate sale," in the absence of any exigencies whatsoever, at the very least should be held in abeyance until the first-filed English suit is resolved.

For these reasons, the Court should reject Athena's extraordinary and patently improper request. In the alternative, Satfinance and Delahunty respectfully request that the Court convert the September 24, 2020, order-to-show-cause hearing into a conference, at which time the Court can decide how to address Athena's motion, as well as various related discovery matters, including Satfinance's request to inspect the Painting, which Athena inexplicably has not permitted despite an Order from the English court.

### Factual and Procedural Background

This action arises out of a property-ownership dispute involving a valuable Painting by world-renowned artist Jean-Michel Basquiat (1960-1988).

Satfinance claims that in August 2016, Inigo Philbrick Limited ("IPL")—an English entity owned and controlled by Inigo Philbrick, then a 29-year-old up-and-coming art dealer, now indicted for perpetrating a massive art-fraud scheme—entered into an agreement expressly granting Satfinance "full title" to the Painting. And since acquiring full title, Satfinance never sold, transferred, or otherwise disposed of any part of its ownership interest in the Painting. (*See* Dkt. No. 30 ¶¶ 2, 19-32.) While Satfinance at all times held full title to the Work—and IPL and Philbrick did not acquire even partial title—contemporaneously with the purchase, IPL fraudulently induced Satfinance to enter into a profit-sharing agreement whereby IPL would receive a percentage of any profits for its efforts in trying to sell the work. Philbrick accomplished this by fraudulently misrepresenting (including in forged documents) that the Painting was being acquired for $18.4 million so that it would appear he was making a substantial contribution to the purchase price. But in reality, the work was acquired for $12.5 million and therefore Satfinance's contribution of $12.2 million amounted to virtually the entire purchase price (98%), while Philbrick's actual contribution was a minuscule 2%. Satfinance and Philbrick were in England at the time of forming their agreement, which is governed by English law.

Delahunty claims that, on November 1, 2016, Delahunty entered into an agreement with IPL to purchase a 12.5% interest in the Painting for a total of $2.75 million, induced by Philbrick's fraudulent representation that IPL had purchased the Painting in August 2016 for $22 million. Under that agreement with IPL, Delahunty claims to have purchased 12.5% of the Painting in exchange for "a preferred stake paying 25% of profit above the joint acquisition price of $22,000,000 USD." (*See* Dkt. No. 26 ¶¶ 15-20.) Delahunty and Philbrick were in England when they formed their agreement, which is governed by English law.

Unbeknownst to Satfinance or Delahunty, after Satfinance acquired full title to the Work, Philbrick secretly purported to pledge the Painting as collateral on a multimillion-dollar art-backed loan (the "Loan") from Athena. As part of this transaction, and at Athena's insistence, Philbrick purported to transfer ownership of the Painting to a Jersey entity he created and controlled for the purpose of borrowing money. Of course, though, where Satfinance held full title to the Painting, neither Philbrick nor IPL had any right to pledge or transfer title to Boxwood. And since Boxwood acquired no rights from this fraudulent transfer, Boxwood was unable to grant Athena with a security interest. Had Athena performed even minimal due diligence prior to originating the

Loan—such as reviewing bank statements to verify the source of funds for the purported purchase of the Painting—Athena would have exposed IPL's fraud and discovered that Satfinance, not IPL, provided virtually the entire purchase price for the Painting.  Instead, Athena merely requested that Philbrick fill out by hand two one-page "Financial disclosure document[s]," for himself and for IPL, without undertaking any third-party verification.  (*See* Dkt. No. 30 ¶¶ 37-55.)  Rendering Athena's refusal to return SIL's stolen Painting even more troubling, facts have emerged demonstrating that Athena was not a victim, but rather an enabler of Philbrick's fraud.  Indeed, the criminal Complaint alleges that Athena *encouraged* Philbrick to assume control over the Jersey entity to effectuate the sham transfer of SIL's Painting.  (*See* Ex. A ¶ 5(c).) And Athena went so far as to draft the documents facilitating this sham transfer from one Philbrick-controlled entity to the other.  For his role in masterminding this, and other frauds, Philbrick has been charged with wire fraud and aggravated identity theft.  *U.S.A. v. Philbrick*, 20 Cr. 351 (SHS), Dkt. No. 10.  He is now in federal custody, having been denied bail, as he awaits trial.

