

745 Fifth Avenue, 5th Floor, New York, NY 10151
T. 646-770-7445  F. 646-417-7997
GROSSMANLLP.COM

January 22, 2021

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11A
New York, New York  10007

> Re: *Athena Art Finance v. Artwork by Jean-Michel Basquiat, in Rem, and Satfinance Investment Limited*, Case No. 20 Civ. 4669 (GBD)
> **Update and Agenda for January 28, 2021, Initial Conference**

Dear Judge Daniels,

We write on behalf of Satfinance Investment Limited ("SIL") in advance of the January 28, 2021, initial conference (Dkt. No. 46) to:  (i) provide an update concerning the status of the parallel English proceedings; and (ii) address SIL's forthcoming motion for injunctive relief seeking to maintain the *status quo* during the pendency of this property-title dispute.

## Introduction

SIL obtained "full title" to the Painting at the center of this lawsuit in August 2016, and since that time it never transferred, sold, or otherwise disposed of the Painting to anyone. Contemporaneously with SIL's acquisition, an art dealer named Inigo Philbrick fraudulently induced SIL to enter into a profit-sharing agreement concerning any future sale of the Painting. Unbeknownst to SIL, however, as part of a fraudulent scheme—as detailed in an April 30, 2020, Criminal Complaint—Philbrick then purported to transfer title to the Painting to a Jersey-based shell company that he created for purposes of obtaining a $10 million credit facility from Athena, a fine-art financing company. Despite failing to perform even the most basic due diligence, Athena originated the loan and then took physical possession of the Painting, purportedly as collateral.

Almost immediately after Philbrick's fraud was revealed in October 2019, SIL commenced proceedings in the United Kingdom (where SIL's representative, Philbrick, and Inigo Philbrick Limited ("IPL") were located) asserting replevin claims seeking the return of its Painting. Initially the English Court granted an injunction enjoining Athena from disposing of the Painting based partly on its finding that SIL was likely to prevail on the merits of its claims against Athena. And later, in the midst of Athena's personal-jurisdiction challenge, the injunction was extended on consent. Now that the English Court has recently declined to exercise jurisdiction over Athena,

and Athena has opted to proceed with its claims here, rather than in the first-filed English action, Athena inexplicably has refused a consent injunction, necessitating SIL's forthcoming application.

There is no good-faith basis in law or fact for Athena's refusal to maintain the *status quo* during the pendency of its own lawsuit. By virtue of initiating this declaratory-judgment action, Athena concedes that there is a live controversy concerning the ownership of the Painting. Indeed, at the same time that Athena commenced this action, it filed a motion requesting the Court's permission to conduct an "immediate sale" of the Painting. (Dkt. Nos. 19-24, 33.) By all accounts, therefore, it would be entirely improper—and likely sanctionable—for Athena to unilaterally take steps to effectuate the ultimate relief before the Court issues a judgment finding that Athena may do so. To be sure, Athena withdrew its application for an "immediate sale" after SIL submitted opposition explaining why the motion was frivolous. (Dkt. Nos. 35, 36.) But the fact remains that, having filed this lawsuit, Athena knows it may not sell the Painting without the Court's permission, rendering bad faith and inexplicable its refusal to consent to the proposed injunction.

## Factual Background

SIL claims that in August 2016, IPL—an English entity owned and controlled by Inigo Philbrick, then a 29-year-old up-and-coming art dealer, now indicted for perpetrating a massive fraud—entered into an agreement expressly granting SIL "full title" to the Painting in exchange for $12.2 million. Since acquiring full title, SIL never sold, transferred, or otherwise disposed of any part of its ownership interest in the Painting. (*See* Dkt. No. 30 at ¶¶ 2, 19-32.) Contemporaneously with the purchase, Philbrick fraudulently induced SIL to enter into a profit-sharing agreement whereby IPL would receive a percentage of any profits from the resale of the Painting based on its promised $6.2 million contribution to the purchase price. In fact, though, Philbrick misrepresented (including in forged documents) that the purchase price was $18.4 million, when in reality, the Painting was acquired for $12.5 million. SIL's $12.2 million contribution therefore amounted to virtually the entire purchase price (98%), while Philbrick's contribution was a minuscule 2%.

