# EXHIBIT B

Neutral Citation Number: [2020] EWHC 818 (Ch)

Case No: BL-2019-001998

**IN THE HIGH COURT OF JUSTICE
BUSINESS AND PROPERTY COURTS
OF ENGLAND AND WALES
BUSINESS LIST (ChD)**

Royal Courts of Justice, Rolls Building
Fetter Lane, London, EC4A 1NL

Date: **11 March 2020**

**Before** :

**Mr Justice Mann**

- - - - - - - - - - - - - - - - - - - - -

Between :

| | |
|---|---|
| **Satfinance Investment Limited** | **Claimant** |
| - and - | |
| (1) Inigo Philbrick<br>(2) Inigo Philbrick Limited<br>(3) 18 Boxwood Green Limited<br>(4) Athena Art Finance Corp | **Defendants** |

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

**Richard Edwards QC** (instructed by **Signature Litigation**) for the **Claimant**
**William Hooker** (instructed by **Boies Schiller Flexner (UK) LLP**) for the **Fourth Defendant**

Hearing date: **11th March 2020**
- - - - - - - - - - - - - - - - - - - - -

# APPROVED JUDGMENT

**Mr Justice Mann**                                                                 **Wednesday, 11 March 2020**
 (**12:46** pm)

                Judgment by MR JUSTICE MANN

1. This is an application made by the Satfinance Investment Limited ("Satfinance") for the inspection of a painting which is held in a warehouse on behalf of the fourth defendant Athena Art Finance Corporation ("Athena"), a US company.

2. The background to this matter is somewhat complex. For present purposes, the relevant background can be distilled as follows. Satfinance claims to be entitled to a painting by Jean-Michel Basquiat entitled Humidity. It may be worth in the region of $12 million, it may be worth more; its precise value does not matter for present purposes.

3. Athena claims to be entitled to hold it pursuant to a valid security interest for debts of inter alia the third defendant. The security was not created at the behest or on behalf of or with the authorisation of the claimant and there is a clear dispute as to title as between the claimant on the one hand, claiming legal and beneficial ownership of the painting, and Athena, which claims to have acquired a legitimate security interest under New York law.

4. As I have indicated, the painting is kept in a warehouse and there is no particular suggestion that the warehouse is not a satisfactory repository for the painting.

5. Athena, it is understood, has some sort of insurance over the painting. Satfinance does not have insurance over the painting but seeks, so far as it can do so, to obtain insurance. It has investigated, with Athena, whether it can be joined to Athena's insurance policy and has been rebuffed.

6. In those circumstances, Satfinance wishes to have the opportunity to effect its own insurance of the painting. Potential insurers have indicated that they wish to have assurances as to the condition of the painting and, to that end, have proposed a New York expert as being a person who should go and inspect the property in order to check its condition, and no doubt anything else which the insurers feel they need to know about it.

7. The claimant has asked Athena to allow such an inspection; and Athena has declined to do so. In those circumstances, Satfinance makes this application under CPR 25.1(1)(c)(ii) "for the inspection of relevant property".

8. The first complicating factor in relation to this is one relating to service out. Athena has been joined to these proceedings notwithstanding that it is a Delaware company, pursuant to the proper or necessary party provision in the service out requirements. Permission to serve out was given by Roth J. Athena has challenged that service out order and seeks to set it aside, as it its right. The application to set aside the order for service out is to be heard by Master Marsh next Tuesday.

9. The claimant seeks an order which will take effect before that application is determined. Athena resists the matter being dealt with today on the footing that it should be adjourned until after the Master's decision is known. It does so on the basis that if the Master's decision is in favour of setting aside the permission to serve out then Athena will no longer be a party. If that were the case then an application under the CPR provision which I have identified would not be the appropriate provision to go under; and if an application for inspection were to be made, the application would have to be made (if it could be made at all) under paragraph (j) of CPR 25.1(1). That allows for inspection of documents against non-parties under section 34 of the Senior Courts Act 1981.

