UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATHENA ART FINANCE CORP.,

                *Plaintiff,*

          -against-

that

CERTAIN ARTWORK BY JEAN-MICHEL
BASQUIAT ENTITLED HUMIDITY, 1982,
*In Rem,*

                *Defendant,*

SATFINANCE INVESTMENT LIMITED and
DELAHUNTY LIMITED d/b/a DELAHUNTY
FINE ART,

                *Interested Parties.*

Case No.  20-cv-4669(GBD)

Hon. George B. Daniels

---

SATFINANCE INVESTMENT LIMITED,

                *Intervenor-Plaintiff,*

          -against-

ATHENA ART FINANCE CORP. and
that CERTAIN ARTWORK BY JEAN-MICHEL
BASQUIAT ENTITLED HUMIDITY, 1982,
*In Rem,*

                *Intervenor-Defendants.*

---

**SATFINANCE INVESTMENT LIMITED'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

<table>
<tr>
<td>

Judd B. Grossman
**GROSSMAN LLP**
745 Fifth Avenue, 5th Floor
New York, New York  10151
jgrossman@grossmanllp.com

</td>
<td>

Derek J.T. Adler
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza, 12th Floor
New York, New York  10004
derek.adler@hugheshubbard.com

</td>
</tr>
</table>

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

    SIL Acquires Full Title to the Painting. .............................................................................. 2

    Philbrick Steals the Painting;
    Athena Encourages the Transfer to Boxwood. ..................................................................... 4

    The English High Court Issues Multiple Injunctions
    Enjoining Athena From Selling or Transferring the Painting. ............................................ 5

    Athena Commences this *In Rem* Action to Quiet Title. ...................................................... 7

    Athena's Parent Company Tells Investors It
    Cannot Sell the Painting Until this Lawsuit Is Resolved. .................................................... 7

LEGAL ARGUMENT ................................................................................................................. 8

    I.    SIL Will Be Irreparably Harmed Absent an Injunction. ......................................... 8

    II.    SIL Is Likely To Succeed on its Claims Against Athena. ...................................... 10

    III.    An Injunction Will Not Impose Any Hardships. ..................................................... 13

    IV.    SIL Should Not Be Required to Post a Bond. ......................................................... 14

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

CASES                                                                                                                               PAGE

*Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*,
   No. 08 CIV. 02152, 2008 WL 759353 (S.D.N.Y. Mar. 20, 2008) ............................................14

*Christie's Inc. v. Davis*,
   247 F. Supp. 2d 414 (S.D.N.Y. 2002) ................................................................................ 9-10

*Elbit Sys., Ltd. v. Credit Suisse Grp.*,
   917 F. Supp. 2d 217 (S.D.N.Y. 2013) ............................................................................... 11-12

*Gerald Modell Inc. v. Morgenthau*,
   764 N.Y.S.2d 779 (Sup. Ct. N.Y. Co. May 21, 2003) ...................................................................9

*Goat Fashion Ltd. v. 1661, Inc.*,
   No. 19 CIV. 11045 (PAE), 2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020) ..............................14

*Gov't Employees Ins. Co. v. Moshe*,
   No. 20-cv-1098(FB)(RER), 2020 WL 3503176 (E.D.N.Y. June 29, 2020) ..............................14

*Kozar v. Christie's, Inc.*,
   2011 WL 1886585 (N.Y. Sup. Ct. Westchester Co. May 18, 2011) ..................................8, 9, 13

*Lagemann v. Spence*,
   No. 1:18-CV-12218-GBD, 2019 WL 4014846 (S.D.N.Y. Jan. 24, 2019) ................................15

*Naber v. Steinitz*,
   No. 21918/91, 1991 WL 11764578 (Sup. Ct. N.Y. Co. Dec. 23, 1991) ...................................10

*Pearson Educ., Inc. v. Labos*,
   No. 19 CIV. 487 (CM), 2019 WL 1949820 (S.D.N.Y. Apr. 23, 2019) ....................................11

*Republic of Lebanon v. Sotheby's*,
   167 A.D.2d 142, 561 N.Y.S.2d 566 (1st Dep't 1990) ...............................................................10

