EXHIBIT "B"

AGREEMENT OF SALE

THIS AGREEMENT OF SALE ("Agreement") is made and entered into this 04 day of August 2016 by and between SKH Management Corp. ("Seller"), having an office at 813 Lititz Pike, Lititz, PA 17543, and Inigo Philbrick Limited ("Buyer"), having an address at 22 Davies Street, London W1 UK.

WITNESSETH:

WHEREAS, Seller is the agent for an undisclosed owner (the "Owner") of and has the authority to sell on behalf of the Owner the work of art more fully described on Exhibit A attached hereto and incorporated herein by this reference (the "Work");

WHEREAS, Buyer is the agent for an undisclosed purchaser (the "Purchaser") and has the authority to buy on behalf of the Purchaser the Work;

WHEREAS, Seller has agreed to sell the Work to Buyer, and Buyer has agreed to buy the Work from Seller, on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the parties agree as follows:

1. SALE

Seller agrees to sell the Work to Buyer, and Buyer agrees to buy the Work from Seller, subject to the terms and conditions set forth in this Agreement.

2. PURCHASE PRICE AND MANNER OF PAYMENT

A. The purchase price of the Work is Eighteen Million Four Hundred Thousand U.S. Dollars ($18,400,000.00) (the "Purchase Price"). The Purchase Price shall be paid by Buyer to Seller by wire transfer as follows:

Eighteen Million Four Hundred Thousand Dollars ($18,400,000.00) shall be paid by Buyer to the order of Davidoff Hutcher & Citron LLP (the "Escrow Agent") on or before 15 August by wire transfer as described below.

B. The wire transfer referred to in Paragraph 2A. above shall be made to the Escrow Agent's bank account as follows:

Bank Name: Capital One Bank
Bank Address: 710 Route 46 East Fairfield, NJ 07004
Bank ABA/Routing No.: 021407912
Bank Account Number: 7047522050
SWIFT Code: HIBKUS44
Account Name: Davidoff Hutcher Client Act

3. SELLER'S REPRESENTATIONS AND WARRANTIES

A. To induce Buyer to enter into this Agreement, and acknowledging that Buyer is relying on each and all of the following representations and warranties, Seller, on behalf of itself and Owner, represents and warrants to Buyer that:

i. The authenticity of authorship of the Work is that the Work was created by Jean-Michel Basquiat in 1982 and the Work is the same Work as described on the attached Exhibit A.

ii. Seller has the authority to execute and deliver this Agreement and has full right to sell and transfer title to the Work to Buyer.

iii. Seller without any further action, consent or authority of any other party, and without violation of any party's rights or claims, has full right, legal authority and capacity to enter into this Agreement, to make the covenants, representations and warranties contained in this Agreement, to execute and deliver the bill of sale in the form annexed as Exhibit B to this Agreement (the "Bill of Sale"), to sell and transfer good, valid and marketable title to the Work to Buyer, and to complete the transaction contemplated by this Agreement.

iv. On the Closing Date, subject only to Buyer's payment of the Purchase Price and Seller's receipt of the Purchase Price in accordance with this Agreement, Seller will transfer to Buyer good, valid and marketable title and exclusive and unrestricted right to possession of the Work free and clear of any and all rights or interests of others, or any claims, liens, security interests, restrictions, conditions, options or other encumbrances of any kind held or claimed by any person (collectively, "Claims"). Seller has no knowledge of any Claims threatened or pending, nor any knowledge of any facts or circumstances likely to give rise to any Claims.

v. Seller is not aware of any challenges or disputes (past, pending or threatened) relating to the attribution, authenticity, description or provenance of the Work as set forth in Exhibit A attached hereto. Seller has provided Buyer with all relevant information in Seller's knowledge concerning the attribution, authenticity, description, condition and provenance of the Work.

vi. Seller has complied with all export and import laws and regulations pertaining to the Work and the Work was never confiscated by any foreign government.

vii. Other than as specifically represented and warranted in this Agreement, Buyer shall purchase the Work in "as is" physical condition, without any representations or warranties by or on behalf of Seller of any kind whatsoever, express or implied, including without limitation, representations or warranties as to value or condition.

