```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #20cv4669
 ATHENA ART FINANCE CORP.,          :

                    Plaintiff,      :

   - against -                      :

 THAT CERTAIN ARTWORK BY            :
 JEAN-MICHEL BASQUIAT ENTITLED
 HUMIDITY, 1982, IN REM,            :
                                         New York, New York
                    Defendant.      : June 16, 2022

-----------------------------------:  TELEPHONE CONFERENCE


                    PROCEEDINGS BEFORE
                THE HONORABLE VALERIE FIGUEREDO,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:               GOODWIN PROCTER, LLP
                             BY:  CHRISTINE SAMA, ESQ.
                                  JONATHAN SHAPIRO, ESQ.
                                  JAMES GATTA, ESQ.
                             620 Eighth Avenue
                             New York, New York 10018-1405


For Intervenor-Plaintiff     GROSSMAN LLP
Satfinance Investment:       BY:  JUDD GROSSMAN, ESQ.
                             745 Fifth Avenue, 5th Floor
                             New York, New York 10151


For Intervenor-Plaintiff     CLARICK GUERON REISBAUM LLP
Delahunty Limited:           BY:  GREGORY CLARICK, ESQ.
                             220 Fifth Avenue
                             New York, New York 10001


Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street, #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

## INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1

```
 1                                                    3
 2              THE CLERK:  This is the matter of Athena Art
 3  Finance Corp. v. That Certain Artwork by Jean-Michel
 4  Basquiat Entitled Humidity, 1982, In Rem, docket number
 5  22cv4669.  The Honorable Valerie Figueredo presiding.
 6  Counsel, please note your appearance for the record,
 7  stating with plaintiff's counsel.
 8              MS. CHRISTINE SAMA:  Good afternoon, Your Honor,
 9  Christine Sama, Jonathan Shapiro, and Jim Gatta are on the
10  line from Goodwin Procter for Athena.
11              MR. JUDD GROSSMAN:  Good afternoon, Your Honor,
12  Judd Grossman from Grossman LLP on behalf of intervenor-
13  plaintiff Satfinance Investment Limited.
14              MR. GREGORY CLARICK:  Good afternoon, Your
15  Honor, this is Gregory Clarick from Clarick Gueron
16  Reisbaum on behalf of intervenor-plaintiff Delahunty
17  Limited.
18              THE COURT:   Good afternoon, everyone, this is
19  Judge Figueredo.  So I have your letters beginning with
20  the May 25 letter, the June 13 letter, and then various
21  June 14 letters.  I guess I'd like to get started if
22  Satfinance wants to give me an overview of where you
23  currently stand on the discovery issue that you had raised
24  in the May 25 letter.  I know there was some dispute about
25  whether some of those issues had already been resolved.
```

```
 1                                                          4

 2  So I'd just like to get a sense of what your position is

 3  in terms of the outstanding discovery disputes.

 4        MR. GROSSMAN:   Thank you, Your Honor, this is

 5  Judd Grossman on behalf of Satfinance.  I'll start by

 6  saying obviously discovery in the case is scheduled to

 7  have closed several weeks ago.  Our friends at Goodwin

 8  have now entered an appearance and are by all accounts

 9  making good faith efforts to get up to speed, including

10  collecting according to their estimates nearly 300,000

11  documents that hadn't previously been collected.

12        So I'm in kind of a difficult position to say

13  where things are because other than knowing things weren't

14  done that shouldn't have been done, I don't know what's

15  missing, I don't know why it's missing, I don't know

16  whether there was an appropriate search preservation

17  protocol in place.  I'm not sure why certain custodians,

18  some of whom are no longer with the company, didn't have

19  their records pulled.  So I'm in that difficult position

20  of not knowing an answer to your question which makes it

21  difficult to, in turn, identify exactly what remedies

22  we're entitled to.

