## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ATHENA ART FINANCE CORP.,

            *Plaintiff,*

          -against-

that

CERTAIN ARTWORK BY JEAN-MICHEL
BASQUIAT ENTITLED HUMIDITY, 1982, *in
Rem*,

            *Defendants,*

SATFINANCE INVESTMENT LIMITED and
DELAHUNTY LIMITED d/b/a DELAHUNTY
FINE ART,

            *Interested Parties.*

Case No. 20-cv-4669 (GBD) (VF)

Hon. George B. Daniels, USDJ

SATFINANCE INVESTMENT LIMITED
            *Intervenor-Plaintiff,*

          -against-

ATHENA ART FINANCE CORP. and
that CERTAIN ARTWORK BY JEAN-MICHEL
BASQUIAT ENTITLED HUMIDITY, 1982,
*In Rem*,

            *Intervenor-Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
## AND INTERVENOR-DEFENDANT ATHENA ART FINANCE CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT

GOODWIN PROCTER LLP
Christine V. Sama
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 813-8800
csama@goodwinlaw.com

Jonathan A. Shapiro
Three Embarcadero Center
28th Floor
San Francisco, California 94111
Tel: (415) 733-6000
jshapiro@goodwinlaw.com
(*pro hac vice*)

*Attorneys for Plaintiff Athena Art Finance Corp.*

Dated: July 20, 2023

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT BACKGROUND ................................................................................ 5

    I.      Athena Takes Humidity As Collateral Pursuant to the LSA and Perfects its First Priority Security Interest in April 2017. ....................................................... 5

    II.     Borrowers' Default and Court Judgment in Favor of Athena. .............................. 7

    III.    SIL Secret Partnership and Alleged Agreement with Philbrick Regarding *Humidity*. ............................................................................................................... 8

    IV.    Delahunty's Secret Partnership and Alleged Agreement with Philbrick Regarding *Humidity*. ......................................................................................... 10

ARGUMENT ........................................................................................................... 10

    I.      The Summary Judgment Standard. ..................................................................... 10

    II.     Athena has a Perfected Security Interest in *Humidity* Pursuant to U.C.C. Article 9, With Priority Over Sil's and Delahanty's Interests. ........................... 11

          A.     Athena Created a Valid and Enforceable Security Interest In the *Humidity*. ............................................................................................. 11

          B.     Athena Perfected Its Security Interest By Filing a U.C.C. Financing Statement and Taking Possession of *Humidity*. ...................... 12

          C.     Athena's Perfected Security *Interest* has Priority Over Any Claimed Interest of SIL and Delahunty. ................................................. 13

    III.    SIL AND DELAHUNTY ARE ESTOPPED FROM NOW DISPUTING ATHENA'S PERFECTED SECURITY INTEREST IN HUMIDITY .............. 15

CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*,
72 F. Supp. 2d 350 (S.D.N.Y. 1999)......................................................................................3

*Anthony v. GE Cap. Retail Bank*,
321 F. Supp. 3d 469 (S.D.N.Y. 2017)...................................................................................10

*Bank of Com. v. De Santis*,
451 N.Y.S.2d 974 (Civ. Ct. N.Y. City, Kings Cnty. 1982) ....................................................18

*Belgian Overseas Secs. Corp. v. Howell Kessler Co.*,
450 N.Y.S.2d 493 (N.Y. App. Div. 1982) .............................................................................18

*Christie's Inc. v. Davis*,
247 F. Supp. 2d 414 (S.D.N.Y. 2002)...................................................................................15

*Fundex Capital Corp v. Reichard*,
568 N.Y.S.2d 794 (N.Y. App. Div. 1991) .............................................................................12

*Matter of Honeedew Investing LLC v. JP Morgan Chase Bank, N.A.*,
186 N.Y.S.3d 191 (N.Y. App. Div. 2023) .............................................................................11

*KLS Diversified Master Fund, L.P. v. McDevitt*,
532 F. Supp. 3d 126 (S.D.N.Y. 2021), *aff'd*, No. 21-1263, 2022 WL 2759055
(2d Cir. July 13, 2022) ........................................................................................................15

*Logan & Kanawha Coal Co., Inc. v. Banque Francaise du Commerce Exterieur*,
No. 93 Civ. 4678 LBS, 1996 WL 551718 (S.D.N.Y. Sept. 26, 1996)....................................16

*Porter v. Wertz*,
416 N.Y.S.2d 254 (N.Y. App. Div. 1979) .............................................................................16

*Rand's Disc. Co. v. Universal C.I.T. Credit Corp.*,
198 N.Y.S. 2d 341 (N.Y. App. Div. 1960) ............................................................................17

*Wrobel v. Cnty. of Erie*,
692 F.3d 22 (2d Cir. 2012)...................................................................................................11

**Statutes**

N.Y. U.C.C. § 1-103 .............................................................................................................11

N.Y. U.C.C. § 9-203(a) ........................................................................................................11

N.Y. U.C.C. § 9-203(b) ..........................................................................................11, 13

N.Y. U.C.C. § 9-203(b)(2) .............................................................................................12

N.Y. U.C.C. § 9-307(c) ..................................................................................................13

N.Y. U.C.C. § 9-310 .......................................................................................................13

N.Y. U.C.C. § 9-313 .......................................................................................................13

N.Y. U.C.C. § 9-322(a)(1) ........................................................................................14, 15

N.Y. U.C.C. § 9-322(a)(2) ..............................................................................................13

N.Y. U.C.C. § 9-322(a)(3) ..............................................................................................13

