UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATHENA ART FINANCE CORP.,<br><br>    *Plaintiff,*<br><br>  -against-<br><br>that<br><br>CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, *in Rem*,<br><br><br>    *Defendants.*<br><br>SATFINANCE INVESTMENT LIMITED and DELAHUNTY LIMITED d/b/a DELAHUNTY FINE ART,<br><br>    *Interested Parties.* | 20-CV-04669 (GBD) (VF)<br><br>**OPINION & ORDER** |
| SATFINANCE INVESTMENT LIMITED<br><br>    *Intervenor-Plaintiff,*<br><br>  -against-<br><br>ATHENA ART FINANCE CORP. and that CERTAIN ARTWORK BY JEAN-MICHEL BASQUIAT ENTITLED HUMIDITY, 1982, *in Rem*,<br><br>    *Intervenor-Defendants.* | |

**VALERIE FIGUEREDO, United States Magistrate Judge**

    In this in rem action to foreclose a lien and to obtain an order permitting the sale of a painting by Jean-Michel Basquiat, Plaintiff and Intervenor-Defendant Athena Art Finance Corporation ("Athena") moves to strike the opinions of expert Michael Plummer set forth in his February 23, 2023 expert report submitted by Interested Party and Intervenor-Plaintiff Satfinance Investment Limited ("Satfinance") in support of its opposition to Athena's motion for summary judgment and partial opposition to the motion for summary judgment submitted by Interested

1

Party Delahunty Limited ("Delahunty"). For the reasons explained below, the motion pursuant to Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702 is **DENIED.**

## BACKGROUND

This case involves multiple parties claiming title to collateral. Athena initiated the action in New York Supreme Court, which Satfinance removed to this Court on June 18, 2020. See ECF No. 1 ("Compl."). The complaint details that Athena—a specialty lender engaged in the business of providing loans secured by high-value fine art—made a loan to a borrower that was collateralized by the in rem defendant, which is a 1982 painting by Jean-Michel Basquiat titled "Humidity" (the "Basquiat"). Id. at 1 and ¶¶ 1-3. The borrower defaulted on the loan and on March 2, 2020, the New York County Supreme Court subsequently entered a judgment for Athena in the amount of $14,306,800.47. Id. ¶ 4. As a result of the judgment and under the terms of the loan and security agreement, Athena, claiming to have possession of the Basquiat, alleges that it is now entitled to sell the Basquiat without regard to outstanding claims from any third parties purporting to hold an interest in the painting. Id. ¶¶ 5-6.

On July 30, 2020, Interested Party Delahunty filed its answer to the complaint, along with a counterclaim against Athena based on Delahunty's claimed interests in the Basquiat. ECF No. 26. On July 31, 2020, Interested Party and Intervenor-Plaintiff Satfinance filed an intervenor complaint against Athena based on Satfinance's claimed interested in the Basquiat. ECF No. 30. On August 14, 2020, Athena filed its answer to both Satfinance's intervenor complaint and Delahunty's counterclaim. ECF Nos. 31-32.

Discovery in this matter was completed by June 26, 2023, and on June 28, 2023, the undersigned issued an amended case management plan and scheduling order setting a deadline

for dispositive motions of July 20, 2023. ECF No. 168. On July 20, 2023, Delahunty and Athena filed motions for summary judgment. ECF Nos. 170, 173.

The instant motion to strike relates to the opinions of Michael Plummer set forth in his February 23, 2023 expert report (the "Plummer Report" or the "Report"), which was submitted by Satfinance in support of its opposition to Athena's motion for summary judgment and partial opposition to Delahunty's motion for summary judgment. ECF No. 201-3 ("Plummer Report"). Plummer was retained by Satfinance to opine on: (1) the general nature and conditions of business and credit in the art market; (2) standards of reasonable business practice and due diligence in the art market relative to the operative loans made by Athena; and (3) specifics of the diligence conducted by Athena on such loans. Id. at 3.[1]