In October 2019, Philbrick confessed to Satfinance that he had signed papers purporting to transfer the Painting to Boxwood and to pledge it as collateral on the Loan.  In the wake of these shocking admissions, Satfinance almost immediately contacted Athena asserting its ownership rights and demanding the return of its Painting.  After Athena refused, in October 2019 Satfinance promptly commenced a suit against Philbrick, IPL, Boxwood and Athena in London, England, seeking a declaration as to its legal and beneficial title to the Painting, and the return of the Painting. At the time of Satfinance's application, the painting was in a museum exhibition in Japan that was not scheduled to end until the end of November.  However, meanwhile, Athena surreptitiously removed the Painting from the Japanese museum and transported it to a storage facility in New York, providing Athena with a jurisdictional hook to file this *in rem* action.

On November 14, 2019, the English High Court granted a preliminary injunction enjoining Athena from selling, transferring, or otherwise disposing of the Painting during the pendency of the dispute.  And at the same time, it granted Satfinance's request to compel the disclosure of the Painting's whereabouts, and to inspect the Painting, among other reasons, to procure adequate insurance coverage for its Painting during the pendency of the action.

On June 2, 2020, the English Court found that it lacked jurisdiction over Athena, and granted Athena's motion to dismiss it from the English action.  Satfinance has obtained leave to appeal that ruling, and in granting leave to appeal, the High Court held that "the points raised by the Appellant [Satfinance] on this appeal have a real prospect of success[.]"  (*See* Exhibit A.)  The hearing on the appeal is expected to be scheduled during November.  And in accordance with English court practice, a decision is expected within several weeks after the hearing.  Meanwhile, the English case continues against Philbrick, IPL, and Boxwood.  In addition, the only other party who has asserted an ownership claim to the Painting, Delahunty, is now a party to the English proceeding.

On the same day that Athena was dismissed from the English proceedings on narrow jurisdictional grounds and while on notice of Satfinance's intention to appeal, it commenced this action in New York state court by filing a Summons with Notice.  Athena listed various "Interested Persons" in the State Court Action, including Satfinance and Delahunty.  And at the same time, it purported to "revoke" the "irrevocable permission" it had given to Satfinance's representatives to inspect the Work.  On June 17, 2020, Athena filed an Order to Show Cause (which was never

signed) seeking to "immediately sell" the Painting. The following day, Satfinance, with Delahunty's consent, removed the action to this Court. Athena renewed its application for an order "[p]ermitting the immediate sale of" Satfinance's stolen Painting in this Court on July 29, 2020. Athena did not cite a single federal rule or statute under which the motion is brought, did not file a memorandum of law, and submitted no admissible evidence, only an attorney affirmation. (*See* Dkt. Nos. 19-24).

1. **Athena's Motion Runs Afoul of this Court's Rules.**

Athena's motion was brought in flagrant disregard of this Court's rules. Under Local Civil Rule 7.1(a), all motions made in the Southern District of New York must include: (1) "[a] notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion," (2) "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined," and (3) "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." S.D.N.Y. Local Civil Rule 7.1(a)(1)-(3). The purpose of Local Civil Rule 7.1(a)(1) is to "fairly and adequately appris[e] [the parties] of the nature and basis of the application," by requiring a notice of motion or order to show cause that specifies "the applicable rules or statutes pursuant to which the motion is brought, and . . . the relief sought by the motion." *Pompey v. 23 Morgan II, LLC*, No. 16-CV-2065 (PK), 2017 WL 1102772, at *3 (E.D.N.Y. Feb. 13, 2017).

Athena's motion violates all three subdivisions of Rule 7.1(a). In its application, Athena fails to specify a single rule or statute under which the motion is brought, and therefore Athena has entirely failed to apprise the parties or the Court of the "nature and basis of the application." By ignoring the requirement that it file a supporting memorandum of law, Athena has left the parties and the Court in the dark about the alleged factual and legal bases for the extraordinary relief Athena seeks. And Athena has provided *no* admissible evidence, through an affidavit or otherwise, from a witness with actual knowledge, instead relying exclusively on an attorney affirmation containing conclusory statements and bare legal conclusions. It is exactly in situations like this, where the movant utterly disregards the rules, that "[t]he absence of a memorandum of law that comports with the requirements of Rule 7.1 could alone form a basis for denying [a] motion." *Pompey*, 2017 WL 1102772, at *3.