After SIL acquired full title to the Painting, Philbrick secretly purported to pledge the Painting as collateral on a multimillion-dollar art-backed loan (the "Loan") from Athena. As part of this transaction, and at Athena's insistence, Philbrick purported to transfer ownership of the Painting to a Jersey entity, 18 Boxwood Green Limited ("Boxwood"), a shell company that he created and controlled for purposes of borrowing money. Rather than perform even basic due diligence prior to originating the Loan—such as reviewing bank statements to verify the source of funds for the purported purchase—Athena merely requested that Philbrick fill out by hand two one-page "Financial disclosure document[s]" for himself and for IPL, without undertaking any third-party verification. (*See* Dkt. No. 30 at ¶¶ 37-55.) The criminal Complaint alleges it was at Athena's "encouragement" that Philbrick assumed control over "the Jersey-based corporate vehicle" to effectuate the sham transfer of SIL's Painting. (*See* Ex. A at ¶ 5(c).) For his role in masterminding this, and other frauds, Philbrick has been charged with wire fraud and aggravated identity theft. *U.S.A. v. Philbrick*, 20 Cr. 351 (SHS) (Dkt. No. 10). He is now in federal custody, having been denied bail as he awaits trial.

Case No. 20 Civ. 4669 (GBD)
January 22, 2021
Page 3 of 5

## Procedural Background

In October 2019, after Philbrick confessed his fraud, SIL immediately contacted Athena asserting its ownership rights and demanding the return of its Painting. After Athena refused, SIL promptly commenced a suit against Athena, Philbrick, IPL, and Boxwood in London, England, seeking a declaration as to its legal and beneficial title, and the return of the Painting. At the time of SIL's application, the Painting was in a museum exhibition in Japan that was not scheduled to end until the end of November. Meanwhile, however, Athena surreptitiously removed the Painting from the Japanese museum and transported it to a storage facility in New York, providing Athena with a jurisdictional hook to file this *in rem* action.

On November 14, 2019, the English High Court granted a preliminary injunction enjoining Athena from selling, transferring, or otherwise disposing of the Painting during the pendency of the dispute. At the same time, it granted SIL's request to compel the disclosure of the Painting's whereabouts, which Athena refused to do for 6 weeks before finally complying. The English court also granted an Order allowing SIL to inspect the Painting for purposes of obtaining insurance coverage. But once again, it was many months before Athena finally complied. At a March 11, 2020, hearing, the English Court observed that Athena does "not give the impression of a party which is trying to be cooperative and to get to the bottom of the matter and sort matters out in a reasonably commercial way." (*See* Ex. B at ¶ 34.)

On June 2, 2020, the English Court found that it lacked jurisdiction over Athena, and granted Athena's motion to dismiss it from the English action. And on December 21, 2020, this ruling was affirmed on appeal. Meanwhile, the English case continues against Philbrick, IPL, and Boxwood. On the same day that Athena was dismissed from the English proceedings on narrow jurisdictional grounds, Athena commenced this action in New York state court by filing a Summons with Notice. Athena listed various "Interested Persons" in the State Court Action, including SIL. On June 17, 2020, Athena filed an Order to Show Cause (which was never signed) seeking to "immediately sell" the Painting. The following day, the action was removed to this Court. Athena renewed its application for an order "[p]ermitting the immediate sale of" SIL's stolen Painting in this Court on July 29, 2020. Athena did not cite a single federal rule or statute under which the motion was brought, it did not file a memorandum of law, and it offered no admissible evidence, only an attorney affirmation. (*See* Dkt. Nos. 19-24, 33.) Athena withdrew its application after SIL filed opposition papers explaining that the relief sought was frivolous. (Dkt. Nos. 35, 36.) And since that time, Athena has refused SIL's request to maintain the *status quo* during the pendency of the parties' competing title claims.

## The Court Should Issue A Temporary Injunction

In cases like this one involving unique artwork, the parties typically will agree to an injunction on consent to maintain the *status quo* during the pendency of competing title claims. Inexplicably, Athena has refused to agree to such a standstill, necessitating this application. But there simply is no good-faith basis for Athena's position, especially considering that *Athena* commenced this action to resolve the cloud over the Painting's title.

**1.    SIL will be irreparably harmed without an injunction.** New York courts have found time and time again that where, as here, the case involves a unique Painting, the movant will

"suffer irreparable injury without the grant of an injunction pending the ultimate determination over ownership." *Kozar v. Christie's, Inc.*, 2011 WL 1886585, at *9 (N.Y. Sup. Ct. Westchester Co. May 18, 2011). That is because "[o]riginal works of art are within the small category of intrinsically unique goods for which . . . a damages remedy would be inadequate to make [the plaintiff] whole." *Robins v. Zwirner*, 713 F. Supp. 2d 367, 374-75 (S.D.N.Y. 2010).[1]