10. That, says Mr Hooker who appears for Athena, raises different considerations to those which would apply to the circumstances in which the respondent to the application is actually a party to the litigation. In essence, Mr Hooker says I should not be making orders today which will foreclose the possibility that his client will no longer be a party; and his client should have the benefit of being able to resist this application on a proper basis which will not be known until Master Marsh has delivered his judgment.

11. In those circumstances, his first application is to adjourn this application.

12. Mr Hooker does have a point insofar as his point is predicated on the prospect that the court should not lightly make orders against parties who, for the time being, are parties but who may cease to be parties and whom it may, in due course, be held should never have been made a party because service out against them has been set aside.

13. Were it the case that a party joins a potential defendant with a view to getting some sort of illegitimate advantage of that nature then of course the court would hesitate before granting the relief.  However, I do not consider that the joinder of Athena in the first place was with any such matter in mind.  Without prejudging the application to set aside, it seems to me that a conflict of title arising out of the circumstances of this case are capable, at first sight -- I say no more than that -- of justifying the joinder of Athena in the first place.  But I accept it may turn out that a fuller analysis than I have conducted will demonstrate that that is wrong.  At any event, Athena seems to have been joined in good faith.

14. It may be the case that Satfinance has, to a degree, timed its application to get it in before the Master considers the point and before a potential departure of Athena, and if that were a contrivance again I would not allow advantage to be taken of that.

15. However, I do not consider that that is a powerful factor, so far as it is a factor at all, in this case.  The fact is that there is, in my view, an insurance problem in relation to this matter.  Satfinance have a legitimate interest in trying to insure this property.  It has not been demonstrated that such insurance as Athena has will protect Satfinance's interest.  Therefore, it seeks to protect its interest.  It is not simply a case of the interest being protected over what can be seen to be a short period of time between now and close of business on Tuesday.  It is entirely possible, if not predictable, that matters will not be resolved by the time the court rises on Tuesday.  I am told that the application to set aside is down for a day.  It can be reasonably projected that the Master will wish to reserve his judgment.  If he does that then there will be a further period of time before the

Master delivers his judgment. During that period of time, if there is an insurance problem, that insurance problem will persist.

16. It is also well within the bounds of possibility, if not actually likely, that there will be an appeal from his decision. If there is an appeal from his decision then a final decision on setting aside will not be given for another period of potentially several months.

17. The insurance problem is therefore capable of extending for some significant time into the future. It is justifiable to address it now, rather than waiting to see what happens as a result of the Master's hearing which may or may not result in an immediate judgment.

18. In my view, it is right to address the insurance problem, if it is a problem, now, and at this stage, and that Satfinance are justified in doing so now.

19. Mr Hooker did not seek an adjournment to put in any evidence, so I have to deal with it on the basis of the evidence that I have.

20. In those circumstances, I shall not adjourn the application to be dealt with on or after next Tuesday because that leaves things too much up in the air. There is a nettle to be grasped and it is right that it should be grasped today.

21. I therefore turn to that nettle. Mr Edwards QC, who appears for Satfinance, puts forward a case which can be distilled relatively simply. His clients wish to have insurance for what they say is their asset. It is a potentially very valuable asset and having insurance is a reasonable requirement or reasonable desire. They cannot get insurance as things stand because they cannot get access to the property. There is a dispute between them and Athena as to who has a better title to the property; and that dispute and the custody of the painting stands in the way of them getting their insurance. He therefore seeks the inspection to which I have referred.

22. Mr Hooker does not resist the inspection on the grounds that it will somehow adversely affect the interests of his party. It is not suggested that the proposed inspector is inappropriate. It is not suggested that the inspection will somehow invalidate his insurance policy. It is not really

suggested by him that the creation of a separate policy of insurance would somehow imperil his own client's insurance position.

23. There was some suggestion that insurance difficulties might be created if there are two policies covering the same asset in these circumstances, but it was no more than a suggestion and I do not regard it as a plausible one.