*Robins v. Zwirner*,
   713 F. Supp. 2d 367 (S.D.N.Y. 2010) ...................................................................................8, 9

*Shagalov v. Edelman*,
   161 A.D. 3d 455, 76 N.Y.S.3d 33 (1st Dep't 2018) .................................................................10

*United States v. Dally*,
   165 F. Supp. 194 (S.D.N.Y. 1958) .........................................................................................13

**STATUTES**                                                                                                                                          **PAGE**

CPLR § 7109 .............................................................................................................................................10

U.C.C. § 9-203 ..........................................................................................................................................12

## PRELIMINARY STATEMENT

"Athena cannot practically move forward to sell any artworks until third-party claims are legally resolved."  Those are the words of Plaintiff Athena's parent company in a recent update to its investors regarding the Painting at issue here.  Notwithstanding this obvious reality, Athena has refused to maintain the *status quo* during the pendency of this lawsuit adjudicating competing title claims.  There is no good-faith basis in law or fact for Athena's position—especially where *Athena* initiated these proceedings to quiet title to the Painting—and a preliminary injunction should be issued.

This matter concerns a valuable Painting—an inherently unique work of fine art by a celebrated twentieth-century artist—that a now-indicted thief stole from Satfinance Investment Limited ("SIL") and then purported to pledge as collateral on a loan from Athena.  Despite failing to undertake any meaningful due diligence to vet the ownership claims of this 29-year-old thief—even the thief called Athena's diligence laughable—Athena agreed to originate the loan and then took physical possession of the Painting to protect its exposure by many multiples. Upon learning of the Painting's whereabouts, SIL immediately made Athena aware of its ownership claims.  Athena ignored SIL's demands, however, and instead secreted the Painting from a major museum exhibition in Japan to Athena's private storage in New York.  Unaware of the transfer, SIL promptly commenced proceedings in the United Kingdom in November 2019, where SIL, the thief, and his company were all located at the time.  And at virtually all times following, the English courts maintained an injunction enjoining Athena from transferring, selling, or otherwise disposing of the Painting.

Immediately following the dismissal of SIL's claims against Athena in the English action on purely jurisdictional grounds, Athena commenced this *in rem* lawsuit seeking a declaratory judgment resolving the competing title claims.  Recognizing that it would be improper to sell the

Painting before the Court resolved these claims, Athena initially asked the Court for permission to conduct an "immediate sale" of the Painting, but later withdrew that application after SIL demonstrated that the motion was legally and procedurally frivolous.  And as Athena's parent company recently told investors, "Athena cannot practically move forward to sell any artworks" until after Athena's claims are resolved.  Nonetheless, Athena inexplicably, and inexcusably has refused to agree to a preliminary injunction, necessitating this application.

Because under applicable law the thief could not transfer good title to the stolen Painting, and there is no question that SIL was the "full title" holder before Athena claims to have acquired a security interest in the Painting from the thief, SIL has demonstrated more than the requisite sufficient showing on the merits to justify the injunction.  More importantly, where, as here, this case involves an irreplaceable multi-million-dollar artwork, our courts routinely grant temporary injunctions to maintain the *status quo* until competing title claims are resolved.  And finally, Athena will suffer no hardship if an injunction is entered; indeed, Athena is seeking money damages ultimately, and an injunction will prevent the Painting from being sold at a below-market, fire-sale price before the cloud over its title is lifted.

As the English Court observed pointedly, Athena does "not give the impression of a party which is trying to be cooperative and to get to the bottom of the matter and sort matters out in a reasonably commercial way."  Under these circumstances, a preliminary injunction is warranted, and the motion should be granted.