B. Seller and Owner do hereby agree to indemnify, defend and hold Buyer free and harmless from any and all demands, claims, suits, judgments, obligations, damages, losses, or other liability, including all reasonable attorney or other professional fees and other reasonable costs, fees and expenses, suffered or incurred by, or asserted or alleged against Buyer arising by reason of, or in connection with, the breach or alleged breach of, or falsity or inaccuracy of any representation or warranty contained in this Agreement.

C. The benefits of the representations, warranties, covenants and indemnities contained in this Agreement shall survive completion of the transaction contemplated by this Agreement, including without limitation transfer of the Work to Buyer for a period of one (1) year following the date of Closing. It shall be a condition precedent to Buyer's obligations that the representations and warranties contained in this Agreement are true and correct on and as of the Closing Date and transfer of the Work to Buyer.

4. INSPECTION

Buyer has inspected the Work and accepts the Work and agrees to purchase the Work in its "As Is" condition, being the same condition as stated on the Condition Report dated July 25, 2016 a copy of which is attached hereto.

5. TITLE AND DELIVERY

A. The Closing Date is the date the Buyer pays the Purchase Price to the Seller and Seller conveys title to the Work to Buyer in accordance with this Agreement. The Closing Date shall be no later than 22 August, 2016 This Agreement shall be null and void after 1 September, 2016.

B. On the Closing Date, upon receipt of the Purchase Price in escrow, Seller's attorney shall deliver to Buyer or Buyer's counsel the signed Bill of Sale for the Work showing Buyer as the transferee and, if any, any copies of provenance documents and any original authenticity documents in the possession of Seller for the Work.

C. The Work is physically located at Cirkers New York (Fine Art Warehouse) (the "Location"). On the Closing Date, after Escrow Agent has paid the Purchase Price to Seller, Seller shall release the Work at the Location for shipment by common carrier to the Buyer.

6. EXPENSES, INSURANCE AND SALES TAX

A. Buyer shall be responsible for and shall pay all costs, expenses and delivery charges for insuring, packing, shipping, and delivering the Work to the Buyer. Buyer will insure the Work once the Work is released at the Location to the common carrier for delivery to the Buyer.

B. Buyer is an agent for the Purchaser. Buyer or Purchaser shall be responsible for any VAT or import duties or charges with respect to this transaction, the Work to be shipped out of New York State by common carrier.

7. CONFIDENTIALITY

During the term of this Agreement and after the closing of title, neither Buyer nor Seller will disclose the Purchase Price, the terms of this Agreement, or the identity of the parties to any third party without the other's written consent, except to either party's legal, art, insurance or accounting advisors, or as may be required by law. The terms of this Paragraph shall survive the closing of title or termination of this Agreement for any reason including termination prior to closing.

8. COMMISSION

Buyer shall not be responsible for and shall not pay any fees due any person acting on behalf of Seller as a result of the transaction contemplated by this Agreement. Seller shall not be responsible for and shall not pay any fees due any person acting on behalf of Buyer as a result of the transaction contemplated by this Agreement.

9. ESCROW TERMS

A. The Purchase Price shall be held by the Escrow Agent in its IOLA account, and upon the release of the Purchase Price as herein provided, without any interest thereon. The Purchase Price shall be paid over by the Escrow Agent only as follows:

i. The Escrow Agent shall pay the Purchase Price as provided in Paragraph 5.C. hereof.

ii. Pursuant to demand by Seller in the event of default by Buyer in performing Buyer's obligations hereunder or pursuant to demand by Buyer in the event of default by Seller in performing Seller's obligations hereunder;

iii. Pursuant to written instructions signed by both Seller and Buyer; or

iv. Pursuant to final, unappealable court order.