23        I'll point out, this isn't the first time,

24  notwithstanding the opposition's letter, that we raised

25  the issues with the Court, and this is starting at docket
```

```
 1
 2   number 77 where over one year ago we wrote to the Court
 3   identifying Athena's, quote, "continuing discovery default
 4   and seeking an order compelling Athena's immediate
 5   compliance with our document requests."  Several days
 6   later, and this is at docket number 78, Athens's then
 7   counsel who recently withdrew wrote, "As of this morning,"
 8   and this was May 4, 2021, "we completed our document
 9   production.  Accordingly, counsel's request for a
10   conference is, we submit, moot."
11           Well, here we are a year later and Athena's new
12   counsel is making that very same argument that our request
13   is moot, and if we look at footnote 1 of their letter,
14   they now represent that, after having collected 275,000
15   documents and just starting their review, that somehow
16   they can say that they already produced the bulk of their
17   documents nearly a year ago.
18           So we're really in the dark here, and other than
19   that the baseline remedy that we've outlined in our most
20   recent letter, it's difficult to say at this point what
21   additional remedies are appropriate.  There are a host
22   that could be appropriate, but I don't want to get ahead
23   of ourselves until we understand why things weren't
24   collected, produced, reviewed, and why Athena was
25   representing to the Court a year ago that its production
```

```
 1                                                6
 2  had been complete.

 3           THE COURT:   Well, before anyone else

 4  interjects, I'm just kind of, I'm a bit confused as to why

 5  you're telling me discovery was supposed to close a few

 6  weeks ago, that we're still at this point where stuff

 7  hadn't been collected and searched for.  So if someone

 8  from Athena's counsel can speak to that.

 9           MS. SAMA:   Yes, Your Honor, this is Christine

10  Sama.  You know, Your Honor, we can't speak to all of the

11  details of what happened before we got involved in the

12  case, you know, it's been a week since we've been

13  retained, and in that time we've done a lot of work.  You

14  know, Mr. Grossman just referred to almost 300,000

15  documents have been collected.  That's obviously a very

16  broad swatch of documents.  We're being very inclusive in

17  terms of all the documents that we're reviewing.  And we

18  do feel confident that that set of documents is, you know,

19  the full set of documents that we're looking at.

20           And I think what's important to realize is that

21  we're looking at this, but there are dropped balls on both

22  sides here.  And I know in our June 13 letter we refer to

23  the documents that, you know, Athena is looking for as

24  well.  This isn't sort of a one-way street.  It seems that

25  there's been, for whatever reason, this lag here where
```

1
2    there are all sorts of open discovery issues that haven't
3    been pursued until very recently.
4           So we're doing our very best, Your Honor, in the
5    last week to resolve all those issues on Athena's end as
6    quickly as possible.  We think we've made very good
7    progress toward that end, and we've collected documents of
8    five custodians, and we've already started our review.
9    We're expecting to start producing documents next week.
10   So the question in our mind is when we're going to see the
11   same effort put forth by the other parties.
12          MR. GROSSMAN:   Your Honor --
13          (interposing)
14          THE COURT:   Sorry, just to be clear on what
15   Athena thinks is missing from the other sides' document
16   productions that would be.
17          MS. SAMA:   Your Honor, that would be the
18   categories of documents that are outlined in our June 13
19   letter.  So that would be the full set of text messages
20   and (indiscernible) messages.  And also there's various
21   substantive categories of documents.  I can just pull it
22   up.
23          THE COURT:   Documents concerning the U.K.
24   proceeding, communications with insurers, account ledgers,
25   okay.

```
 1                                                    8

 2              MS. SAMA:   That's correct, Your Honor.

 3              MR. GROSSMAN:   And this is Judd Grossman, Your

 4   Honor.  To be very clear, this very much is a one-way

 5   street.  It's a one-way street because all these

 6   categories of documents that Athena's new counsel is

 7   identifying were the subject of very detailed objections

 8   and responses that we served on August 30, 2021, all of

 9   these exact requests.  Numbers 12, numbers 19, number 32.

10   We either objected to producing certain categories

11   outright, for example, documents concerning the U.K.

12   proceeding, or we identified objections and with

13   specificity, as the Court's local rules required,

14   identified the categories of documents that we would

15   produce.  And all of those documents have been produced

16   with the exception of a handful of documents, not

17   categories of documents, but documents that were

18   identified at our client's deposition which is largely

19   complete which needed to be adjourned for scheduling

20   purposes and no other reason.  So we're literally talking,

21   I don't know, something like five to ten pages that are I

22   think ready to go out now.