**Other Authories**

ANDERSON U.C.C. § 9-203:200 PART II ..........................................................................16

CARLYE, *Athena Art Finance Starts Art-Lending With $280 Million Investment by the Carlyle Group* (Oct. 15, 2015), https://www.carlyle.com/media-room/news-release-archive/athena-art-finance-starts-art-lending-280-million-investment-led.......................................................................................................................5

Fed. R. Civ. P. 56 ................................................................................................ *passim*

## PRELIMINARY STATEMENT

Plaintiff Athena Art Finance Corporation ("Athena") is an asset-backed lender that extends loans secured by high-value fine art, pursuant to carefully-documented loan and security agreements in accordance with the Uniform Commercial Code ("U.C.C.") and longstanding secured lending and finance practices.  After it obtained a judgment against a borrower following borrower's payment default and other events of default,[1] Athena commenced this *in rem* action to quiet title to a painting that secured that debt, namely, "*Humidity*" by Jean-Michel Basquiat, (1982) (the "Basquiat" or "*Humidity*").  Athena now seeks summary judgment because there is no dispute of *material* fact that Athena properly secured, perfected, documented and disclosed its interest in *Humidity* under the U.C.C., and that it is therefore entitled to foreclose and sell that collateral just like any secured lender that follows the rules.

Specifically, Athena took possession of *Humidity* more than six years ago as collateral for a $13.5 million loan it made to Inigo Philbrick ("Philbrick") through his wholly-owned special purpose vehicle, 18 Boxwood Green Limited ("Boxwood"), a loan that also was guaranteed by Philbrick personally and Philbrick's wholly owned U.K. business, Inigo Philbrick Limited ("IPL") (Philbrick, and his entities IPL and Boxwood, together, the "Obligors").  Athena immediately perfected its first priority security interest in *Humidity* in April 2017.  Consistent with longstanding secured lending industry practice, Athena also placed the public on notice of its interest by filing a U.C.C.-1 Financing Statement in the District of Columbia (the appropriate place to file for a foreign debtor).  It also registered its interest with The Art Loss Register as an additional safeguard, to put the world on notice of its interest in *Humidity*.  (Shapiro Decl., Ex. D,

---

[1] (Lindstrom Decl., Ex. C, Notice of Entry of Judgment, ECF 20-3 (attaching Final Judgment entered in *Athena Art Finance Corp. v. 18 Boxwood Green Limited, et al.*, NY County Index No. 657322/19 (N.Y. Sup. Ct.) (Docket Entry 29, March 2, 2020).)

Athena_Additional_Production_002704 at 002705; Shapiro Decl. Ex. K, Athena_00022181 at Athena_99922181.)  Athena took still other safeguards over its collateral, including by maintaining custody of *Humidity at all times* in fine art storage facilities where it also has been insured by Athena with specialized fine art insurers, which the U.C.C. also recognizes as a perfection of a security interest.

In October 2019, Obligors defaulted on the loan to Athena, and Philbrick went on the lam for several months until his arrest in the South Pacific pursuant to an indictment unsealed by this Court in June 2020.  (*United States v. Philbrick*, 1:20-cr-00351 (S.D.N.Y.) (Docket Entry 1, April 30, 2020); Complaint-in-Intervention ¶ 63, ECF 30; Complaint-in-Intervention, Ex. A, Criminal Complaint, ECF 30-1 (the "Criminal Complaint").)  That indictment charged Philbrick with Wire Fraud and Aggravated Identify Theft, in particular, for defrauding Athena (identified in the charging document as "the Art Finance Company") into making the loan secured by *Humidity.* (Criminal Complaint § 5a.)  Philbrick thereafter was convicted, and today remains incarcerated.

No one challenged Athena's security interest in *Humidity* prior to the default and Philbrick's flight from justice in October 2019.  It was only in October 2019 and November 2019 that interested parties Satfinance Investment Limited ("SIL") and Delahunty Limited ("Delahunty") came forward to challenge Athena's security interest in *Humidity*.  To be clear, SIL and Delahunty had never previously claimed to have any rights to or interest in *Humidity* (perfected or otherwise)—in fact, to this *day* Delahunty has never filed a U.C.C. lien and it was *only after* Philbrick fled to the South Pacific that SIL attempted to file what a appears to be an ineffective one.  To this day, Delahunty and SIL have never had possession of the painting that they now claim to own (whereas Athena has had exclusive possession and has insured it), nor have they taken any steps to place the public on notice of the supposedly valuable "interest" they now claim.

-2-

To the contrary, only after press reports of Philbrick's escape did they first claim to have obtained confused interests in future sale proceeds from the painting through their private dealings with Philbrick. Aptly, SIL has told the Court that it is Philbrick's "silent partner" in the ownership of *Humidity* (i.e., the very dealings for which their "partner" has been convicted). It is through those "silent" partnerships that SIL and Delahunty claim to have received rights in *Humidity* that are superior to Athena's first priority, U.C.C.-perfected security interest.

This case is prime for summary judgment because discovery has closed and there is nothing in the record to dispute that Athena did everything the U.C.C. and New York law requires to take and perfect its security interest in *Humidity*. That ends the analysis because, even if SIL and Delahunty's claimed private deal(s) with Philbrick were to be believed and accepted as true under Rule 56 — never mind that there is nothing believable about the shady story and suspect documents they are peddling—those "claims" of superior rights to *Humidity* would not supplant Athena's perfected interest, as a matter of law.[2] This Court must therefore grant summary judgment in Athena's favor and enter an order confirming Athena's superior interest in and right to sell *Humidity* in satisfaction of the judgment awarded to it and against Obligors by the New York Supreme Court. As set forth below:

First, Athena's security interest in *Humidity* is valid under Article 9 of the New York Uniform Commercial Code and enforceable against Obligors and third parties SIL and Delahunty because the undisputed facts show: (1) value was given for *Humidity*, (2) Obligors had rights in the collateral or the power to transfer rights in the collateral, and (3) the interest in *Humidity* was

---

[2] That is, because Athena is entitled to summary judgment upon application of the settled U.C.C. law to the undisputed facts of what Athena did to obtain and perfect its security interest, the Court need not address the very-disputed facts surrounding whatever dealing(s) SIL and Delahunty claimed to have reach. *See AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*, 72 F. Supp. 2d 350 (S.D.N.Y. 1999) ("[T]he mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. ").

perfected because it was both described in an authenticated security agreement and kept in Athena's possession pursuant to that security agreement.  That is *all* the U.C.C. requires here.