Athena filed its motion to strike the Plummer Report and its opening brief in support of its motion on October 5, 2023. ECF Nos. 221, 222 ("Athena's Br."). Athena moves to strike the Plummer Report based on two grounds. First, Athena argues that Plummer failed to disclose, under Federal Rule of Civil Procedure 26, a prior expert report that was the "starting point" for his opinions in this case and also failed to disclose a prior client relationship he had with Athena. Athena's Br. at 1-3. And second, Athena contends that Plummer is not qualified to serve as an expert "on secured finance and asset-backed lending" and did not follow an appropriate methodology to form his opinions. See id. at 3-5. Satfinance filed its brief in opposition on November 21, 2023. ECF No. 239 ("Satfinance's Br."). And on December 14, 2023, Athena filed its reply brief in further support of its motion. ECF No. 245 ("Athena's Reply").

---

[1] Unless otherwise indicated, page numbers referenced herein are to the original pagination in the document filed on the electronic docket ("ECF").

3

**LEGAL STANDARD**

 A. <u>Federal Rule of Evidence 702</u>

 Trial courts serve as "gatekeep[ers]," responsible for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 597 (1993); <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 48 (2d Cir. 2004). Under Federal Rule of Evidence 702, after the witness is qualified as an expert, the party seeking to admit expert testimony must show that, "(1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) 'the expert has reliably applied the principles and methods to the facts of the case.'" <u>U.S. v. Pryor</u>, 474 F. App'x 831, 834 (2d Cir. 2012) (summary order) (quoting Fed. R. Evid. 702). The proponent of the expert's testimony must further show that (4) "the testimony is relevant and will assist the jury." <u>In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)</u>, 341 F. Supp. 3d 213, 240 (S.D.N.Y. 2018), <u>aff'd</u>, 982 F.3d 113 (2d Cir. 2020). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." <u>U.S. v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007).

 "Whether a witness is qualified as an expert is a threshold question that precedes the court's relevance and reliability inquiries." <u>LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.</u>, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016) (citing <u>Nimely v. City of N.Y.</u>, 414 F.3d 381, 396 n.11 (2d Cir. 2005)) (citations omitted), <u>aff'd</u>, 720 F. App'x 24 (2d Cir. 2017) (summary order). Under Rule 702, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education." <u>Id.</u> "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." <u>In re Mirena</u>, 341 F. Supp. 3d at 240

4

(quoting U.S. v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004)). These words must "be read in light of the liberalizing purpose of" Rule 702. U.S. v. Brown, 776 F.2d 397, 400 (2d Cir. 1985), cert. denied, 475 U.S. 1141 (1986).

    B.  Federal Rules of Civil Procedure 26 and 37

Federal Rule of Civil Procedure 26(a)(2) governs expert disclosures. Under Rule 26, an expert witness must provide a written report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii), (v). As explained in the Advisory Committee notes, Rule 26(a) "requires that persons retained or specially employed to provide expert testimony . . . must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Rule 26(a)(2)(B) Advisory Committee Notes on 1993 amend. ¶ (2)(B). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (citations omitted). To that same end, Rule 26 also imposes a continuing obligation on parties to supplement or correct expert disclosures "in a timely manner." Rule 26(e)(1)(A).

Further, Federal Rule of Civil Procedure 37(c)(1) provides sanctions for failure to comply with the disclosure obligation in Rule 26(a), stating that a party that fails to provide information required by Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); accord GeigTech East Bay LLC v. Lutron Elecs. Co., No. 18-CV-5290

5

(CM), 2023 WL 6614486, at *5 (S.D.N.Y. Sept. 20, 2023); Point Productions A.G. v. Sony Music Ent., Inc., No. 93-CV-4001, 2004 WL 345551 (NRB), at *9 (S.D.N.Y. Feb. 23, 2004).