2. **Athena Has Not Established Any Right to the Extraordinary Relief it Requests.**

Procedural defects aside, it is clear from the face of Athena's motion that it is frivolous. Satfinance and Delahunty have filed pleadings denying Athena's alleged interest and asserting their own rights to the Painting. Should the case proceed in this forum, it will be for the Court to determine—at the conclusion of discovery, at the soonest—who is entitled to possess the Painting, and what interests the various parties may have in it. By seeking an "immediate sale" based on the pleadings, however, Athena is asking the Court to predetermine the merits of the entire case.

Athena has not even attempted to identify the legal basis for the extraordinary relief it seeks, but even if this Court were to construe the motion as one for an affirmative injunction under Federal Rule of Civil Procedure 65, Athena cannot—indeed, it has not even attempted to—

Hon. George B. Daniels  September 4, 2020
Case No. 20 Civ. 4669 (GBD)  Page 5 of 7

establish the requisite showing, including, at the very least, a likelihood of success on the merits or anything resembling irreparable harm.

Rule 65 governs preliminary injunctions. Athena does not cite the Rule, let alone attempt to satisfy it. When a party seeks a "mandatory injunction," allowing the movant to alter the status quo, "the movant must show a 'clear' or 'substantial' likelihood of success on the merits, and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Hornig v. Trustees of Columbia Univ. in City of New York*, No. 17 CIV. 3602 (ER), 2018 WL 5800801, at *2 (S.D.N.Y. Nov. 5, 2018). Where, as here, Athena seeks a mandatory injunction, and "the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," Athena is held to that "heightened standard" beyond what "[a] party seeking a preliminary injunction must ordinarily establish." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). And ordinarily, "this type of ultimate relief request is fatal to a preliminary injunction application." *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020).

It is nearly impossible to understand how Athena could possibly argue in good faith—let alone for this Court to find—that Athena has satisfied its extremely high standard for an affirmative injunction. Indeed, the accompanying attorney affirmation does not cite to a single legal authority, does not attempt to show that "extreme or very serious damage will flow" from a denial of its application, does not make a "clear or substantial showing" that there is a likelihood of success on the merits, and does not address *at all* the substantial defenses and affirmative claims to ownership that Satfinance and Delahunty have advanced.[1] On this basis alone, Athena's motion cannot succeed. What is more, where Athena is seeking to sell the Painting, its claims are entirely about money, and where money damages suffice—in contrast to Satfinance's and Delahunty's claims seeking the return of this one-of-a-kind Painting—it is axiomatic that the movant cannot make the requisite irreparable-harm showing, and the motion must fail. *See First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y*, 164 F. Supp. 2d 383, 392 (S.D.N.Y. 2001), *aff'd*, 43 F. App'x 462 (2d Cir. 2002) (where money damages can be calculated, "a preliminary injunction is not appropriate because [the party] has an adequate remedy at law").

3. **This Court Should Defer to the English Proceeding.**

Satfinance and Delahunty, two parties who would not otherwise be subject to this Court's *in personam* jurisdiction, have had no choice but to appear in this action because Athena manufactured *in rem* jurisdiction by secreting the Painting from a Japanese museum to its private New York storage site. But where the competing claimants are based in the United Kingdom, and English law governs their ownership claims, it is clear that the center of gravity of this matter is in England. Philbrick and IPL, an English company, operated out of a gallery in London, which is

---

[1] Where Athena is the moving party, its request is unprecedented for the parties opposing the motion to "post a bond in the amount of $20 million[.]" No authority—and Athena cites none—suggests that a party in opposing the preliminary injunction should be required to post a bond. To the contrary, Rule 65(c), by its express terms, requires the "movant," here Athena, to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

where Philbrick had his dealings with Satfinance and Delahunty. To address the merits of this action, the Court will need to determine the legal rights that arose as a result of each of a sequence of transactions, *i.e.* (i) the original acquisition of the Painting and the agreement giving legal title to Satfinance (which Athena claims had no effect), (ii) Philbrick's sale of a partial interest in the Painting to Delahunty, and (iii) Philbrick's purported transfer of the Painting to Boxwood and pledge to Athena. The first two of these events concern transactions that took place among parties in England that should be governed by English law. The legal position resulting from the third event also depends on the application of English law, because the written agreement that purported to effect the transfer from IPL to Boxwood was expressly governed by that law. Furthermore, Philbrick was operating from England at the time of his shady dealings with Boxwood and Athena.