SIL holds full title to the Painting, but stands to lose it under Athena's threats of an imminent—and likely commercially unreasonable—sale brokered by Athena before its rights can be fairly adjudicated. Because the transfer or sale of the Painting by Athena would "render the final judgment ineffectual," SIL has established irreparable harm. *Republic of Lebanon v. Sotheby's*, 167 A.D.2d 142, 145, 561 N.Y.S.2d 566 (1st Dep't 1990) (affirming issuance of injunctive relief to prevent transfer of ownership of a collection of antiques); *see Kozar v. Christie's, Inc.*, 929 N.Y.S.2d 200, at *6 ("[B]arring an injunction, Plaintiffs may never locate this painting again, Plaintiffs have established that they will suffer irreparable injury without the grant of an injunction pending the ultimate determination over ownership of the painting in this action."); *Naber v Steinitz*, No. 21918/91, 1991 WL 11764578 (Sup. Ct. N.Y. Co. Dec. 23, 1991) ("[I]f defendants are permitted to sell these paintings without plaintiff's consent, it is clear that plaintiff will be irreparably harmed.").

**2.     SIL is likely to succeed on its claims against Athena.** At the very least, there are "sufficiently serious questions going to the merits to make them a fair ground for litigation," which is enough for the injunction where Athena cannot demonstrate any "hardship" caused by a temporary injunction. *See Pearson Educ., Inc. v. Labos*, No. 19 CIV. 487 (CM), 2019 WL 1949820, at *4 (S.D.N.Y. Apr. 23, 2019). Indeed, where—as the criminal Complaint against Philbrick details—Philbrick stole the Painting, and then engaged in a fraudulent scheme purporting to transfer title to one of his Jersey-based entities, there is no factual or legal basis for Athena's claim that Boxwood obtained *any* legitimate interest in the Painting. *See* U.C.C. § 9-203(b)(2) (a security interest is enforceable only if the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party). And, therefore, under no circumstances could Athena have acquired an interest in the Painting in connection with a Loan that even Athena admits Philbrick fraudulently induced. Rendering even more untenable Athena's claims, its hands are unclean where its diligence in originating the loan was shoddy; indeed, Athena does not dispute that it failed to take the basic step of reviewing IPL's bank statements to verify Philbrick's claim that it provided all the funds to purchase the Painting on its own behalf.

---

[1] *See Robins*, 713 F. Supp. 2d at 375 (finding potential sale of painting would irreparably injure plaintiff because money damages would be inadequate compensation for loss of artwork); *Gerald Modell Inc. v. Morgenthau*, 764 N.Y.S.2d 779, 786 (Sup. Ct. N.Y. Co. May 21, 2003) (finding irreparable harm where jewelry could be transferred or sold and final judgment would be rendered ineffectual); *Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 424 (S.D.N.Y. 2002) (holding that paintings are unique because they have "historical and artistic value that makes them relatively rare, impossible to replace through manufacturing, and attractive to collectors and dealers"); *see also* CPLR § 7109(a) ("[W]here the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that the chattel shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the court.").

**3.     An injunction will not impose any hardships.**  As evidenced by Athena's motion at the outset of this case seeking Court approval of an "immediate sale" of the Painting, Athena's ultimate goal is to recover money, not the Painting.  And where Athena cannot seriously dispute that the market for Basquiat's works is robust, any delay in selling the Painting could not conceivably cause any undue hardship.  Indeed, where a cloud over the Painting's title will not be lifted until the claims are resolved, any potential buyer would have equally dubious intentions in purchasing the work as Athena would have in selling it at this time.  As a result, any purchase price necessarily would be well below the fair-market value, meaning that an injunction enjoining Athena's premature sale of the Painting actually would prevent—not cause—any monetary harm to its value and saleability.

## Conclusion

Athena filed this action seeking a resolution of the parties' competing title claims.  Common sense and the law dictate that the Painting should not be sold, transferred, or physically moved until those claims are finally resolved.  The temporary injunction should be issued.

Respectfully submitted,

| | |
|---|---|
| _/s/ Judd Grossman_ | _/s/ Derek N. Adler_ |
| Judd B. Grossman | Derek J.T. Adler |
| **GROSSMAN LLP** | **HUGHES HUBBARD & REED LLP** |
| 745 Fifth Avenue, 5th Floor | One Battery Park Plaza |
| New York, New York  10151 | New York, New York  10004 |
| jgrossman@grossmanllp.com | derek.adler@hugheshubbard.com |
| t: (646) 770-7445 | t: (212) 837-6000 |

*Attorneys for Interested Party Satfinance Investment Limited*

cc:     All counsel (via ECF)