24. The inspection which is sought is not to be invasive. It is not to be disruptive. It is merely to be an inspection. In those circumstances, Mr Hooker does not put his case higher than he is able and does not suggest that somehow the inspection itself will operate oppressively, unfairly or otherwise to the commercial or other detriment of Athena.

25. His points, beyond the adjournment point, which I have dealt with, go more to technicalities of the nature to which I have already referred.

26. His skeleton argument refers to the court assuming an in personam jurisdiction over Athena which it may turn out not to have. I agree that the court is exercising a jurisdiction which might be considered to be in personam, but the court does that every time it grants an injunction after permitting service out and in circumstances in which the injunction will be discharged if service out is set aside. Whether or not it is the purest way of looking at it, it seems to me right to say that for the time being the court has assumed a jurisdiction to grant interim orders unless and until it becomes apparent that Athena is no longer than appropriate party.

27. In taking that view, the court will, of course, make sure that its orders achieve as little invasion and, in particular, irremediable invasion into the affairs of the challenging defendant, as is consistent with justice. But, in that connection, I cannot resist observing that seeking inspection of this asset is rather less invasive than the injunctive relief which has already been granted which restrains any dealing with the painting.

28. I accept Mr Hooker's submissions that the approach of the court to ordering inspection against a non-party out of the jurisdiction may be different from the approach of the court to making an

order against a party which is outside the jurisdiction, but, at the moment, the situation is that, for present purposes, Athena is a party and should be treated as a party.

29. Mr Hooker sought to resist the proposed inspection regime on the footing that Satfinance has, at least until recently, not demonstrated a particular concern with insurance at all. It is true that there is no particular historical reference to the desirability of insurance until something like February last year, at which point Satfinance received some assurance that the painting was insured until November. But since November Satfinance has demonstrated what might be thought to be an understandable concern that it should be insured. Although it might be said it did not press matters as hard and as fast as it might have done.

30. I do not think that this application should be rejected on the footing that Satfinance has not historically particularly cared about insurance. It may or may not have been thinking about insurance before February last year, but it has certainly been thinking about insurance since then.

31. Mr Hooker, therefore, does not advance any particularly cogent case against the inspection which is sought.

32. In my view, there is a sufficiently compelling need for this inspection, sufficient to justify, if not require, the court making the order, notwithstanding the prospect that at some point in the foreseeable future, although probably not finally in the near future, Athena may cease to be a party to the litigation.

33. I accept if Athena's application to set aside service out succeeds then a further intrusive application would have been made; but, in terms of levels of intrusion, the intrusion brought about by the inspection is minimal to the point almost of non-existence.

34. I have to say that the limited correspondence that I have read emanating from solicitors acting in this country for Athena and Mr Hooker's attempts to justify his resistance to the making of the order do not give the impression of a party which is trying to be cooperative and get to the bottom of the matter and sort matters out in a reasonably commercial way. I find it faintly surprising that

Athena has put up any resistance to the inspection at all since no decent reason has been put up. And I find it surprising that Athena has resisted the idea that Satfinance might want to have its own insurance.

35. In all the circumstances, I think that it is right that the desire to achieve insurance should be facilitated by the limited inspection of the painting which Satfinance require.

36. For the reasons that I have given, it may be that the final status of Athena is not decided for many months; and it is not sensible to leave the painting completely uninsured, as far as the claimant is concerned, if they wish to have it insured, for that period of time and pending that event.

37. In the circumstances, therefore, and subject to any observations that are made about the actual terms of the order, I shall grant the order for inspection sought.

38. Mr Edwards seeks to achieve the inspection by means of an order directed to Athena that it sign a letter of authorisation to the warehouse in particular terms.  At first sight, that seems to me to be a sensible way of achieving this matter, rather than making a general order permitting inspection which I fear, judging by the attitude of Athena so far, will merely lead to further applications in order to get the technicalities of the inspection sorted out; but if Mr Hooker has some observations to make about that, on which I have not heard him, I shall allow him to make his observations.