## STATEMENT OF FACTS

### SIL Acquires Full Title to the Painting.

In July 2016, a 29-year-old art dealer named Inigo Philbrick approached SIL with a proposal to purchase a painting by the celebrated twentieth-century artist Jean-Michel Basquiat entitled "Humidity" (the "Painting").  Under Philbrick's proposal, SIL would acquire "full title"

to the Painting, and upon any resale the parties would share profits commensurate with their financial contributions.  (*See* Pesko Decl. at ¶ 2.)  To induce SIL's participation in this profit-sharing arrangement, on August 10, 2016, Philbrick sent SIL a signed Bill of Sale for the Painting reflecting that the Painting was being purchased for $18.4 million "from a Pennsylvania-based company" called SKH Management Corp. (the "SKH Bill of Sale").  (*See* Grossman Decl. at ¶ 3.)  Based on Philbrick's representations and the SKH Bill of Sale, SIL agreed to purchase the Painting for $18.4 million (*see* Pesko Decl. at ¶ 3), and to enter into a profit-sharing arrangement as described in the "partnership agreement" (the "Agreement") with Philbrick's company, Inigo Philbrick Limited ("IPL").

The Agreement expressly provided that only SIL would hold title to the work:  "For the avoidance of doubt[,] [SIL] shall hold full title to the artwork."  (*See id*. at ¶ 4.)  And the parties would obtain a beneficial interest commensurate with their contributions to the purchase price:  "Satfinance will contribute 50% of the purchase price or $9,200,000[,]" Philbrick "will contribute $6,200,000[,]" and SIL would grant a loan to Philbrick of $3 million, which would be "secured against the artwork and will be senior to IP's $6,200,000 equity contribution."  (*See id*. at ¶ 5.)  The parties agreed that "[a]ll profits above the purchase price of $18,400,000 USD will be shared equally between the two parties[,]" reflecting the parties' ostensibly coequal contributions to the purported purchase price.  (*See id*. at ¶ 6.)

Contemporaneously with the Agreement, IPL issued an invoice to SIL for a "66% share in" the Painting for $12.2 million (the "Invoice"), expressly incorporating by reference the terms of the Agreement.  (*See id*. at ¶ 7.)  On August 11, 2016, Philbrick emailed the Invoice to SIL, confirming that "[f]ull title [will] be transferred from Inigo Philbrick Limited to Satfinance upon receipt of the above balance."  (*See id*.)  SIL timely paid the full purchase

price to IPL, remitting a total of $12.2 million in August and September 2016. (*See* Grossman Decl. at ¶ 5.)

As it turns out, Philbrick lied to SIL about the terms of the acquisition and his alleged contract. (*See id.* at ¶ 4; Pesko Decl. at ¶ 9.) In reality, the Painting was acquired for $12.5 million, and therefore SIL's $12.2 million contribution amounted to virtually the entire purchase price. (*See* Grossman Decl. at ¶ 4.) Philbrick perpetrated this fraud—including by forging the SKH Bill of Sale and lying about the actual purchase price—in an attempt to misappropriate a sizeable beneficial interest in the Painting. But in fact, SIL contributed ninety-eight percent of the purchase price, and Philbrick's contribution was a miniscule two percent.

**Philbrick Steals the Painting;**
**Athena Encourages the Transfer to Boxwood.**

Unbeknownst to SIL, some eight months after it acquired full title to the Painting, Philbrick secretly purported to pledge the Painting as collateral on a multimillion-dollar art-backed loan (the "Loan") from Athena. (*See id.* at ¶ 6.) As part of this fraudulent transaction, and at Athena's insistence, Philbrick purported to transfer title to the Painting to a Jersey entity, 18 Boxwood Green Limited ("Boxwood"), a shell company that he created and controlled for purposes of borrowing money. (*See id.* at ¶ 7; Pesko Decl. at ¶ 9.) The criminal Complaint against Philbrick alleges that Athena provided "encouragement" to Philbrick to assume control over the "Jersey-based corporate vehicle" to effectuate the transfer of SIL's Painting. (*See* Grossman Decl. at ¶ 8.) And as a result of Athena's encouragement and insistence, Philbrick became the "sole beneficial shareholder" of that entity. (*See id.*) For his role in masterminding this, and other frauds, Philbrick has been charged with wire fraud and aggravated identity theft.

(*See id*. at ¶ 9.)   He is now in federal custody, having been denied bail as he awaits trial.  (*See id.* at ¶ 10.)