B. If either party claims entitlement to the Purchase Price, such party shall notify the Escrow Agent of such claim and the Escrow Agent shall, within five (5) days following receipt of such notification, notify the other party of such claim (enclosing the claimant's notice), sending a copy of such notification to the other party. If the other party does not contest such claim by written notice to the Escrow Agent within seven (7) days after the Escrow Agent shall have given said party notice of the claim, the Escrow Agent shall deliver the Purchase Price to the claiming party. If the other party contests such claim within said time period, the Escrow Agent shall retain the Purchase Price and not deliver same except upon final unappealable court order or upon written instructions of the parties, but may discharge its duties hereunder in the event of such dispute by depositing same with the clerk of a court of competent jurisdiction and notifying the parties of said deposit. Any notice to be given to the Escrow Agent pursuant to the provisions of this Paragraph shall be addressed to Davidoff Hutcher & Citron LLP, 605 Third Ave., 34th Floor, New York, NY 10158, Attention: Malcolm S. Taub.

C. Seller and Buyer agree that the duties of the Escrow Agent hereunder are purely ministerial in nature and that the Escrow Agent shall incur no liability hereunder or otherwise (except for willful misconduct or gross negligence) for any action taken by it hereunder or for any failure or refusal to act pursuant to any advice, notice, direction, or instructions which it may receive from Seller or Buyer or for any other matter. The Escrow Agent shall have no responsibility to determine the authenticity or validity of any notice, direction, instructions, instruments, documents or other item delivered to it, and it shall be fully protected in acting in accordance with any written notice, direction or instructions given to it under this contract and believed by it to be authentic. Unless the Escrow Agent shall have been guilty of willful misconduct or gross negligence, Seller and Buyer, jointly and severally, agree to indemnify and hold harmless the Escrow Agent from and against any liability including reasonable attorney's fees, and shall promptly pay or reimburse court costs incurred by it in connection with its performance hereunder.

D. The Escrow Agent or any member of its firm shall be permitted to act as counsel for Buyer in any dispute or question as to the disbursement of the Purchase Price whether or not the Escrow Agent is in possession of the Purchase Price.

E. Upon payment of Purchase Price pursuant to Paragraph 9A or 9B, the Escrow Agent shall be fully released from all liability and obligations with respect to the Purchase Price.

F. The Escrow Agent shall serve without compensation.

G. The signing of this Agreement by the Escrow Agent is only to evidence the Escrow Agent's acceptance of the terms and conditions of this Paragraph 9.

10. MISCELLANEOUS

A. This Agreement (including the Exhibits attached hereto) represents the entire understanding of the parties with respect to the subject matter hereof, supersedes any and all other and prior agreements between the parties with respect to the subject matter hereof and declares all such prior agreements

between the parties null and void. The terms of this Agreement may not be modified or amended, except in a writing signed by the party to be charged. This Agreement and all matters relating to it shall be governed by the laws of the State of New York without regard to conflicts of laws principles. This Agreement shall inure to the benefit of, and shall be binding upon, the successors, heirs, executors and administrators of the parties hereto. Any dispute arising hereunder shall be resolved in the courts of the County and State of New York, or the United States federal courts located in the State of New York, and the parties hereto consent to the personal jurisdiction of such courts; provided, however, that the parties hereto agree that they will make concerted efforts to settle any dispute between them in an amicable manner without the necessity of litigation. This Agreement shall not be interpreted for or against a party because such party or such party's legal counsel drafted such provision.

B. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto signed their hands and seal the day and year first-above written.

Seller: SKH Management Corp.