23              But this is a classic case of misdirection

24   pointing the finger at us when we've complied with every

25   single discovery obligation and subject to those very
```

                                                                    9

1

2   detailed objections and responses produced all the

3   documents in our possession.

4        As we pointed out in our letter, it shouldn't be

5   surprising that in an art transaction like this, our

6   client, just like Delahunty's client, claims to have

7   purchased the painting, there aren't going to be that many

8   documents.  Notwithstanding, Athena served dozens and

9   dozens of requests which results in the hundreds or I

10  guess more than thousands of pages that we already have

11  produced.  But there isn't anything outstanding from our

12  end holding up discovery.

13       This is an effort by Athena to say, look, let's

14  all wipe our hands clean with this and let's start over.

15  Well, we're two years into the case.  Once we are finished

16  the depositions that had been slated for weeks ago but

17  then needed to be adjourned, some as a result of this

18  discovery dispute, others by the way without explanation.

19  So, for example, we raise this in our letter, we had

20  served a subpoena on Michael Weisz, the head of the parent

21  company Yieldstreet, Athena's counsel accepted service for

22  that subpoena, never served an objection, never served a

23  response, but never produced the witness.

24       And so this isn't a matter of discovery being

25  held up by anything on our end.  It's pretty egregious

```
 1                                                    10
 2  failures, quite frankly, the most egregious I've seen
 3  absent intentional spoliation, and that's what needs to be
 4  addressed here, Your Honor.
 5             THE COURT:   Can I just ask a follow-up
 6  question, Mr. Grossman?  You had indicated that the
 7  document requests that they indicated in their letter,
 8  those repeatedly made and your side responded and objected
 9  to them in August 30 of 2021.  And I'm assuming from prior
10  counsel for Athena there had been no follow-up or any type
11  of claim of deficiency at that point.
12             MR. GROSSMAN:   That's absolutely correct.
13             MS. SAMA:   That's not correct, Your Honor.  Our
14  understanding is that those objections were challenged
15  previously last year, and that that's one of the open
16  issues that we've been trying to resolve in addition to
17  these open issue that Athena's been working towards
18  resolving.  And obviously we take a different view.  We
19  don't think that the other party should be able to
20  withhold documents on the basis of these objections that
21  we've challenged.  We want to work with them on that.
22  They have, it seems, been unwilling to work with us on it
23  until this point, and, you know, then we're going to have
24  a motion on that if they're not going to work with us to
25  resolve it.
```