Second, and alternatively, SIL and Delahunty cannot proceed with their equitable challenge to Athena's security interest in any event.  As a matter of law, SIL and Delahunty are estopped from disputing the validity of Athena's security interest because they themselves facilitated Philbrick's fraud.  That is, *even if* SIL and Delahunty were themselves duped by Philbrick (which is the very disputed claim they make), New York law is clear that, as between two innocent victims of fraud, the ones who made possible the fraud on the other should suffer.  Here, Philbrick never would have been able to pledge *Humidity* as collateral for a loan from Athena if SIL and Delahunty *(i)* had not intentionally kept their "partnerships" in *Humidity* secret and "silent" (unlike Athena, they  completely failed to register their interests anywhere or do anything whatsoever to put the public and good faith lenders on notice); and then also *(ii)* gave Philbrick no-strings, unfettered physical possession of the valuable painting they now claim to own (allowing Philbrick to physically hand *Humidity* over to Athena to secure the loan, which perfected Athena's interest).[3]

Simply put, SIL and Delahunty have obstructed Athena's right to foreclose and sell *Humidity*—as is Athena's right under the U.C.C, and settled precedent that has brought consistency to secured transactions for generations—since October 2019, when they first appeared out of thin air with claims of "silent" and private "partnerships" after their partner Philbrick fled to the South Pacific.  Since then, Athena won a final judgment to collect its debt (in New York

---

[3] Athena does ***not take any position*** as to who should receive the proceeds of the sale of *Humidity* beyond those necessary to satisfy Athena's contractual rights to repayment and collect on the Final Judgment that the New York Supreme Court entered in its favor. Athena believes *Humidity* has appreciated exponentially in value since Philbrick first pledged the artwork in 2017. As a secured lender, Athena only has rights to recover its outstanding principal, accrued contractual interest and fees.  Thus, it is highly likely that, after  the Athena debt is extinguished, SIL and Delahunty—standing in Philbrick's shoes as "equity" partners—would receive the entirety of their investments in *Humidity* plus substantial profits or return on their investment.

Supreme Court), won a dismissal of a case brought by SIL to jump ahead of Athena's secured position (in the High Court in London), and has now concluded *years* of discovery whereby SIL and Delahunty had a full and fair opportunity to unearth something to justify their (incredible) claims.  There is nothing to left litigate—the record is closed and, as a matter of law, Athena is entitled to summary judgment as to its rights against the collateral under the U.C.C..

## RELEVANT BACKGROUND[4]

I.    **ATHENA TAKES HUMIDITY AS COLLATERAL PURSUANT TO THE LSA AND PERFECTS ITS FIRST PRIORITY SECURITY INTEREST IN APRIL 2017.**

With backing from the Carlyle Group, Athena was founded in 2015 as an independent specialty lender to provide loans secured by high-value fine art.[5]  Following several earlier loans to Philbrick, on March 31, 2017, Athena entered into a Loan and Security Agreement (as amended, the "LSA") to provide Obligors with a revolving loan facility (the "Loan") with a maturity date as the earlier of the one-year anniversary of any loan made under a draw request or March 31, 2020. (SUMF ¶ 4; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002550, 002579.) The LSA was signed by Joseph Betts, one of the independent Directors of Boxwood (SUMF ¶ 5; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002550, 002569), and was guaranteed by both Philbrick and IPL (SUMF ¶¶ 6, 7; Shapiro Decl. Ex. B, Athena_Additional_Production_002612;    Shapiro    Decl.    Ex.    C, Athena_Additional_Production_002601.)  On March 31, 2017, Athena filed a U.C.C.-1 statement in    the    District    of    Columbia.    (SUMF    ¶    9;    Shapiro    Decl.    Ex.    D, Athena_Additional_Production_002704 at 002705.)   In accordance with the U.C.C., the LSA

---

[4] Athena has filed with this motion, and incorporates herein, its supporting Statement of the Undisputed Material Facts ("SUMF").

[5] CARLYLE, *Athena Art Finance Starts Art-Lending With $280 Million Investment by the Carlyle Group* (Oct. 15, 2015), https://www.carlyle.com/media-room/news-release-archive/athena-art-finance-starts-art-lending-280-million-investment-led.

describes the collateral taken in exchange for and as security for Athena's Loan, including *Humidity*. (SUMF ¶ 8; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002551–002552.) The LSA specifically required that Boxwood pledge, assign and grant:

> to Lender, a security interest in all of its right, title and interest in, to and under all property of Borrower, wherever located, and whether now owned or existing or hereafter owned, acquired or arising from time to time (collectively, the 'Borrower Collateral'), to secure the prompt and complete payment and performance of all the Obligations, including without limitation: (a) all Artwork Collateral Pieces…

(SUMF ¶ 8; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002551–002552.)