**DISCUSSION**

Athena argues that the Plummer Report should be stricken because Plummer is unqualified to serve as an expert on secured financing and asset-backed lending. Athena's Br. at 3-6, 17-22. Athena also argues that the Plummer Report should be stricken for violations of Rule 26(a)(2)'s disclosure requirements. Id. at 1-2, 9-15. Athena claims that, in violation of Rule 26, Plummer did not disclose an expert report from 2016 (the "Overton Report") that Athena suggests "was the very 'starting point' for [Plummer's Report] in this case." Id. at 1, 9-14 (emphasis omitted). Athena also asserts that, in a separate violation of Rule 26, Plummer failed to disclose a prior personal and "significant" client relationship that he had with Athena that informed the basis of his opinions in the Report. Id. at 2, 14-17. Athena further contends that Plummer's prior relationship with Athena, and the dissolution of that relationship, presents "a clear conflict of interest or bias of an extraordinary degree" that disqualifies Plummer from serving as an expert here. Id. at 3, 14-17.

For its part, Satfinance argues that Plummer is a leading authority on art finance, that no disclosure obligations were violated, and that there exists no conflict of interest preventing Plummer from opining on Athena's conduct. See Satfinance's Br. at 7-16. For the reasons explained below, Athena's motion to strike the Plummer Report is denied.

A. Plummer is qualified to serve as an expert in this case.

Athena asserts that Plummer is not qualified to opine on Athena's asset-backed lending practices. See Athena's Br. at 17-22; Athena's Reply at 9-10. To support its argument, Athena focuses on Plummer's lack of formal training and education in secured lending, asserting that

6

Plummer lacks the relevant licensing or credentials common in the field of secured lending and never received formal training in that field. Athena's Br. at 17-19.

"Courts in this Circuit have liberally construed the qualification requirements of Rule 702, 'at least to the extent that a lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience.'" 523 IP LLC v. CureMD.Com, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014) (quoting In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004)). Where an expert "has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that [he] lacks expertise in the specialized areas that are directly pertinent." Arista Recs. LLC v. Lime Grp. LLC, No. 06-CV-5936 (KMW), 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011).

Contrary to Athena's argument, Plummer is unquestionably qualified to testify as an expert in this case. Satfinance retained Plummer to opine on the adequacy of Athena's due diligence when extending a loan secured by a piece of art, given the conditions, norms, and practices of the art market and the art finance industry. Plummer Report at 3 (¶¶ 1-2). As he details in his report, Plummer possesses "extensive experience in the field of analyzing art market economics, valuations, art purchases and sales, [and] art lending practices." Id. at 4 (¶ 9). Plummer worked as an advisor in the art market for 13 years, providing guidance on a range of issues, including the general landscape of the art market, art-based lending, and best business practices. Id. (¶¶ 12-14). As the founder, co-director, and co-owner of an art fair for five years, Plummer engaged regularly with exhibiting dealers, and many other art industry leaders, on issues such as market conditions, sales activity, loans, and liquidity. Id. (¶ 14). Additionally, Plummer worked for Sotheby's for 15 years, first in a position in the treasury department

7

providing dealer credit facilities and managing one of the first industry art loans, and later as Vice President, Head of Marketing for North and South America. Id. (¶ 16). Plummer also worked for Christie's for two years as Senior Vice President and Chief Operating Officer of Christie's Financial Services, where he launched a new business entity to provide art loans and art investment funds to clients. Id. (¶ 17). What's more, between 2010 and 2013, Plummer published five reports on art "market analysis." Id. at 5 (¶ 18). Plummer has also been quoted in, and has advised on, articles in the New York Times, the Wall Street Journal, the Financial Times, and the Art Newspaper on the subjects of art market performance, trends, economic factors, investment practices and structures, and liquidity and valuation in an "opaque" market. Id. (¶ 20). Plummer also has lectured on panels for continuing education courses and graduate-degree programs on the same subjects discussed in the articles at the Wharton School, New York University, the Appraisers Association of America, Sotheby's Institute and Christie's Education. Id. (¶ 20). Plummer currently teaches a course at Christie's on "Art Investment and Art Lending," and has lectured at the University of Pennsylvania on the topic of "Art as Investment." Id. at 4 (¶¶ 10, 15). Finally, Plummer has formal training in economics, with a Bachelor of Science degree in Economics from the Wharton School of the University of Pennsylvania. Id. (¶ 15).