The English High Court already has determined that Satfinance has a "real prospect of success" in its appeal of the jurisdictional ruling. And a decision on the appeal is expected by December. If the appeal is granted, then all parties who have asserted claims to the Painting will be before the English court in one proceeding. In that event, Satfinance and Delahunty anticipate making a formal motion to stay or dismiss the present action on the ground that England is the *forum conveniens* for this dispute. Alternatively, Satfinance and Delahunty may argue that this Court should exercise its discretion to defer addressing the merits of Athena's claim to the Painting until the English Court has determined the prior rights of Satfinance and Delahunty under English law.

**4.     Satfinance and Delahunty Are Entitled to Inspect the Painting.**

On March 11, 2020, the English High Court granted Satfinance's request to inspect the Painting and issued an Order for Inspection of Relevant Property, requiring Athena to send a letter to its storage facility, ARCIS, "instructing ARCIS to permit access" to Satfinance's agent "to inspect the [P]ainting." (March 11, 2020, High Court Order, attached as Exhibit B.) On that same day, Athena sent a letter to ARCIS, stating that "[w]e hereby provide you with *irrevocable instructions* to permit Ms. Guilana Moreto of Contemporary Conservation Limited to attend your premises for the purposes of viewing and preparing a condition report of Painting for Satfinance Investment Limited." (March 11, 2020, letter from Rebecca Fine to Roxanna Zarnegar, (emphasis added), attached as Exhibit C.) Despite the High Court Order and Athena's "irrevocable" permission, however, since the jurisdictional ruling Athena has steadfastly refused to grant access Satfinance's agent for purposes of the inspection.

Satfinance and Delahunty require access to the Painting to obtain insurance of this valuable asset and to verify its condition. There is no basis for Athena to deny access—indeed, Satfinance and Delahunty are entitled to inspection under Rule 34 of the Federal Rules of Civil Procedure—and yet Athena has repeatedly refused. *See* Fed. R. Civ. P. 34(a)(2) (allowing a party "entry onto designated land or other property possessed or controlled by the responding party . . . to inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it"). Athena has stated that the Painting is "insured," but it has refused to provide any additional information regarding its insurance policy. Satfinance therefore has sought to procure its own insurance coverage, but the carrier will not bind coverage without an up-to-date condition report of the Painting. And to date, Athena has refused to allow a conservator the requisite access the Painting. Under these circumstances, this Court should order the limited expedited discovery that will not prejudice Athena in any meaningful way. *See, e.g., Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) ("[I]n deciding a matter merely of regulating the timing of discovery, it

makes sense to examine the discovery request on the entirely of the record to date and the reasonableness of the request in light of all the surrounding circumstances.") (internal citations omitted); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (expedited discovery would not pose substantial hardship on defendant where documents sought were in defendant's possession and control and requests were not overly broad or burdensome).

The time sensitivities of this inspection now have become especially critical in light of news reports yesterday that the warehouse to which Athena secreted the Work is closing permanently and the final day of operations will be October 31, 2020. *See* https://news.artnet.com/art-world/arcis-warehouse-shutting-down-1905756. Given that the Painting will be moved prior to that date, it is imperative that Satfinance and Delahunty be allowed to inspect the Painting, and procure adequate insurance coverage as soon as possible before Athena tries to move the Painting again.

## Conclusion

Satfinance and Delahunty respectfully request that the Court reject Athena's extraordinary request seeking the ultimate relief in this case. Alternatively, where Athena has identified no exigencies—none exists—Satfinance and Delahunty respectfully request that the Court convert the September 24, 2020, order-to-show-cause hearing into a conference, at which time the Court can address how, if at all, Athena's motion should proceed, and the discovery matters raised above, including Satfinance's and Delahunty's request to inspect the Painting.

Respectfully submitted,

_____  _____
Judd B. Grossman  Derek J.T. Adler

GROSSMAN LLP  HUGHES HUBBARD & REED LLP
745 Fifth Avenue, 5th Floor  One Battery Park Plaza
New York, New York 10151  New York, New York 10004
jgrossman@grossmanllp.com  derek.adler@hugheshubbard.com
t: (646) 770-7445  t: (212) 837-6000

*Attorneys for Interested Party Satfinance Investment Limited*

cc:     All counsel (via ECF)