Rather than perform even basic due diligence prior to originating the Loan, Athena merely requested that Philbrick fill out by hand two one-page "Financial disclosure document[s]" for himself and for IPL, without undertaking any third-party verification.  (*See* Pesko Decl. at ¶¶ 10-11.)  Philbrick has admitted that Athena did virtually nothing to verify his source of funds and net worth, commenting that "You'll die" when you see Athena's bare-bones financial-disclosure requests.  (*See id.* at ¶ 12.)  In those financial-disclosure documents, Philbrick handwrote that he personally had "~1.2 m USD" in "Gross Annual Income," "~35.0m USD (ART)" in "Business Investments," and "~4.0m USD" in "Other Contractual Obligations."  (*See id*. at ¶ 11.)  And Philbrick wrote that IPL had "GBP 25.2m" in "Art Inventory," "GBP 4.7m (client share)" in "Secured Debt," and "GBP 4.4m" in "inter-co." obligations.  (*See id*.)  Philbrick provided no other information, and Athena, for its part, did not ask for anything further to corroborate these bare claims.

**The English High Court Issues Multiple Injunctions**
**Enjoining Athena From Selling or Transferring the Painting.**

On October 18, 2019, after Philbrick confessed his fraud, SIL notified Athena that it owned the Painting outright, and demanded that Athena "not take any steps to purport to sell, transfer, pledge, mortgage, dissipate or in any way deal with the [Painting] without giving [SIL] fourteen days' notice in writing[.]"  (*See id*. at ¶ 13.)  But Athena rejected this request, and instead—without notice to SIL—instructed the head of the museum where the Painting was being exhibited to remove the Painting before the exhibition's scheduled end date and secretly deliver it to Athena's New York art-storage facility.  (*See id*. at ¶ 14.)

After Athena refused SIL's request, SIL promptly commenced a suit against Athena,

Philbrick, IPL, and Boxwood in London, England, seeking a declaration of its legal and beneficial title, and the return of the Painting. (*See id*. at ¶ 15.) To maintain the *status quo*, SIL sought a preliminary injunction from the English High Court enjoining Athena and other Defendants from selling, transferring, or otherwise disposing of the Painting during the pendency of the dispute. (*See id*. at ¶ 16.) On November 4, 2019, the English High Court issued an injunction against Athena and the other defendants. (*See id*. at ¶ 17.)

On November 14, 2019, the English High Court continued the preliminary injunction and granted SIL's request to compel the immediate disclosure of the Painting's whereabouts, which Athena refused to do for six weeks before finally complying. (*See id*. at ¶ 18.) At a March 11, 2020, hearing, the English Court observed that Athena does "not give the impression of a party which is trying to be cooperative and to get to the bottom of the matter and sort matters out in a reasonably commercial way." (*See id*. at ¶ 19.) That same day, the English Court issued an Order for Inspection of Relevant Property, requiring Athena to send a letter to its storage facility, ARCIS, "instructing ARCIS to permit access" to SIL's agent "to inspect the [P]ainting." (*See id*. at ¶ 20.) Athena finally sent a letter to ARCIS stating that "[w]e hereby provide you with *irrevocable instructions* to permit Ms. Guilana Moreto of Contemporary Conservation Limited to attend your premises for the purposes of viewing and preparing a condition report of Painting for Satfinance Investment Limited." (*See id*. at ¶ 21.) Despite this "irrevocable" permission, Athena later refused to allow SIL's agent to access the storage facility. (*See id*. at ¶ 22.)

Eventually, on June 2, 2020, the English Court found that it lacked jurisdiction over Athena, and granted Athena's motion to dismiss it from the English action. (*See id*. at ¶ 23.) Athena eventually agreed on consent to continue the injunction through the pendency of the appeal. (*See id*. at ¶ 24.) On December 21, 2020, the jurisdictional ruling was affirmed, and the English case now continues against Philbrick, IPL, and Boxwood. (*See id*. at ¶ 25.)