BY: *[signature]*

Name: Jeff Stauffer

Buyer: Inigo Philbrick Limited

BY: *[signature]*

Name: Inigo Philbrick

EXHIBIT A - THE WORK

Artist: Jean-Michel Basquiat
Title: Humidity
Date: 1982
Medium: Acrylic, Oilstick and Xerox collage on canvas
Size: 243.8 x 182.9 cm (96 x 72 ins)

PROVENANCE

Annina Nosei Gallery, New York
Marlborough Gallery, New York
Elaine and Werner Dannheisser, New York
Tony Shafrazi Gallery, New York
Private Collection, New York
Phillips, New York, Contemporary Art Evening Sale, 15 Nov 2012 (lot 10) Acquired from the above by the present owner

EXHIBITED

New York, Marlborough Gallery, The Pressure To Paint, Curated by Diego Cortez, June 4 - July 9, 1982
Austin, Archer M. Huntington Art Gallery, New American Painting: A Tribute to James and Mari Michener, January 12–March 5, 1984
New York, Tony Shafrazi Gallery, Jean-Michel Basquiat, April 25 – May 30, 1998
New York, Tony Shafrazi Gallery, Four Friends: Jean-Michel Basquiat, Keith Haring, Donald Baechler, Kenny Scharf, October 25, 2007 – February 29, 2008

LITERATURE

E. McCready, J.A. Michener, M. Michener, New American Painting: A Tribute to James and Mari Michener, Archer M. Huntington Art Gallery, College of Fine Arts, The University of Texas at Austin, 1984
R.D. Marshall and J.L. Prat, Jean-Michel Basquiat, Paris, Galerie Enrico Navarra, 1996, vol. ii, p. 86, no. 1 (illustrated)
T. Shafrazi, J. Deitch, R. D. Marshall, Jean-Michel Basquiat, New York, Tony Shafrazi Gallery, 1999, p. 137 (illustrated)

EXHIBIT B - BILL OF SALE

Dated: August 15, 2016

Sold By:

SKH Management Corp.
813 Lititz Pike
Lititz, PA 17543

Sold to:

Inigo Philbrick Limited
22 Davies Street
London W1K

Work sold:

Artist: Jean-Michel Basquiat
Title: Humidity
Date: 1982
Medium: Acrylic, Oilstick and Xerox collage on canvas
Size: 243.8 x 182.9 cm (96 x 72 ins)

Purchase price: $18,400,000.00 U.S (Eighteen Million Four Hundred Thousand Dollars)

Payable: As provided in the agreement

Seller, subject only to and effective upon his receipt of the above-referenced Purchase Price and in consideration thereof, hereby irrevocably and without condition or reservation of any kind sells, transfers and conveys to Buyer the above-described Work, good, valid and marketable title thereto, and all right to possession and all legal ownership thereof, free of all Claims, to have and to hold the Work unto Buyer, its successors and assigns, forever.

The Work is sold subject to each and all of the terms, conditions, representations and warranties contained in an Agreement of Sale dated 10 August 2016 between Seller and Buyer (the "Agreement"), and all such terms, conditions, representations and covenants of the parties thereunder are incorporated herein by this reference as if fully set forth herein in their entirety. All capitalized terms not defined in this Bill of Sale shall have the same meaning as set forth in the Agreement.

Seller agrees to execute and deliver such additional documents and to take such other further actions from time to time after the date hereof as Buyer may reasonably request, to assure and confirm this transaction.

If any provision of this Bill of Sale, or the application thereof to any person or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Bill of Sale and such term, provision, covenant or condition as applied to other persons or circumstances shall remain in full force and effect.

The terms and provisions of this Bill of Sale shall be binding upon Seller and his successors, assigns and legal representatives and shall inure to the benefit of Buyer and its successors, assigns and legal representatives.

The benefits of the representations, warranties and indemnities contained in the Agreement and this Bill of Sale shall survive completion of the transaction contemplated by the Agreement and this Bill of Sale, including without limitation the transfer of the Work to Buyer.

This Bill of Sale shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of New York, without regard to conflict of laws principles.

Seller: SKH Management Corp.

BY: *[signature: Jeff Stauffer]*

Name: Jeff Stauffer