```
 1                                                   11
 2              THE COURT:   Let me just ask you, you say you
 3    challenged them, but when were they challenged?
 4              MS. SAMA:    It was a letter, I believe it was in
 5    June.  It was a letter in June of last year, Your Honor.
 6              MR. GROSSMAN:   Our responses were served in
 7    August, Your Honor, August 30.  So whatever letter in June
 8    the parties worked through those issues.  As I say, our
 9    client's deposition went forward.  It didn't go forward
10    under a reservation of rights because of documents
11    outstanding.  At that deposition a handful of pages were
12    identified that hadn't been produced, one of which, for
13    example, by the way, we had previously said in our
14    objections and responses we wouldn't produce, but we
15    agreed to reconsider that, and we're not producing that
16    document.  But this was never an issue that came to a
17    head, until now, until we're trying to point the finger
18    the other way.
19              MR. CLARICK:   Your Honor, I don't mean to
20    interrupt, but this is Gregory Clarick for Delahunty, and
21    I just want to make clear that Delahunty is in exactly the
22    same position as Satfinance insofar as having responded to
23    the document requests in May and in August I believe of
24    2021 with detailed responses and objections, making clear
25    what we would produce and what we were objecting to
```

                                                      12

1

2   produce.  And then we, in fact, did our document review

3   based on those objections, having not, you know, having no

4   open ongoing dispute with Athena with its prior counsel.

5   And we spent a lot of money pulling documents and

6   reviewing documents and make that production, and our

7   client was deposed a month ago, you know, seven, eight

8   months later.  And we never heard, you know, again, about

9   any problem with our responses and objections.

10          And we submit, just like (indiscernible)

11  submitting certainly, that it's far, far too late for

12  Athena to come back in with new counsel and try to reopen

13  discovery that's already occurred, including to reopen and

14  address objections that apparently new counsel has

15  concerns about that should've happened a year ago before

16  we did our production, before we did our document review

17  and production, and during the time when discovery,

18  document discovery was ongoing.

19          MS. SAMA:  Your Honor, if I may, there was a

20  letter in 2021 and also a letter last month that addressed

21  these issues.  We're looking at the same timetable as the

22  other parties in terms of the timeline and following up on

23  discovery issues.  We also sent a letter on these issues

24  last Friday.  We've never received a response.  We asked

25  for a response.  We still haven't received a response.

1

2  And we tried to discuss some of these issues as recently

3  as yesterday, and the call was cancelled.  So we're

4  looking at the same timetable, and these are certainly

5  issues that have been on the table.  They're not new

6  issues that are being manufactured now.

7          THE COURT:  Well, let me just ask you, if

8  they're not new issues, then presumably you'd have letters

9  dated after August 30, 2021 and something far less recent

10 than last week where you would've raised objections to

11 their objection.

12         MS. SAMA:  We do, Your Honor.

13         THE COURT:  Okay, I mean I think, I understand

14 their argument that these were objections made almost a

15 year ago at this point.  So I do tend to agree that if the

16 first time you're raising these objections is in May of

17 2022, that that would be problematic.

18         MS. SAMA:  Yeah, that's not the case, Your

19 Honor.  There was a letter last year, and we can get you

20 the exact date, but the first time these issues were

21 raised was not in May of 2022.

22         MR. GROSSMAN:  Your Honor, this is Judd

23 Grossman.  The issues were addressed, and that's why

24 Athena proceeded with every single deposition, three

25 depositions of my client, one I believe of Delahunty with

14

1
2   two more scheduled.  The May 24 letter that was just sent
3   that's being referenced was following our client's
4   deposition.  It's what I referenced before which said,
5   hey, can you please reconsider producing certain documents
6   that you previously objected to and didn't produce.  And
7   as I said, in one of those cases we are willing to
8   reconsider it.  But this was all not in response to our
9   August 31, 2021 objection; these were issues that came up
10   at the deposition which they proceeded with with no
11   objection.
12         MS. SAMA:  Your Honor, this is absolutely
13   incorrect.  There have been open issues on both sides
14   going back a year, longer than a year, close to 18 months
15   ago.  There's been no waiver.  That's just not correct.
16         THE COURT:  Well, I guess I – on that plane, I
17   would just hope to see these letters where these issues
18   were raised in a more timely fashion.  So I'm happy to put
19   this aside until those letters, until you find the letters
20   and we can discuss that separately.
21         I guess we still have though outstanding the
22   issues raised in the May 25 letter with regard to the
23   document collection.  And so I mean I – I understand that
24   you guys were just recently retained and are new counsel,
25   and I understand you're making an effort to collect and

1

2  search for the documents.  How much time do you need to

3  get the collection completed and the documents produced?

4       MS. SAMA:   Well, we're expecting to produce our

5  first documents next week, Your Honor, and we just started

6  producing the documents.  So we're going to need a little

7  bit of time to see how long it's going to take to get

8  through the entire set.  Obviously, it's a large set.  We

9  don't expect to produce 300,000 documents, but it's only

10 been a few days, so we're trying to sort that out.

11      MR. GROSSMAN:   Your Honor, this is Judd

12 Grossman on behalf of SIL.  In our May 25 letter, again,

13 we asked for several remedies, and, again, in our most

14 recent letter, which was June 14, based on our discussions

15 with new counsel, additional remedies that we believe at

16 this point we're entitled to, for example, that plaintiff

17 at its own expense de-dupe its next productions.  We heard

18 from them the other day that they're going through these

19 hundreds of thousands of documents and they'll produce

20 everything that's responsive whether or not they've

21 already produced it.  Well, that's a burden and a cost