On April 7, 2017, Schedule A to the LSA was amended to include *Humidity* as an Artwork Collateral Piece, with the LSA describing *Humidity* as follows: "Jean Michel Basquiat, *Humidity (1982)*, 96" x 72."" (SUMF ¶¶ 10; Shapiro Decl. Ex. G, Athena_Production_UNREDACTED_001449 at 001450; Athena_Additional_Production_002550 at 002552.) In the LSA Obligors represented that:

(a) Borrower is the sole and absolute lawful and beneficial owner of all Borrower Collateral and that the Borrower Collateral is free and clear of all liens,

(b) Borrower has the authority to sell and/or transfer good and marketable title to all Borrower Collateral,

(c) Disposition of the Borrowing Collateral following an Event of Default "shall not require the consent of any Person and shall not constitute a breach or default under any agreement to which a Borrower is a party or is bound by or to which its property is subject," and

(d) Borrower "has not signed any legally binding agreement, contract or option to sell any Artwork Collateral Piece."

(SUMF ¶ 11; Athena_Additional_Production_002550 at 002553.)

Obligors acquired and paid for *Humidity* from Phillips. (SUMF ¶¶ 1, 2; Shapiro Decl. Ex.

R, PH_0000002 at 0000002; Shapiro Decl. Ex. U, 2023.01.12 Deposition of Annette Schwaer 34:21–35:15.)   Additionally, on April 7, 2017, Athena searched the Art Loss Register database for *Humidity* and found no match, meaning that no one else had registered the painting, nor reported it as lost or stolen.   (SUMF ¶ 17; Shapiro Decl. Ex. E Athena_Production_UNREDACTED_001655 at 001665.)

It was a condition of the LSA that any Artwork Collateral Pieces taken as security for the Loan be in Athena's physical control and Athena immediately took physical possession of *Humidity*.  (SUMF ¶ 12; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002556, 002563; Shapiro Decl. Ex. I, Athena_Production_UNREDACTED_000224 at 000227.)  Athena was also immediately named as the Named Insured and Loss payee on the insurance policy covering *Humidity*.    (SUMF ¶ 18; Shapiro Decl. Ex. F, Athena_Production_UNREDACTED_001654 at 001654.)

## II.   BORROWERS' DEFAULT AND COURT JUDGMENT IN FAVOR OF ATHENA.

The Loan was performing until borrower defaulted in October 2019, more than two years after its inception.   (SUMF ¶¶ 20; Shapiro Decl. Ex. M, Athena_Production_UNREDACTED_002114 at 002114.)

Following the default, the New York Supreme Court entered a judgment for Athena and against borrowers in the amount of $14,306,800.47 (the $13.5 million amount of loan principal plus interest outstanding as of the date of the order).  (SUMF ¶ 21; Lindstrom Aff. Ex. C, Notice of Entry of Judgment, ECF 20-3.)  Under Sections 8.2 and 8.8 of the LSA, in the event of a default, Athena has the absolute right, unilaterally, to sell *Humidity* at public or private.  (SUMF ¶ 13; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002562–002563; Shapiro Decl. Ex. M, Athena_Production_UNREDACTED_002114.)

Since then, Philbrick was indicted for Wire Fraud and Aggravated Identity Theft, and after

fleeing to the South Pacific, was arrested by U.S. authorities (who found him in the island of Vanuatu) in June 2020.  (*United States v. Philbrick*, 1:20-cr-00351 (S.D.N.Y.) (Docket Entry 7, June 18, 2020); Complaint-in-Intervention ¶ 63, ECF 30; Complaint-in-Intervention, Ex. B, Inigo Philbrick Indictment, ECF 30-2.)   The United States alleged that Philbrick made "material misrepresentations" to Athena (identified as "the Art Finance Company") and that he never disclosed the interests of other investors in *Humidity*.  The United States further alleged that Athena "would not provide loans unless the borrower was the sole owner of the artwork."  (Criminal Complaint § 5b, ECF 30-1.)  Philbrick later entered a plea of guilty to the Wire Fraud charge in November 2021 and was convicted and sentenced to seven years in prison.  (*United States v. Philbrick*, 1:20-cr-00351 (S.D.N.Y.) (Docket Entry 65, May 25, 2022).)

After Philbrick fled, SIL commenced action in an English court against Philbrick, IPL, Boxwood, and Athena to, *inter alia,* restrain Athena from selling *Humidity*.  (*See* Pesko Decl., Ex. E, November 1, 2019 Judgement, ECF 69-5.)  The London court, however, dismissed all of SIL's claims against Athena on May 26, 2020, and on June 2, 2020 vacated the injunction.  (Lindstrom Decl. ¶ 9, ECF 64;  Lindstrom Decl., Ex. A, June 2, 2020 Judgement, ECF 64-1.)

Athena filed the instant *in rem* action in New York State Court that same day (the "Complaint"), which SIL then removed to this Court.  (Notice of Removal,  ECF 08.)  On July 30, 2020, Delahunty filed its Answer and Counterclaim (the "Counterclaim", ECF 26) and SIL filed its Complaint-in-Intervention (the "Complaint-in-Intervention," ECF 30.)   The Complaint, Counterclaim, and Complaint-in-Intervention are the subject of this motion.