      That Plummer has no formal education or lacks professional licenses in the field of secured lending does not suffice to render him unqualified in this case. As an initial matter, "[d]isputes as to the strength of [Plummer's] credentials," or lack thereof, "go to the weight, not the admissibility," of his expert opinion. McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995) (citation omitted); see also U.S. v. Joseph, 542 F.3d 13, 21-22 (2d Cir. 2008) (emphasizing that "the place to quibble with [an expert's] academic training is on cross-

examination and goes to his testimony's weight . . . not its admissibility") (citation and internal quotation marks omitted), abrogated on other grounds by U.S. v. Ferguson, 676 F.3d 260, 276 n.14 (2d Cir. 2011). Moreover, Plummer's formal training and education are just two of the five qualifications listed in Rule 702 that the Court must wholistically examine together with his knowledge, skill, and experience. See Wash. v. Kellwood Co., 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015) (stating that "the court must examine the totality of the witness's background to determine whether he exhibits *any one or more* of the qualifications listed in Rule 702") (emphasis added).

Here, Plummer sufficiently "'explain[s] how [his] experience leads to the conclusion[s] reached, why that experience is a sufficient basis for [his] opinion, and how that experience is reliably applied to the facts.'" Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC, 691 F. Supp. 2d 448, 473 n. 148 (S.D.N.Y. 2010) (quoting Fed. R. Evid. 702 advisory committee's note). First, Plummer, who has "forty+ years of experience" in the field of analyzing art market economics, valuations, art purchases and sales, and art lending practices, describes the art market in general and outlines the standards and conditions of the art market to provide context for evaluating the loans made by Athena. Plummer Report at 7 (¶ 23). Plummer provides background on private art sales, art advising versus art dealing, and pricing in the art market, all based on his experience advising and working in that market. Id. at 7-8 (¶¶ 24-27). With this context as a background, Plummer then explains the "critical" role of adequate due diligence on title, given the "secretive and opaque" nature of art-market transactions, with which he has significant relevant experience. Id. at 13-15 (¶¶ 31-36).

Plummer also opines on the standards for Athena's diligence on artwork collateral and the "macro business issues" impacting Athena's due diligence. Id. at 16-29 (¶¶ 37-51). In these

9

sections of his Report, Plummer provides further context for industry standards in the art market and situates the standards of Athena's due diligence, and the due diligence that was performed vis-à-vis the operative transactions. Id. In concluding that Athena's due diligence was inadequate Plummer bases his conclusion on his former experience working in Sotheby's treasury department approving dealer credit arrangements and managing Sotheby's first long-term, asset-backed dealer loan. Id. (¶ 44 (a)). And he situates his conclusion within the broader context of "the extreme lack of regulation and transparency in the art world." Id. (¶ 44 (e)); id. at 29 (¶ 50).

Plummer's testimony on these points will provide relevant context of the market in which Athena made the operative transactions—a landscape which lay individuals may possess little or no knowledge about. Plummer's testimony will also outline what he opines to be best practices in that market and what red flags should be apparent when performing diligence on a transaction like the ones at issue here (and what red flags he believes should have been apparent to Athena). See, e.g., id. at 24 (¶ 44 (k)). Such testimony will undoubtedly "assist the trier of fact to understand the evidence." Fed. R. Evid. 702.

Athena points to excerpts from Plummer's deposition where he testified that he "can't speak to general asset-backed lending." See Athena's Br. at 17. But, as detailed above, Satfinance has not put Plummer forth as an expert on general asset-backed lending. The opinions in the Plummer Report are limited to the art market, the art finance industry, and the best business practices therein. See Plummer Report at 39-41. Satfinance is thus not attempting to have Plummer opine on subject matters unrelated to his area of expertise. In sum, based on his extensive relevant experience, Plummer is qualified to serve as an expert on art industry standards for underwriting asset-back loans secured by pieces of art, as occurred in this case. See Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp., 97 F. Supp. 3d 485, 506 (S.D.N.Y.