**Athena Commences this *In Rem* Action to Quiet Title.**

On the same day that Athena was dismissed from the English proceedings, Athena commenced this action in New York State court by filing a Summons with Notice. (*See* Grossman Decl. at ¶ 11.) Athena recognized the competing ownership claims to the Painting, listing various "Interested Persons," including SIL. (*See id.*)

On June 17, 2020, Athena filed an Order to Show Cause (which was never signed) seeking to "immediately sell" the Painting. (*See id.* at ¶ 12.) The following day, the action was removed to this Court. (*See* Dkt. No. 1.) Athena then renewed its application in this Court for an order "[p]ermitting the immediate sale of" SIL's stolen Painting. Athena did not cite a single federal rule or statute under which the motion was brought, it did not file a memorandum of law, and it offered no admissible evidence, only an attorney affirmation. (*See* Dkt. Nos. 19-24, 33.) Athena withdrew its application after SIL filed opposition papers explaining that the relief sought was procedurally and substantively frivolous. (Dkt. Nos. 35, 36.)

On September 25, 2020, SIL inquired whether Athena would "agree to physically keep the [Painting] in its present location during the pendency of the case," but Athena refused, necessitating this motion for injunctive relief. (*See* Grossman Decl. at ¶ 13.)

**Athena's Parent Company Tells Investors It**
**Cannot Sell the Painting Until this Lawsuit Is Resolved.**

On September 9, 2020, investors in YieldStreet, Inc. ("YieldStreet"), Athena's parent company, filed a class-action complaint accusing Athena of inadequate loan vetting and poor due diligence, and alleging that YieldStreet had misled its investors concerning the status of various funds, including the art-related funds claiming an interest in the Painting. (*See id.* at ¶ 14.) YieldStreet submitted a February 12, 2021, declaration in that case stating that Athena "has filed applications in the Southern District of New York and New York Supreme Court to sell

collateral" as part of its "recovery efforts." (*See id*. at ¶ 15.)  YieldStreet concealed in its filings

that it had withdrawn that application in this case.  Several weeks prior, YieldStreet sent a letter

to its investors informing them that "Athena cannot practically move forward to sell any

artworks until third-party claims are legally resolved." (*See* Pesko Decl. at ¶ 26.)

**LEGAL ARGUMENT**

In cases like this, involving unique art, parties typically agree to an injunction on consent

to maintain the *status quo* during the pendency of competing title claims.  By commencing this

action to quiet title, Athena has admitted that there are competing claims to the Painting that

must be resolved before it can foreclose on its alleged security interest.  Inexplicably, though,

Athena has refused to agree to such a standstill, necessitating this application for a preliminary

injunction.   A preliminary injunction is warranted here because SIL has established

"(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently

serious questions going to the merits of its claims to make them fair ground for litigation, plus a

balance of the hardships tipping decidedly in favor of the moving party." *Robins v. Zwirner*, 713

F. Supp. 2d 367, 374 (S.D.N.Y. 2010).

## I.      SIL Will Be Irreparably Harmed Absent an Injunction.

SIL will be irreparably harmed if Athena is not restricted from selling, transferring, or

otherwise disposing of the Painting because such a transfer or sale would render any final

judgment in this case ineffectual.  New York courts have consistently found that where, as here,

the case involves a unique work of art subject to multiple ownership claims and under threat of

potential sale, the movant will "suffer irreparable injury without the grant of an injunction

pending the ultimate determination over ownership." *Kozar v. Christie's, Inc.*, 2011 WL

1886585, at *9 (N.Y. Sup. Ct. Westchester Co. May 18, 2011).   This is because monetary

damages cannot sufficiently compensate for the loss of an irreplaceable chattel, such as the

8

Painting.  *See Robins v. Zwirner*, 713 F. Supp. 2d 367, 375 (S.D.N.Y. 2010) (finding potential sale of painting would irreparably injure Plaintiff because money damages would be inadequate compensation for loss of artwork).

In *Kozar*, for example, the plaintiffs claimed to own a painting that had been consigned to Christie's.  *Kozar*, 2011 WL 1886585 at \*1.  The plaintiffs sought an injunction to prevent Christie's or the consignors of the work from "transferring, selling, pledging, assigning or removing from . . . [Christie's] place of business, selling at auction or otherwise disposing of the painting in [Christie's] possession."  *Id.*  The court granted the injunction, holding that where it would be impossible to "create an original painting" to replace the artwork at issue in the case, and if the work were sold, then plaintiffs "may never locate this painting again," constituting irreparable injury.  *Id.* at \*9.