22 that should not be shifted to us in any case but

23 especially where discovery has closed.

24           Again, we are not faulting new counsel at all.

25 I appreciate all of their effort.  But their client has a

16

1
2  very experienced in-house lawyer, a litigator with ten
3  years plus of experience, big firm law experience, and art
4  law, and we learned recently that she was (indiscernible)
5  or spearheaded the collection and production process.  If
6  we are going to be intelligently addressing their
7  responses and also revisiting any other issues, it's only
8  appropriate that we learn exactly what happens, what
9  didn't happen, and why.  And so to the extent there'll be
10  supplemental letters to the Court outlining what this is
11  being made on this next go-around, we respectfully submit
12  that it's essential that Athena provide that information
13  as well.

14          THE COURT:   So I take your point.  I'm inclined
15  to set, as you requested, a date certain for the
16  plaintiffs to finally complete their production.  I'm
17  still kind of – I'm somewhat surprised that it's gone this
18  far and the production is this far behind.  I understand
19  that they have new counsel, and, again, I'm not faulting
20  count at all, but I think it would be fair to get an
21  explanation from inhouse counsel for Athena for why these
22  documents weren't collected earlier.

23          MS. SAMA:   I'm surprised as well, Your Honor.
24  But we're very surprised that on both sides it had been a
25  year, year and a half, and there are all of these issues,

17

1
2  discovery issues that hadn't been resolved and that were

3  open and outstanding.

4          THE COURT:   Well, on both sides' question, I'm

5  still, you know, I'd like to just see the letters where

6  these issues were raised in the fall of 2021.

7          MS. SAMA:   No problem, Your Honor.

8          THE COURT:   So on a discovery schedule, do the

9  sides have some suggestion as to what dates they think

10 would be fair?

11         MS. SAMA:   We would ask for one month, Your

12 Honor.

13         MR. GROSSMAN:   This is Judd Grossman.   No

14 objection to the amount of time.   I understand it's a lot

15 of work to be done.   Of course, so without waiving any of

16 our objections and rights which we've already outlined.

17         THE COURT:   Okay, and then the request is also

18 to set the party deposition deadline two weeks after

19 plaintiffs' production deadline?

20         MR. GROSSMAN:   Well, Your Honor, this is Judd

21 Grossman.   It really depends on the volume of the

22 production.   If we're going to be getting tens of

23 thousands of new documents that should've been produced, I

24 submit that two weeks may not be enough for party

25 depositions.   We have other depositions, as I mentioned,

18

1
2  that were scheduled but cancelled by Athena without

3  explanation, those we would like to see be scheduled

4  immediately, and that includes the deposition of Michael

5  Weisz.

6       MS. SAMA:  Your Honor, we disagree with the

7  characterization of the deposition scheduling, but we're

8  happy to meet and confer to the extent that Mr. Grossman

9  doesn't know when he (indiscernible) the depositions now

10 and we can sort that out.

11      THE COURT:  Well, why don't we go ahead and set

12 like a final date by which – so it sound to me like the

13 parties think that one additional month is all that's

14 needed to review the documents and produce them, and then

15 I'd like to just set an outside date for the completion of

16 all depositions.

17      MS. SAMA:  Well, Your Honor, just to be clear

18 though, one month was the amount of time that we would be

19 able to fulfill the review that we're doing, but we don't

20 know how long it would take Mr. Grossman and his clients

21 to fulfill their outstanding obligation.

22      MR. GROSSMAN:  Yeah, that's more than enough

23 time because, in all fairness and with all due respect, a

24 handful of pages can be given to by next week.

25      MS. SAMA:  We don't believe though that it's a

 1

 2   handful of pages.  We understand that that's, you know,

 3   your position, Mr. Grossman and what you think is

 4   outstanding, but we think it's a lot more than that.  So

 5   we want to make sure that we have adequate time for that.

 6   And now so we want to meet and confer on this.

 7        THE COURT:   So how about we do this, I am – I'm

 8   inclined to say that you should take, you know, take an

 9   extra month, take two months to finish the outstanding

10   discovery issues, and when I say outstanding discovery

11   issues, I do think that unless there's some letters from

12   the fall of '21 raising these objections on those

13   documents, you know, the objections raised in May of 2022

14   would be untimely.

15        MS. SAMA:   We understand, Your Honor.  We'll

16   provide the letters.

17        THE COURT:   Okay, so I can set a two-month

18   deadline for the conclusion of all document discovery, and

19   then, again, I'd just like to give you a deadline by which

20   all depositions are to be finished so we can get this case

21   moving.  So if you should tell me how much time you think

22   you need, if you'd like to meet and confer and come back

23   with a proposal, that's fine too.

24        MR. GROSSMAN:   Thank you, and I that perhaps

25   makes sense once Athena lets us know what the total volume

20

1

2  of new documents will be.  I just for clarity's sake, with

3  these supplemental submissions and whatever letters

4  Athena's going to bring to the Court's attention that they

5  claim opens up new issues, we still would like, and if

6  necessary the opportunity to brief it, an order that as

7  far as de-duping goes that that is their obligation, it's

8  their burden, and it's their expense.

9        MS. SAMA:   Your Honor, we are happy to do de-

10  duplicate or not to duplicate in any different way.  I

11  just, I have to say that the first we're hearing about

12  this issue or objection about de-duplicating was in the

13  letter that we received on June 14.  We're happy to

14  discuss that with you, and it's not a problem.  We view

15  that as more of a technical issue.

16        MR. GROSSMAN:   Okay, well, just to be clear,

17  because I know it's not a problem to discuss, but if it's

18  an agreement that it'll be done, then we have nothing to

19  write to the Court about.

20        MS. SAMA:   Yeah, we should discuss the matter

21  what should be done.

22        THE COURT:   Okay, so it sounds like you all are

23  going to meet and confer, decide on the de-duping issue,

24  decide on a potential schedule for depositions, and if you

25  think two months is doable, because I don't want to have