## III.  SIL SECRET PARTNERSHIP AND ALLEGED AGREEMENT WITH PHILBRICK REGARDING *HUMIDITY*.

SIL claims to have entered into a secret "silent" partnership with Philbrick with respect to *Humidity* in 2016.  (SUMF ¶ 23, 24; *See* Shapiro Decl. Ex. P, SATF_HUM0000395; Shapiro

Decl. Ex. S, 2022.05.22 Deposition of Sasha Pesko at Tr. 149:17–150:15; Shapiro Decl. Ex. T,

2023.01.11 Continuing Deposition of Sasha Pesko at Tr. 19:15–21:13.)  Indeed, SIL itself has

repeatedly represented to this Court that it was Philbrick's "silent partner."  (Tele. Conf. Tr. at

44:10–44:18, Aug. 4, 2022, ECF 140.)  According to SIL, Philbrick and SIL's representative,

Sasha Pesko, decided to enter into this partnership with Philbrick while their families were

yachting together off the Italian coast.  (SUMF ¶ 22; Shapiro Decl. Ex. S, 2022.05.22 Deposition

of Sasha Pesko at Tr. 103:2–104:4.)  Indeed, it was SIL's express design and desire for the

partnership to be secret and concealed from the world, except as between it and Philbrick.

(SUMF ¶¶ 23, 28, 29; Shapiro Decl. Ex. S, 2022.05.22 Deposition of Sasha Pesko at Tr. 249:16–

249:21; Shapiro Decl. Ex. T, 2023.01.11 Continuing Deposition of Sasha Pesko at Tr. 19:15–

23:02.)  To that end, SIL did not disclose, register or lodge its claimed interests with respect to

*Humidity* to anyone, anywhere, until after it was pursuing litigation.  (SUMF ¶¶ 28, 29;  Shapiro

Decl. Ex. S, 2022.05.22 Deposition of Sasha Pesko at Tr. 99:23–101:12.)

On August 11, 2016, "the spirit of [the] partnership" between SIL and Philbrick/IPL was

allegedly memorialized in a written agreement produced by SIL in this litigation (the "SIL

Partnership Agreement").  (SUMF ¶¶ 22, 23, 24; Shapiro Decl. Ex. P, SATF_HUM0000395.)  The

claimed purpose of the "partnership" was to purchase *Humidity* with the goal of a "quick sale of

the artwork" (*i.e.* to flip it within a year).  (SUMF ¶ 25; Shapiro Decl. Ex. P, SATF_HUM0000395;

Shapiro Decl. Ex. Q, SATF_HUM0000443.)  The SIL Partnership Agreement explicitly assigned

to Philbrick the exclusive possession of and responsibility for the care of *Humidity,* with any profits

and losses to be split equally between SIL and Philbrick.  (SUMF ¶¶ 26, 27; Shapiro Decl. Ex. P,

SATF_HUM0000395.)  And although SIL claims to have been misled by Philbrick in connection

with the SIL Partnership Agreement, SIL has never repudiated or challenged the SIL Partnership

Agreement or even its "Spirit of Partnership" with Philbrick.

SIL did not disclose either its secret partnership or the SIL Agreement to anyone other than Philbrick, including Athena, until late 2019, *i.e.,* after Philbrick was reported missing and just before bringing its failed lawsuit against Athena in London.  (SUMF ¶¶ 28, 29*; see e.g.*, Shapiro Decl. Ex. T, 2023.01.11 Continuing Deposition of Sasha Pesko at Tr. 19:15–23:02; Complaint-in-Intervention ¶ 59, ECF 30.)

## IV.   DELAHUNTY'S SECRET PARTNERSHIP AND ALLEGED AGREEMENT WITH PHILBRICK REGARDING *HUMIDITY*.

Like SIL, Delahunty also claims a partnership with Philbrick with respect to *Humidity* by which it would share in the profits or losses of a future sale of the painting.  (SUMF ¶¶ 30, 31; Shapiro Decl. Ex. N, DEL00009; Shapiro Decl. Ex. O, DEL00074 at 00075.)   According to Delahanty, it purchased a 12.5% interest in *Humidity* on November 1, 2016.  (SUMF ¶ 31; Shapiro Decl. Ex. O, DEL00074 at 00075.)

Also, like SIL, it was Delahunty's design and desire that their partnership be kept a secret.  (SUMF ¶¶ 33, 34; Shapiro Decl. Ex. N, DEL00009.)  To that end, Delahunty intentionally did not disclose, register or lodge its claimed interests in *Humidity* to anyone publicly, and it didn't disclose its claimed interest to Athena until Philbrick fled to the South Pacific in late 2019.  (SUMF ¶¶ 33, 34; Counterclaim ¶¶ 33–36, ECF 26.)

## ARGUMENT

## I.   THE SUMMARY JUDGMENT STANDARD.

Where there are no genuine issues of material fact, a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anthony v. GE Cap. Retail Bank*, 321 F. Supp. 3d 469, 474 (S.D.N.Y. 2017).  To survive a motion under Rule 56, the non-movant needs "to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward

with specific facts showing that there is a genuine issue for trial.'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)).

**II.   ATHENA HAS A PERFECTED SECURITY INTEREST IN *HUMIDITY* PURSUANT TO U.C.C. ARTICLE 9, WITH PRIORITY OVER SIL'S AND DELAHANTY'S INTERESTS.**

**A.   Athena Created a Valid and Enforceable Security Interest In the *Humidity*.**

The *critical* purpose of the Uniform Commercial Code is to promote clear, simple, and reliable laws governing commercial transactions.  *See* N.Y. U.C.C. § 1-103.  To that end, under U.C.C. Article 9, as adopted in New York, all that is needed to create a valid security interest enforceable against both the debtor and third-parties is that (1) value has been given; (2) the debtor has rights in the collateral or power to transfer rights in the collateral to the secured party; and that (3) the debtor has authenticated a security agreement that provides a description of the collateral *and/or* the secured party has taken possession of the collateral.  N.Y. U.C.C. § 9-203(b); *see also Matter of Honeedew Investing LLC v. JP Morgan Chase Bank, N.A.*, 186 N.Y.S.3d 191, 192–93 (N.Y. App. Div. 2023) (citing N.Y. U.C.C. § 9-203(b)) (finding that lender had a perfected security interest in property superior to an unsecured party).  This security interest attaches to the collateral at the time it becomes enforceable against the debtor.  N.Y. U.C.C. § 9-203(a).