10

2015) (determining that more than two decades of experience in relevant field was sufficient to qualify expert despite lack of relevant formal educational training); Sec. & Exch. Comm'n v. Ripple Labs, Inc., No. 20-CV-10832 (AT), 2023 WL 5670711, at *4 (S.D.N.Y. Mar. 6, 2023) (finding that expert's "years" of practical experience and specialized knowledge qualified expert to provide testimony despite lack of formal relevant training); Russo v. Keough's Turn of the River Hardware, LLC, No. 11-CV-994 (VB), 2012 WL 4466626, at *3 (S.D.N.Y. Sept. 25, 2012) (determining that expert was qualified, due to his background education and experiences, despite lacking "a degree or training narrowly matching the point of dispute"), aff'd, 529 F. App'x 50 (2d Cir. 2013); Pyskaty v. Wide World of Cars, LLC, No. 15-CV-1600 (JCM), 2019 WL 917153, at *4 (S.D.N.Y. Feb. 25, 2019) (finding expert appropriately qualified based on "decades of practical experience" despite expert failing relevant recertification test).[2]

B. Plummer failed to disclose a prior expert report and a prior relationship with Athena, but neither basis supports preclusion of his testimony.

Athena further seeks to exclude Plummer's testimony based on his failure to disclose: (1) that he served as an expert in another case, Overton v. Art Finance Partners LLC, Case No. 15-CV-3927, and issued a report in that case upon which he relied here (see ECF No. 223-6,

---

[2] In the last section of his Report, Plummer outlines "specific" errors and omissions in Athena's credit due diligence with regards to the operative loans. See Plummer Report at 30-38 (¶¶ 52-63). Plummer discusses the specific red flags that should have been apparent to Athena when performing due diligence on the operative loan transactions. Id. Athena takes issue with the fact that Plummer "did not review Athena's entire credit file regarding [the individual to which the loan was extended]," and that Plummer "did not review the Subordination and Assignment Agreement" between that individual and Athena. Athena Br. at 21-22. However, Athena's objection that Plummer failed to consider these documents goes to the weight, not the admissibility, of his testimony. See GeigTech East Bay LLC, 2023 WL 6614486, at *21 (explaining that an objection that an expert failed to consider certain evidence or failed to address certain issues go to the weight of the expert's opinion, not its admissibility); Cooper Crouse-Hinds, LLC v. City of Syracuse, N.Y., 568 F. Supp. 3d 205, 221 (N.D.N.Y. 2021) (same).

"Overton Report")³; and (2) that he had a prior business relationship with Athena upon which he relied in reaching his expert opinion here. See Athena's Br. at 1-3, 9-16; Athena's Reply at 2-7. For the reasons explained below, Plummer was required to disclose this information pursuant to Rule 26(a)(2), but his failure to do so is sufficiently harmless that it does not warrant preclusion under Rule 37(c)(1).

   1. *Disclosure of Plummer's Prior Report*

Athena claims that in creating his Report, Plummer relied on the Overton Report and was thus required to disclose that report. Athena's Br. at 9-14. Athena points to certain similarities between the two reports, such as the organization of the reports, and the fact that certain sections included in Plummer's Report are copied from the Overton Report. Id. at 11. Athena also points out the similarity in some of the factual content contained in the Overton Report with the factual content contained in the Report created for this case. Id. at 11-12.

In his deposition, Plummer testified that the Overton Report was the "starting point" for his report in this case. See ECF No. 223-1 at 11, 29. Plummer testified that he relied on "aspects [and] descriptions of particularly the credit industry" in the Overton Report that "[he] thought

---

³ In 2016, Plummer was retained by Athena's counsel to opine on the appropriate level of due diligence when lending against valuable artwork. See Overton Report at 3. In the Overton Report, Plummer analyzed the due diligence on a prospective borrower prior to extending the art-based loan, and concluded that under the specific circumstances of that case, the due diligence performed was reasonably within the standards of the market at the time. See id. at 11-22. Because Plummer's Report in this case concludes that the due diligence conducted in this case was *not* in line with market standards, Athena argues that the Report should be excluded because of the inconsistency between the conclusion reached therein and the opposite conclusion reached in the Overton Report. See Athena's Br. at 11-13. Notwithstanding that the two reports analyze different transactions involving distinct facts and occurring years apart, any alleged "gaps or inconsistencies" in Plummer's reasoning between the two reports goes "to the weight of the evidence, not to its admissibility." Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001) (explaining that arguments concerning gaps or inconsistencies in the reasoning leading to an expert's opinion go to the weight of the evidence, not its admissibility) (citations omitted).