And in *Robins*, the plaintiff sought an injunction preventing the sale of paintings to third parties after the seller reneged on the sale.  *Robins*, 713 F. Supp. 2d at 370.  In finding that the plaintiff would sustain irreparable harm in the absence of an injunction, the court held that "[o]riginal works of art are within the small category of intrinsically unique goods for which a specific performance remedy is appropriate . . . [thus] a damages remedy would be inadequate to make [plaintiff] whole."  *Id.* at 374-75.  "If one of the paintings is sold, Robins will have no recourse to obtain a substitute," and, therefore, the court held that "Robins has shown irreparable harm."  *Id.* at 375.

And the list goes on.  *See, e.g.*, *Gerald Modell Inc. v. Morgenthau*, 764 N.Y.S.2d 779, 786 (Sup. Ct. N.Y. Co. May 21, 2003) (finding irreparable harm where jewelry could be transferred or sold and final judgment would be rendered ineffectual); *Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 424 (S.D.N.Y. 2002) (holding that paintings are unique because they have "historical and artistic value that makes them relatively rare, impossible to replace through

manufacturing, and attractive to collectors and dealers"); *Shagalov v. Edelman*, 161 A.D. 3d 455, 455, 76 N.Y.S.3d 33 (1st Dep't 2018) ("Given the unique nature of the art works at issue, and regardless of their art dealer status, plaintiffs established that they would be irreparably harmed absent the requested preliminary injunction."); CPLR § 7109(a) ("[W]here the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that the chattel shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the court.").

Likewise, here, SIL will suffer irreparable harm if the Painting is transferred or sold by Athena prior to a final adjudication of SIL's title claims.  SIL holds full title to a unique and irreplaceable Painting, for which monetary damages would be inadequate, but stands to lose the ability to recover the artwork under Athena's threats of an imminent—and likely commercially unreasonable—sale before SIL's rights can be fairly adjudicated.  If the Painting were transferred out of Athena's possession, SIL may be unable to locate the Painting and will not have a path to recovery in this lawsuit.  Because the transfer or sale of the Painting by Athena would "render the final judgment ineffectual," SIL has established irreparable harm.  *Republic of Lebanon v. Sotheby's*, 167 A.D.2d 142, 145, 561 N.Y.S.2d 566 (1st Dep't 1990) (affirming issuance of injunctive relief to prevent transfer of ownership of a collection of antiques); *Naber v. Steinitz*, No. 21918/91, 1991 WL 11764578 (Sup. Ct. N.Y. Co. Dec. 23, 1991) ("[I]f defendants are permitted to sell these paintings without plaintiff's consent, it is clear that plaintiff will be irreparably harmed.").

## II.     SIL Is Likely To Succeed on its Claims Against Athena.

SIL has demonstrated that it acquired "full title" to the Painting and that it never sold, transferred, or otherwise disposed of any part of its ownership interest in the Painting.  SIL therefore is likely to succeed on the merits of its claim for the Painting.  At the very least, there

are "sufficiently serious questions going to the merits to make them a fair ground for litigation," which is enough for the injunction where Athena cannot demonstrate any "hardship" caused by a temporary injunction. *See Pearson Educ., Inc. v. Labos*, No. 19 CIV. 487 (CM), 2019 WL 1949820, at *4 (S.D.N.Y. Apr. 23, 2019).

SIL entered into the Agreement with IPL to purchase the Painting for $18.4 million, and the Agreement expressly provided that only SIL would hold full title to the work. (*See* Pesko Decl. at ¶¶ 3-4.) And the Invoice expressly incorporates the Agreement by reference, confirming that "[f]ull title [will] be transferred from Inigo Philbrick Limited to Satfinance upon receipt of the above balance." (*See id*. at ¶ 7.) Since acquiring full title, SIL has never sold, transferred, or otherwise disposed of any part of its ownership interest in the Painting. (*See id*. at ¶ 8.)