```
 1                                                21
 2   to come back and reset the deadlines.  But if you think
 3   two months is all you need for the completion of the
 4   document production, then I can go ahead and issue an
 5   order setting that deadline.
 6          MS. SAMA:   Yes, for Athena, yes, Your Honor,
 7   but to be clear, we think that we can complete our review
 8   in two months.  We are not certain of the other parties
 9   can complete their review in that amount of time.  We
10   think probably not maybe.
11          MR. GROSSMAN:   You know what, Your Honor, the
12   one month was fine with us.  We don't need the two months.
13   But one month is fine, and it sounds like it's fine for
14   Athena as well.
15          MR. CLARICK:   And for Delahunty, Your Honor,
16   either one or two months is fine.  We have no objection,
17   and we're confident that we'll be able to complete
18   anything that's actually due within that timeframe.
19          THE COURT:   Okay, well, given --
20          MS. SAMA:   Your Honor, we just --
21          THE COURT:   Sorry, go ahead.
22          MS. SAMA:   Apologies, Your Honor.
23          THE COURT:   No, no, go ahead.
24          MS. SAMA:   We just don't want to be prejudiced
25   in resolving the issues that are of concern to us.
```

```
 1                                               22
 2              THE COURT:   No, I understand.  If you can come
 3    back and show that the objections you're raising now were
 4    objections that were timely raised, and that requires the
 5    other side to produce more documents and then they need
 6    more time, I understand that that might require an
 7    adjustment.  But I'd like to just set as firm a date as we
 8    can so that we can keep this moving.  So since all the
 9    parties seem to say that one month is enough for now
10    unless something else pops up, I'm going to go ahead and
11    issue an order setting the deadline for the document
12    production in one month, and then you will come back to me
13    with a proposed schedule for completing all of the
14    depositions.
15              MS. SAMA:   Thank you, Your Honor.
16              MR. GROSSMAN:   Your Honor, again, this is Judd
17    Grossman.  In the interest of moving things along, we'd
18    ask that the deposition of Michael Weisz be scheduled now.
19    That doesn't need to await the production of party
20    discovery.  It was a limited scope of information we
21    sought from Mr. Weisz.  We never got an objection, we
22    never got a response other than an agreement to accept
23    service on his behalf.  So we'd like that to be ordered to
24    move forward now while all of this other document
25    discovery is being collected and produced by Athena.
```

```
 1                                                        23

 2              THE COURT:   Yes, and I'm sorry, I didn't mean

 3   to suggest that depositions can't go forward during this

 4   time.  If you think there's a deposition you can take that

 5   doesn't require whatever production is coming, you should,

 6   of course, schedule it.  I just wanted to set an outside

 7   date by which all depositions had to be completed.  So if

 8   you think you can move forward with Mr. Weisz's

 9   deposition, I don't see why it should have to wait until

10   the completion of the production of the documents.

11              MR. GROSSMAN:   Thank you very much.

12              THE COURT:  If that's everything, then I think

13   we're adjourned.

14              MR. GROSSMAN:   Thank you, Your Honor.

15              THE COURT:   Does anybody have anything else?

16              MS. SAMA:   Thank you, Your Honor.

17              MR. CLARICK:   No, Your Honor, thank you.

18              MR. GROSSMAN:   Thank you so much.

19              (Whereupon the matter is adjourned.)

20

21

22

23

24

25
```

24

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Athena Art Finance

Corp. versus That Certain Artwork by Jean-Michel Basquiat

Entitled Humidity, Docket #22cv4669, was prepared using

PC-based transcription software and is a true and accurate

record of the proceedings.


Signature_____

                 Carole Ludwig

Date:  June 20, 2022