The undisputed record shows that the U.C.C.'s requirements for creating a security interest are satisfied because (1) Athena gave value in exchange for a security interest in *Humidity*, (2) Obligors had rights arising in *Humidity*, and (3) an independent director authenticated the loan and security agreement providing a description of the collateral subject to Athena's security interest *and* Athena took immediate possession of *Humidity*. (SUMF ¶¶ 1–5, 8, 10, 14–16.)

*First*, Athena gave value to Obligors in the form of the $13.5 million loan facility under

the LSA.  (SUMF ¶ 4; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002579; Shapiro Decl. Ex. L, Athena_00003670 at 00003676.)

*Second,* Obligors had rights to *Humidity* and the power to convey a security interest to Athena under the LSA and Athena issued loan proceeds thereafter.  (SUMF ¶¶ 1–3, 5, 8, 11, 14–16; Shapiro Decl. Ex. H, Athena_Production_UNREDACTED_000163 at 000163; Shapiro Decl. Ex. J, Athena_00007109 at 00007109; Shapiro Decl. Ex. R, PH_0000002 at 0000002; Shapiro Decl. Ex. U, 2023.01.12 Deposition of Annette Schwaer at Tr. 34:21–35:15.)  *See* N.Y. U.C.C. § 9-203(b)(2); *Fundex Capital Corp v. Reichard*, 568 N.Y.S.2d 794, 795 (N.Y. App. Div. 1991) (finding "clearly identifiable rights in" ownership shares of a cooperative apartment when debtor had "possession of the shares and occupancy of the apartment").

*Third* and finally, Athena and Obligors created an authenticated security agreement describing *Humidity* in Schedule A to the LSA, which was signed by an authorized independent director.  (SUMF ¶¶ 4, 5, 8, 10, 11; Shapiro Decl. Ex. A, Athena_Additional_Production_002550 at 002569; Shapiro Decl. Ex. G, Athena_Production_UNREDACTED_001449 at 001450.)  The LSA provides a description of the collateral subject to Athena's security interest, and Schedule A specifically describes the collateral to include "Jean Michel Basquiat, *Humidity (1982)*, 96" x 72"".  (SUMF ¶¶ 8, 10; *supra* at 6.)  Athena also took immediate physical possession of *Humidity*.  (SUMF ¶ 12, 14–16; Shapiro Decl. Ex. I, Athena_Production_UNREDACTED_000224 at 000227.)

## B.   Athena Perfected Its Security Interest By Filing a U.C.C. Financing Statement and Taking Possession of *Humidity*.

To facilitate clear and reliable commercial transactions, the U.C.C. calls for secured parties to "perfect" their enforceable security interest in accordance with U.C.C. Article 9 by either (1) filing a U.C.C.-1 Financing Statement in the proper jurisdiction, *or* (2) taking possession of the

collateral.  N.Y. U.C.C. §§ 9-310, 9-313.  The undisputed record also shows that *Athena did both*.

On March 31, 2017, Athena filed a U.C.C.-1 Financing Statement, recording its secured interest

in    the    District    of    Columbia.[6]         (SUMF    ¶    9;    Shapiro    Decl.    Ex.    D,

Athena_Additional_Production_002704 at 002705.)  The U.C.C.-1 Financing Statement properly

described    Athena's    secured    interests.         (SUMF    ¶    9;    Shapiro    Decl.    Ex.    D,

Athena_Additional_Production_002704 at 002705.)    Furthermore,  Athena  took  immediate

physical possession of *Humidity* once it entered the LSA collateral pool.  (SUMF ¶ 14–16; Shapiro

Decl. Ex. I , Athena_Production_UNREDACTED_000224 at 000227.)

### C. **Athena's Perfected Security *Interest* has Priority Over Any Claimed Interest of SIL and Delahunty.**

      Finally, Athena's enforceable and perfected security interest has priority over both SIL's

and Delhunty's claims, even assuming under Rule 56 the gospel truth of their claims to have

entered into partnerships with Philbrick for shared ownership of *Humidity.*  As a matter of New

York law, set forth *supra,* a perfected security interest is enforceable against third-parties.  *See*

N.Y. U.C.C. § 9-203(b) (except as otherwise provided "a security interest is enforceable against

the debtor and third parties with respect to the collateral" if it satisfies N.Y. U.C.C. § 9-203(b)).

A perfected security interest has priority over a conflicting unperfected security interest and an

unsecured interest.  *See* N.Y. U.C.C. §§ 9-203(b) ("a security interest is enforceable against . . .

third parties"), 9-322(a)(2) ("A perfected security interest . . . has priority over a conflicting

unperfected security interest"), 9-322(a)(3) ("The first security interest . . . to attach or become

effective has priority if conflicting security interests . . . are unperfected.").  As between two

---

[6] The U.C.C.-1 Financing Statement was filed in the District of Columbia in satisfaction of N.Y. U.C.C. § 9-307(c) requirements for foreign entity filings because Boxwood is a foreign entity incorporated in the Bailiwick of Jersey. *See* N.Y. U.C.C. § 9-307(c) (a "debtor is located in the District of Columbia" if their location does not otherwise have a filing system similar to that of the U.C.C. for non-possessory interests).

conflicting perfected security interests, priority ranks "in time of filing or perfection."  N.Y. U.C.C. § 9-322(a)(1).