were highly relevant to this report." Id. at 17. A comparison of the two reports also reveals substantial similarities in the sections regarding the general nature and conditions of business in the art market (compare Overton Report at 7-10 with Plummer Report at 6-14), confirming Plummer's reliance on specific information from the Overton Report in creating his Report here.

Because Plummer used such specific information from the Overton Report in creating his Report, Plummer should have disclosed the Overton Report pursuant to Rule 26. Rule 26(a)(2) "contemplates that the proponent of the expert testimony is responsible for disclosure and that such disclosure includes the underlying facts or data." Howard Univ. v. Borders, No. 20-CV-4716 (LJL), 2021 WL 9563256, at *1 (S.D.N.Y. Feb. 1, 2021) (citations omitted). "[F]acts or data considered" by a testifying expert include "documents relied on by an expert" and "any documents 'that were provided to and reviewed by the expert.'" Aniero Concrete Co., Inc. v. N.Y.C. School Const. Auth., No. 94-CV-9111 (CSH) (FM), 2002 WL 257685, at *3 (S.D.N.Y. Feb. 22, 2002). As the Advisory Committee Notes make clear, "the intention" behind the rule "is that 'facts or data' be interpreted broadly to require disclosure of *any* material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26(a) Advisory Committee Notes to the 2010 Amendment (emphasis added). Courts have thus interpreted the disclosure obligation in Rule 26 broadly. See Amster v. River Cap. Int'l Grp., LLC., No. 00-CV-9708 (DC) (DF), 2002 WL 1733644, at *2 (S.D.N.Y. July 26, 2002) (describing the expert disclosure requirements of Rule 26(a) as "broad"); Thieriot v. Jaspan Schlesinger Hoffman LLP, No. 07-CV-5315 (TCP) (AKT), 2011 WL 4543308, at *5 (E.D.N.Y. Sept. 29, 2011) (same).

By Plummer's own admission, the Overton Report contained facts that he relied upon when creating the Report in this case. See ECF No. 223-1 at 11, 17, 29. Although Satfinance argues that the facts Plummer relied on were not unique to Overton, see Satfinance's Br. at 9-11,

13

Satfinance does not point to any case that construes the disclosure obligation so narrowly. Further, Satfinance does not dispute that Plummer used facts and data from the Overton Report in reaching his opinions here. The Overton Report should therefore have been disclosed.[4]

Athena, however, has not demonstrated that it has suffered any prejudice from the failure to disclose the Overton Report, such that exclusion of the Plummer Report is required. See Tardif v. City of N.Y., 344 F. Supp. 3d 579, 606 (S.D.N.Y. 2018) (denying motion to exclude testimony because no prejudice from failure to disclose); see also Vioni v. Providence Invest. Mgmt, LLC, 750 Fed. Appx. 29, 32 (2d Cir. 2018) (stating that before precluding expert testimony based on nondisclosure, a district court must first consider the prejudice suffered by the opposing party as a result of the nondisclosure). First, Athena knew about the Overton Report before Plummer's deposition. Indeed, it questioned Plummer about that report at the deposition. See ECF No. 223-1 at 11, 17, 29. Athena's expert also knew about the Overton Report because he discussed it in his own report. See ECF No. 243-4 at 4-5, 7-9, 11 (¶¶ 12, 13, 16, 19, 26). Athena thus had an opportunity to question Plummer about the Overton report and to have its own expert challenge the conclusions reached by Plummer in that report. The disclosure obligation in Rule 26 is intended to prevent "surprise" or "trial by ambush." Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2022) (citations and internal quotation marks omitted). That, however, is not at issue here given that Athena knew of the Overton report and used it in Plummer's deposition and in its own expert's report. Preclusion of the Plummer Report