Athena's competing claim that it has full title to the work by virtue of a foreclosed security interest does not have any support in fact or in law. When SIL and IPL entered into the Agreement, IPL was granted only a contractual right to a percentage of any sale proceeds, agreeing that "[a]ll profits above the purchase price of $18,400,000 USD will be shared equally between the two parties[,]" reflecting the parties' supposed coequal contributions to the purported purchase price. (*See id*. at ¶ 6.) As is now evident, however, IPL did not even contribute 50% of the purchase price to acquire the Painting; indeed, IPL at best put forth a mere $300,000 of the $12.5 million total purchase price of the Painting. (*See* Grossman Decl. at ¶ 4.)

Athena's claims fail for the additional reason that it purported to acquire a security interest in the Painting from Boxwood, and where that entity is controlled by the thief, there can be no question that Boxwood could not possibly qualify as a "good faith purchaser" or a "buyer in the ordinary course." That is because New York law recognizes a "general rule" that "knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually

11

communicated to it." *Elbit Sys., Ltd. v. Credit Suisse Grp*., 917 F. Supp. 2d 217, 229 (S.D.N.Y. 2013).  Where Philbrick perpetrated the fraudulent scheme, his knowledge of the fraud would necessarily be imputed to Boxwood, disqualifying it as a good-faith purchaser.  Boxwood could not acquire any rights or title from IPL in violation of SIL's rights.

And it follows that where Boxwood was incapable of acquiring title or for that matter any interest in the Painting, it could not transfer a valid security interest relating to the Loan.  That is because a security interest is enforceable only if the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.  *See* U.C.C. § 9-203(b)(2).  And where Boxwood did not have rights in the collateral, nor the power to transfer rights in the collateral, under no circumstances could Athena have acquired an interest in the Painting in connection with a Loan that even Athena admits Philbrick fraudulently induced.

Rendering even more untenable Athena's claims, its hands are unclean where its diligence in originating the loan was shoddy and fell far short of the higher standards it should have undertaken as a professional lender.  Responsible lenders who deal in art-backed loans and other loans collateralized by high-value assets will closely scrutinize the ownership of the collateral by examining bank records, source of funds, balance sheets, accounts payable and receivable, and supporting documentation to verify the ownership of artwork.  Particularly where collateral is in the hands of an art dealer who, by virtue of being a dealer, is consigned inventory by collectors and in that role possesses art belonging to others, a professional lender should know that art dealers act as undisclosed agents for the true owners when buying and selling art, and do not themselves have an interest in the property.

But rather than perform even basic due diligence or engage in any "know your customer" protocols prior to originating the Loan, Athena merely requested that Philbrick fill out by hand two one-page "Financial disclosure document[s]" for himself and for IPL, without undertaking

any third-party verification.  Indeed, Athena does not dispute that it failed to take the basic step of reviewing IPL's bank statements to verify Philbrick's claim that it provided all the funds to purchase the Painting on its own behalf.  Athena should have known that IPL, and therefore Boxwood, did not own the Painting it was purporting to pledge as collateral.  Had Athena made these basic inquiries, it would have discovered that SIL, not IPL, provided virtually the entire purchase price for the Painting and that SIL, not IPL, was the title holder.

III.    **An Injunction Will Not Impose Any Hardships.**

Athena will suffer no hardship if this Court enters the injunction.  As evidenced by Athena's motion at the outset of this case seeking Court approval of an "immediate sale" of the Painting, Athena's ultimate goal is to recover money, not the Painting.  Athena's only alleged hardship would be a delay in their ability to sell the Painting.  But that is not sufficient to defeat an injunction.  *See Kozar*, 2011 WL 1886585, at *9 (finding that simply being "delayed in their ability to sell the painting" does not tip the balance of equities in favor of the non-movant where "denial of injunctive relief would be extremely prejudicial").