The undisputed record shows that neither SIL nor Delahunty ever perfected any claimed interest in the *Humidity*, and certainly did not do so prior "in time of" Athena's perfection on April 7, 2017.  (SUMF ¶¶ 9, 10, 16, 23–28, 30–34.)  Delahunty's purported partnership agreement with Philbrick was solely a profit-sharing partnership (allegedly, for 12.5% of the upside) and it did not contemplate the creation of any security interest in the *Humidity*, much less did it include an authenticated security agreement as required by N.Y. U.C.C. § 9-203.  (SUMF ¶¶ 30, 31;  Shapiro Decl. Ex. O, DEL00074 at 00075.)   Like the secret Delahunty arrangement, the purported SIL Partnership Agreement also called for partnership-style profit-sharing (allegedly 50% or 66%, depending on which of SIL's documents one is looking at).  (SUMF ¶ 23–25 ; Shapiro Decl. Ex. P, SATF_HUM0000395; Shapiro Decl. Ex. Q, SATF_HUM0000433.)  To the extent that the SIL Partnership Agreement could have ever been construed as contemplating a security interest (which seems contrary to law), it wouldn't matter under the U.C.C., because *unlike Athena* SIL never took either of the legal steps *required to perfect* any such interest (i.e., correct filing of notice or possession).  SIL *never* even tried to make any U.C.C. filing until *after* Athena did so (correctly) and after Philbrick fled in October 2019 (and even that after-the-fact filing was ineffective as a matter of law for still other reasons).  And unlike Athena, neither SIL nor Delahunty *ever* possessed the collateral, which is the only other way to perfect the interest under the U.C.C.[7]  (SUMF ¶¶ 26,

---

[7]  Although no evidence of it was produced in this case, years later—after Philbrick fled and after SIL started claiming an interest in *Humidity*—SIL did file a U.C.C.-1 statement recording a *limited* interest in the painting up to a purported $3 million loan made under the SIL Partnership Agreement.  (SUMF ¶ 28; Shapiro Decl. Ex. S, 2022.05.03 Deposition of Aleksandar Pesko 99:23–100:12.)   Furthermore, when it did, its filing was ineffective for multiple reasons, including because the filing was made in New York, the wrong jurisdiction.  Because IPL is a U.K. entity, any recording made under the U.C.C. against IPL needed to be made in the District of Columbia to be effective under N.Y. U.C.C. § 9-307.  And even if that were not the case, the recording SIL eventual made was still not made until years after Athena's interest was recorded and would be lower priority than Athena's interest.  Because conflicting

27, 32; Shapiro Decl. Ex. S, 2022.05.03 Deposition of Aleksandar Pesko at Tr. 84:17–85:6.)

As a result, Athena is the only entity with an enforceable and perfected security interest against *Humidity*, and as a matter of law would *still* have priority over any hypothetical, unperfected and lesser priority interests of Delahunty and SIL *even if* the Court were to (incorrectly) assume, just for Rule 56 purposes, that they had any interests at all. Athena may thus enforce its claim and foreclose on the collateral. *Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 419 (S.D.N.Y. 2002) ("[A] secured party 'may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest'" ) (citing N.Y. U.C.C. § 9-601(a)(1)); *KLS Diversified Master Fund, L.P.* v. *McDevitt*, 532 F. Supp. 3d 126, 134 (S.D.N.Y. 2021), *aff'd*, No. 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022) ("[N.Y. U.C.C. § 610] provides, "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.").

## III.   SIL AND DELAHUNTY ARE ESTOPPED FROM NOW DISPUTING ATHENA'S PERFECTED SECURITY INTEREST IN HUMIDITY

Athena has an interest in Humidity that is superior to any interest purportedly claimed by SIL and Delahunty for all the reasons explained in Section II, above—all based on the undisputed facts of what Athena did to comply with the U.C.C. and New York precedent thereunder (all apparent from the lending file), and the undisputed facts that SIL and Delahuty never perfected under the U.C.C. or otherwise whatever competing interests they supposedly reached in silent partnership with Philbrick. Although that *alone* requires entry of summary judgment under the U.C.C., in the alternative, judgment should enter because SIL and Delahunty are estopped by their own conduct in secret partnership with Philbrick from now interfering with Athena's perfected

---

perfected security interests rank in priority in terms of the order in time of filing or perfection under N.Y. U.C.C. § 9-322(a)(1), Athena would still have a perfected security interest with priority over any interest of SIL.

security interest.

The doctrine of estoppel may be invoked when (i) the party to be estopped knows the true facts, (ii) the party to be estopped intends for its conduct to be acted upon, or causes the party asserting estoppel to believe the same; (iii) the party asserting the estoppel is ignorant of the true facts; and (iv) the party asserting the estoppel relies to his detriment on the conduct of the party to be estopped. *Logan & Kanawha Coal Co., Inc. v. Banque Francaise du Commerce Exterieur*, No. 93 Civ. 4678 LBS, 1996 WL 551718, at *5 (S.D.N.Y. Sept. 26, 1996) (citing *Rosenthal v. National Life Ins. Co.*, 486 F. Supp. 1018, 1023 (S.D.N.Y. 1980)); s*ee also Porter v. Wertz*, 416 N.Y.S.2d 254, 258 (N.Y. App. Div. 1979) ("If [the owner] has invested another with the usual evidence of title . . . he will not be allowed to make claim against an innocent purchaser dealing on the faith of such apparent ownership.") (internal quotation and citation omitted).  "When the true owner is estopped from showing that a security interest is not valid, the debtor has rights in the collateral for the purposes of U.C.C. § 9-203."  8A PART II ANDERSON U.C.C. § 9-203:200 (3d. ed.).