---

[4] Satfinance's assertion that Plummer was not required to disclose the Overton Report in this case because his engagement in Overton was more than six years old is correct. See Moya v. Hall, No. 18-CV-5337 (LAK) (KHP), 2020 WL 11634299, at *4 (S.D.N.Y. July 13, 2020) (explaining that Rule 26(a)(2)(B) requires expert disclosures to contain "a list of all other cases in which during the previous 4 years, the witness testified as an expert at trial or by deposition"). Athena's argument, however, is not that Plummer was required to disclose the Overton Report based on when it was prepared, but instead that Plummer was required to disclose the Overton Report because he relied on it to form his opinions in this case. See Athena's Br. at 9-14.

on this basis is thus not warranted. See Capitol Recs., LLC v. Escape Media Grp., Inc., No. 12-CV-6646 (AJN), 2015 WL 1402049, at *25 (S.D.N.Y. Mar. 25, 2015) (finding preclusion unwarranted where information was produced to the opposing party before the expert's deposition thus giving the opposing party a chance to question the expert about such information).

2. *Disclosure of Plummer's Prior Relationship with Athena*

Athena also contends that Plummer failed to disclose that he relied upon "personal interactions" he had with Athena personnel that formed the basis of his opinions in his Report in this case. See Athena's Br. at 14-16. In his deposition, Plummer testified that an individual at Athena, Andrea Danese, was "one of multiple sources" he relied on for a paragraph in his report. See ECF No. 223-1 at 52. That paragraph discusses the "most common rule of thumb" when using art as a collateral for loan, which is to use the "low estimate" from an auction house, or a "conservative" fair market valuation from a well-established appraiser and taking "50% of that" as the applicable loan-to-value ratio. Plummer Report at 8 (¶ 28). Plummer also testified that "observing" Danese and another individual at Athena, Cynthia Sachs, formed the basis of one of his conclusions that members of Athena's senior team were under "intense pressure" during the operative underwriting processes. See ECF No. 223-1 at 84; Plummer Report at 39 (¶ g).

As discussed, Plummer was required to disclose *any* facts or data that informed the opinions he reached in his Report. And "'facts or data' [should] be interpreted broadly to require disclosure of *any* material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26(a) Advisory Committee Notes to the 2010 Amendment (emphasis added); Amster, 2002 WL 1733644, at *2 (describing the expert disclosure requirements of Rule 26(a) as "broad"). Plummer therefore should have disclosed the personal

15

interactions and conversations he had with Athena personnel that he admits he relied on as the basis for at least some of the opinions in the Report.

Regardless, Athena knew of these interactions and conversations before Plummer's deposition. At his deposition, Athena asked him what he relied on for the two specific paragraphs in his Report and Plummer testified that he relied on a conversation with Danese for one paragraph, and that he relied on observations of Danese and Sachs for the other. ECF No. 223-1 at 52, 84. Athena thus had a chance to question Plummer about the interactions, and in fact did so. Because this too was information Athena was aware of and was able to inquire about at Plummer's deposition, the failure to disclose is sufficiently harmless that preclusion of the Plummer Report on this basis is also not warranted. See In re Term Commodities Cotton Futures Litig., No. 12-CV-5126 (ALC) (KNF), 2018 WL 2021641, at *5 (S.D.N.Y. Mar. 23, 2018) (finding preclusion of expert reports unwarranted where defendants were able to conduct depositions and ask about undisclosed facts).

C. Plummer is not biased such that he should be disqualified from serving as an expert in this case.

Lastly, Athena argues that Plummer is biased because of his prior relationship with Athena, that Athena claims did not end well. Athena's Br. at 17. Athena explains that Artvest Partners LLC ("Artvest"), Plummer's former art advisory firm, attempted to enter into a sponsorship agreement with Athena between July 2017 and early 2018, by which Athena would sponsor an art fair managed by Plummer and Artvest. See id. at 15. After disputes arose between Athena and Plummer over the agreement, the parties agreed to an in-person meeting at Athena's office "that degenerated into a heated argument with raised voices." Id. The meeting ended when Athena's CEO asked Plummer to leave the premises, and Athena ultimately did not enter into the sponsorship deal with Plummer and Artvest. Id. Athena explains that shortly thereafter,

Plummer's "entire business collapsed, leading to acrimonious litigation and more emotional meetings." Id. at 16. Athena asserts that the "impact" of these events on Plummer affects Plummer's ability to be an impartial expert in this case. Id.