Where Athena cannot seriously dispute that the market for Basquiat's works is robust, any delay in selling the Painting could not conceivably cause any undue hardship.  *See id.* (holding that where non-movant has failed to establish "there will no longer be a market for this painting should the sale be delayed," the balance of equities tip in favor of granting injunctive relief).  Indeed, where a cloud over the Painting's title will not be lifted until the claims are resolved, any potential buyer would have equally dubious intentions in purchasing the work as Athena would have in selling it at this time.  *See United States v. Dally*, 165 F. Supp. 194, 197 (S.D.N.Y. 1958) (granting preliminary injunction preventing sale of government property in a dispute over who owned taxable interest in said property, where "[a]bsent this restraint a cloud would be created on the [] title to this property").  As a result, if Athena were to sell the

13

Painting, any purchase price necessarily would be well below the fair-market value, meaning that an injunction enjoining Athena's premature sale of the Painting actually would prevent—not cause—any monetary harm to its value and saleability.

Especially where Athena has recently acknowledged to its investors that it cannot sell any of the works pledged as collateral by the various Philbrick entities until all third-party claims are resolved (*see* Pesko Decl. at ¶ 26), Athena cannot seriously claim it would suffer any hardship if it were restrained from selling the Painting now.

## IV.   SIL Should Not Be Required to Post a Bond.

"District courts in the Second Circuit are vested with wide discretion in determining the amount of the bond that the moving party must post." *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, No. 08 CIV. 02152, 2008 WL 759353, at *9 (S.D.N.Y. Mar. 20, 2008). Where, as here, "the non-movant has not shown a likelihood of harm, the district court may properly set no bond." *Id.*; *see also Goat Fashion Ltd. v. 1661, Inc.*, No. 19 CIV. 11045 (PAE), 2020 WL 5758917, at *16 n.6 (S.D.N.Y. Sept. 28, 2020) (finding where "the Court is not convinced that a preliminary injunction will pose consequential cognizable harm to [non-movant], no such bond is required"); *Gov't Employees Ins. Co. v. Moshe*, No. 20-cv-1098 (FB)(RER), 2020 WL 3503176, at *4 (E.D.N.Y. June 29, 2020) (holding that where movant "undoubtedly has the ability to pay if defendants prevail . . . defendants will suffer no harm from the injunction and the bond requirement is waived").

Where Athena itself commenced these proceedings to clear up the competing title claims to the Painting, it cannot claim hardship caused by an injunction that prevents it from selling the Painting pending a final adjudication.  SIL's case is strong, there is no proof that it is undercapitalized, and Athena cannot demonstrate that any delay in selling the Painting could conceivably cause damage to Athena or the Painting—indeed, the injunction will *enhance* the

14

value of the Painting.  The Basquiat market remains robust, and given the publicity surrounding the competing title claims,[1] any price Athena could fetch at this time necessarily would be well below the fair-market value.  Athena has even acknowledged that it cannot sell the Painting until all third-party claims are resolved.  (*See* Pesko Decl. at ¶ 26.)  As this Court held under similar circumstances, at best any bond should be nominal.  *See Lagemann v. Spence*, No. 1:18-CV-12218-GBD, 2019 WL 4014846, at *2 (S.D.N.Y. Jan. 24, 2019) (Daniels, J.) (requiring a nominal bond of only 0.1% of the property's value based on the "apparent strength of Plaintiffs' case").

## CONCLUSION

SIL has demonstrated that it will be irreparably harmed in the absence of an injunction; it is likely to succeed on the merits of its claims; and an injunction will not create any hardships. Where Athena has already acknowledged that it cannot proceed with a sale until these claims are resolved, a Court Order should not be necessary.  But in light of Athena's bad-faith refusal to consent to this relief, apparently one is necessary here.  The injunction should be granted.

Dated:   New York, New York
         February 17, 2021

                                            GROSSMAN LLP

                              By: _____
                                    Judd B. Grossman
                                    Lindsay E. Hogan
                                    Sarah E. Schuster
                                    745 Fifth Avenue, 5th Floor
                                    New York, New York 10151
                                    Telephone: (646) 770-7445
                                    Facsimile: (646) 417-7997

---

[1] *See* https://news.artnet.com/art-world/inigo-philbrick-scandal-basquiat-painting-1900317 (last visited Feb. 16, 2021).

-and-

**HUGHES HUBBARD & REED LLP**
Derek J.T. Adler, Esq.
One Battery Park Plaza, 12th Floor
New York, New York  10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for Satfinance Investment Limited*