Here, as a matter of law, SIL and Delahuty are estopped from disputing the validity of Athena's security interests because, (i) they knew the truth: that they had intentionally concealed from everyone their silent partnerships with Philbrick and any of their alleged interests in *Humidity* (*see supra* at 8–10), (ii) they intended for their partnerships to be remain secret, for Philbrick to be the sole source of information to the outside world regarding ownership and title to *Humidity*, including their alleged interests in *Humidity*, and for third parties like Athena to rely on information related to *Humidity*'s ownership as conveyed to them by Philbrick (which Athena did) (*see supra* at 8–10), (iii) Athena did not know SIL and Delahunty had silent partnerships with Philbrick or that they had partial title under purported conditional sales contracts, (*see supra* at 8–10), and (iv) Athena relied on the representations of Philbrick regarding *Humidity*, as prescribed by SIL and

Delahunty, to make the Loan to Athena's detriment.  (SUMF ¶¶ 11, 17, 23–29, 30, 32–34; Shapiro

Decl. Ex. A, Athena_Additional_Production_002550 at 002553.)

Fundamentally, SIL and Delahunty cannot displace Athena's perfected, first priority

security interest in *Humidity* under the U.C.C. because of their intentional concealment of their

partnerships with Philbrick.  Under New York law, when there are "two innocent victims of the

fraud, the one who made possible the fraud on the other should suffer." *Rand's Disc. Co. v.*

*Universal C.I.T. Credit Corp.*, 198 N.Y.S. 2d 341, 343 (N.Y. App. Div. 1960).  Indeed, the *Rand*

case is particularly instructive.  In that case:

> [i]t [was] not stipulated or suggested that plaintiff had actual or constructive
> notice of the defendant's reservation of title under a conditional sales contract.
> Nor could plaintiff have discovered such reservation by a usual search of record,
> since the defendant did not file the contract or any notice of it. At defendant's
> instance, when plaintiff placed the chattel mortgages here relied upon by the
> plaintiff, Lazzaro had ample indicia of unfettered title,—i. e., possession, proof of
> purchase, and a regular course of business in the sale of cars,—and no public
> record of adverse title, lien, or encumbrance existed. . . .  In such circumstances
> the defendant is chargeable with creating the conditions which constitute an
> estoppel to assert title as against the plaintiff.

*Id.* at 343.  The same is also true here.  SIL and Delahunty clothed Philbrick (IPL) with "ample

indicia of unfettered title" by allowing Philbrick to represent their interest in the painting,

communicate with the market regarding the painting, and to retain unfettered physical possession

of the painting in New York.  (*See supra* at 8–10.)  Furthermore, neither SIL nor Delahunty ever

filed any record of their purported partial ownership, nor did SIL ever perfect its purported

$3,000,000 loan to Philbrick either.  (*See supra* at 13–15.)

Finally, there is no question that, after entering into the alleged SIL and Delahunty

Partnerships to profit from flipping *Humidity*, Philbrick exercised the exclusive authority that

SIL and Delahunty had granted him over the possession and care of the painting.   Philbrick

represented *many* times to Athena that he had full and unfettered rights to pledge and handover

*Humidity,* actually pledged *Humidity* as collateral, and as the partner with full possession of the painting, both (i) physically handed it over to Athena as collateral (an act that perfected Athena's secured interest under the U.C.C.), and (ii) allowed Athena to file a U.C.C.-1 as public notice of its secured rights (a separate act that double-perfected Athena's secured interest under the U.C.C.). Therefore, even assuming under Rule 56 that those "partnerships" existed exactly as alleged by SIL and Delahunty, Philbrick was acting on behalf of those partnerships. *See Belgian Overseas Secs. Corp. v. Howell Kessler Co.*, 450 N.Y.S.2d 493, 493 (N.Y. App. Div. 1982) (holding that plaintiff was not bound by the scope of a limitation on a partner's power to bind the partnership, as plaintiff lacked knowledge of the limitation); *Bank of Com. v. De Santis*, 451 N.Y.S.2d 974, 976–77, 494 (Civ. Ct. N.Y. City, Kings Cnty. 1982) ("the act of every partner . . . apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership. . . .  In essence, an action need not be actually within the scope of the partnership business, so long as it is apparently within the scope of the partnership business.").

Simply put, in these circumstances, SIL and Delahunty are more culpable parties and they are estopped from asserting even their valid title (if they had one) against a less culpable party such as Athena.

<u>CONCLUSION</u>

Athena is, indisputably, the holder of a perfected, first priority, security interest in *Humidity*. SIL and Delahunty's "secret partnerships" with Philbrick do not trump Athena's rights as a secured lender. And even if SIL and Delahunty had rights they could assert under the law, they are prevented from interfering with Athena's security interest as a matter of equity. For the reasons stated above, Athena respectfully requests that the Court grant its motion for summary judgment by both granting it the declaratory relief sought and dismissing all of SIL and Delahanty's claims with prejudice.

Dated:  July 20, 2023

By:  /s/ *Christine V. Sama*
      Christine V. Sama
      GOODWIN PROCTER LLP
      The New York Times Building
      620 Eighth Avenue
      New York, New York 10018
      Tel: (212) 813-8800
      Fax: (212) 355-3333
      csama@goodwinlaw.com

      Jonathan A. Shapiro
      Three Embarcadero Center
      28th Floor
      San Francisco, California 94111
      Tel: (415) 733-6000
      jshapiro@goodwinlaw.com
      (*pro hac vice*)

      *Attorneys for Plaintiff Athena Art Finance Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2023, I caused to be served by electronic means via the Court's CM/ECF System a copy of the Memorandum of Law in Support of Plaintiff and Intervenor-Defendant Athena Art Finance Corporation's Motion for Summary Judgment on all counsel registered to receive electronic notices.

/s/ *Christine V. Sama*