      The threshold for disqualifying Plummer as biased "is high because many expert witnesses have some level of discernible bias or appearance of bias, and a complete lack of bias is not required." El Ansari v. Graham, No. 17-CV-3963 (VEC), 2019 WL 3526714, at *8 (S.D.N.Y. Aug. 2, 2019) (citation omitted); see also In re MTBE, 2008 WL 1971538, at *13 ("[M]any witnesses are biased to some degree, and lack of bias is not required for expert testimony to be admissible.") (citation omitted); cf. Lippe v. Bairnco Corp., 288 B.R. 678, 688 (S.D.N.Y. 2003) (precluding expert witness testimony because of bias where plaintiffs sought to call as a witness someone who acted as their attorney), aff'd, 99 F. App'x 274 (2d Cir. 2004). Further, courts in this district have allowed experts to testify even where they had a deeper relationships with a party than has been shown to exist here between Plummer and Athena. See Tedone v. H.J. Heinz Co., 686 F.Supp.2d 300, 311 (S.D.N.Y.2009) (allowing testimony from expert who had been employed by defendant for 31 years); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16-CV-1318(GBD) (BCM), 2021 WL 4810266, at *20 (S.D.N.Y. Sept. 30, 2021) (allowing an expert witness who was a senior executive for the firm that paid plaintiffs' legal fees and coordinated their legal strategies and who had personally been involved in numerous aspects of the litigation to testify).

      Athena claims that Plummer impermissibly relied upon "[p]ersonal animus" to form his opinions in the Report. Athena's Br. at 17. Athena, however, has not shown that Plummer even felt such animus against Athena. When Plummer was questioned about how his relationship with Athena ended, he was asked and answered the following:

17

>Q. Sir, is there any reason why you didn't mention the fact that your personal relationship with Athena and Andrea Danese was simply so broken that you were thrown out of his office?
>
>. . .
>
>A. I didn't think it was relevant because I interpreted it differently than you do.
>
>Q. Sir, Mr. Danese said essentially get out of here. I never want to see you again and I think you're incompetent and you don't think that creates an issue of potential bias in this matter?
>
>. . .
>
>A. I disagree with what was said that you're saying was said in our discussion.
>
>. . .
>
>Q. Did it ever occur to you that you may want to see something in a Federal Court expert report . . . that you had a financially significant relationship with Athena and that it ended in a way that resulted in you being kicked to the curb?
>
>. . .
>
>A. I disagree with your characterization of it.

ECF No. 223-1 at 39.

This testimony is all that Athena points to in support of its argument that Plummer is biased. But Plummer testified that he disagreed with Athena's characterization of how the relationship ended and he further testified that when the "disagreement" arose between him and Athena, Plummer "immediately turned [the art fair matter] over to another member [of his team]." Id. In short, the deposition testimony Athena relies on is too thin a basis from which to conclude that Plummer felt that his relationship with Athena ended so acrimoniously that it renders Plummer biased. And, in any case, at trial Athena will have a chance to cross-examine Plummer about their prior relationship and can attempt to elicit testimony to support an inference that Plummer's prior relationship colored his expert testimony. Tedone v. H.J. Heinz Co., 686 F.

Supp. 2d 300, 311 (S.D.N.Y. 2009) (explaining an expert witness's bias goes to the weight, not the admissibility, of the testimony and can be elicited on cross-examination).

## CONCLUSION

For the foregoing reasons, Athena's motion to strike is **DENIED.** The Clerk of Court is respectfully directed to terminate the motion at ECF No. 221.

**SO ORDERED.**

DATED:    New York, New York
          March 14, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge