**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ATHENA ART FINANCE CORP.,                        :

          *Plaintiff,*                              :

      -against-                                  :

that CERTAIN ARTWORK BY JEAN-MICHEL        :
BASQUIAT ENTITLED HUMIDITY, 1982,          :
*in Rem,*                                          :

          *Defendants.*                             :

SATFINANCE INVESTMENT LIMITED and          :
DELAHUNTY LIMITED d/b/a DELAHUNTY           :
FINE ART,                                          :
                                                  :
       *Interested Parties*                        :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -:
                                                  :
SATFINANCE INVESTMENT LIMITED              :
                                                  :
      *Intervenor-Plaintiff,*                     :
                                                  :
      -against-                                  :
                                                  :
ATHENA ART FINANCE CORP. and that          :
CERTAIN ARTWORK BY JEAN-MICHEL             :
BASQUIAT ENTITLED HUMIDITY, 1982,          :
*in Rem,*                                          :
                                                  :
      *Intervenor-Defendants.*                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

Case No. 20-cv-4669 (GBD) (VF)

GEORGE B. DANIELS, United States District Judge:

      This is an *in rem* action arising out of a title dispute over a 1982 painting by Jean-Michel Basquiat

entitled *Humidity* (the "Painting"). Plaintiff and Intervenor-Defendant Athena Art Finance Corporation

("Athena") filed this action seeking to foreclose on the Painting and obtain the court's permission to sell

it. Intervenor Plaintiff and Interested Party Satfinance Investment Limited ("Satfinance") claims it

obtained full title to the Painting. Interested Party and Counterclaim Plaintiff Delahunty Limited d/b/a Delahunty Fine Art ("Delahunty") claims it has a 12.5% ownership interest in the Painting.

Before this Court is Magistrate Judge Valerie Figueredo's October 2, 2024 Report and Recommendations (the "Report"), recommending that Athena's motion for summary judgment be denied. (Report, ECF No. 259.)   The Report also recommends that Satfinance's motion for summary judgment be granted and it be declared to have full legal title to the Painting. *Id*. The Report next recommends that Delahunty's motion for summary judgment be granted, to the extent Delahunty seeks a declaration that Athena has no rights or interest in the Painting. *Id*. Finally, the Report recommends that Delahunty's motion be denied, to the extent it seeks a declaration that it owns a 12.5% ownership interest in the painting that is not impeded by the rights of Satfinance. *Id*.

Athena timely filed objections to certain portions of the Report and did not file objections to others. (*See* Athena's Objection to Report and Recommendations ("Athena Obj."), ECF No. 262.) Delahunty and Satfinance opposed Athena's objections.   (Delahunty's Memorandum in Opposition to Athena's Objection ("Delahunty Opp'n."), ECF No. 265; Satfinance's Memorandum in Opposition to Athena's Objection ("Satfinance Opp'n."), ECF No. 266.) This Court undertakes a *de novo* review of the portions of the Report to which a party objected and a clear error review of the portions to which no party objected. After doing so, this Court ADOPTS Judge Figueredo's Report in full.

## I.      BACKGROUND[1]

### A. Inigo Philbrick Acquires the Painting from Phillips Auctioneers LLC ("Phillips")

Inigo Phillip, a now convicted UK art dealer, did business through his wholly owned and operated entity Inigo Philbrick Limited ("IPL").  (R. 56.1 Statement, ECF No. 172 ("Delahunty R. 56.1") ¶ 1.)  In July 2016, Philbrick, through IPL, purchased the Painting for $12.5 million from Phillips Auctioneers

---

[1] The procedural and factual background is set forth in greater detail in the Report and is incorporated by reference herein.

LLC ("Philips"). (Report at 2–3.) Athena, Satfinance, and Delahunty all agree that IPL acquired the title and ownership of the Painting when it purchased the Painting from Phillips in 2016. (Report at 15; Delahunty R. 56.1 ¶ 2; R. 56.1 Statement, ECF No. 178 ("Satfinance R. 56.1") ¶¶ 28–30; R. 56.1 Statement, ECF No. 176 ("Athena R. 56.1") ¶ 2; *see also* ECF No. 182-20 (private sale agreement between IPL and Phillips; Transcript ("Tr."), ECF No. 257 at 4, 30.) Phillips authorized the release of the Painting to IPL following a completed payment and on or about October 11, 2016, the Painting was released to IPL. (Report at 3; Delahunty R. 56.1 ¶¶ 20–21; Satfinance R. 56.1 ¶ 30; *see also* Clarick Decl. Ex. 17, ECF No. 179-17, at 2; Grossman Decl., ECF No. 184-13, at 6–7.)

## B. Satfinance Agreement

Around the same time that Philbrick purchased the Painting from Phillips in July 2016, Philbrick approached Aleksandar Pesko ("Pesko"), Advisor of Satfinance Investment Limited ("Satfinance") about the possibility of investing in the Painting. (Report at 4; Delahunty R. 56.1 ¶ 4.) On August 10, 2016, Philbrick sent Satfinance a signed bill of sale showing that "they were purchasing the Painting for $18.4 million" from an entity named "SHK Management Corp." ("SHK"), not from Phillips. (Satfinance R. 56.1 ¶ 10; ECF No. 180-1 (Bill of Sale); Athena Obj. at 5; *see* Report at 4.) On August 11, 2016, Philbrick and Satfinance entered into a one-page agreement to jointly purchase the Painting for $18.4 million. (Report at 4, 16; ECF No. 180-3 ("Satfinance Agreement").) That same day, Philbrick sent Satfinance the agreement and issued Satfinance an invoice, which expressly incorporated the terms of the "side letter" agreement for sale. (Report at 4–5; ECF No. 180-4 ("Satfinance Invoice"), at 3.) The invoice indicated that "[f]ull title [was] to be transferred from [IPL] to SatFinance upon receipt of above balance." (*Id.*) Satfinance paid IPL $10.5 million on August 12, 2016 and $1.7 million on September 6, 2016. (Payment Confirmations, ECF No. 180-5, at 2–3.) The email also stated that $12.2 million represented a "66%

share" in the Painting. (Satfinance Invoice at 2.) Satfinance never had physical possession of the Painting. (Report at 5.)

The August 11, 2016 agreement between Satfinance co/o Pesko and Philbrick stated that Pesko and Philbrick "intend to jointly purchase" the Painting for $18.4 million. (Satfinance Agreement; Report at 4.) Under the terms of this agreement, Satfinance contributed 50% of the purchase price, or $9.200,000, and Philbrick contributed $6.200.000. (Satfinance Agreement.) Satfinance agreed to loan Philbrick $3 million, to "be secured against the artwork" and designated senior to Philbrick's contribution. (*Id.*) The agreement also stated that Pesko and Philbrick would "jointly own the work" and that Satfinance "shall hold full title to the artwork," in addition to a statement that "[f]or the avoidance of doubt SatFinance shall hold full title to the [Painting]." (*Id.*) Lastly, the parties agreed that their interests in the Painting would "not be diluted, transferred, or otherwise encumbered during the duration of this agreement" and that the "agreement is terminated only upon completed sale of the [Painting]." (*Id.*)

On September 14, 2016, Philbrick emailed Pesko a second agreement of sale dated August 10, 2016 and a bill of sale dated August 15, 2016. (Report at 4; ECF No. 180-2.) It was later discovered that these documents were fake and that Philbrick lied to Satfinance about the identity of the seller and the purchase price. (Report at 4.)

## C. Delahunty Agreement

In July 2016, around the same time Philbrick approached Satfinance, Philbrick also discussed the possibility of a joint purchase of the Painting with Damien Delahunty, the Managing Director of Delahunty. (Report at 5; Delahunty R. 56.1 ¶ 16.) On August 18, 2016, Philbrick sent Delahunty a bill of sale listing SKH Management Corp. as the seller and IPL as the buyer. (Delahunty R. 56.1 ¶ 18.) The purchase price was listed as $22 million. (Delahunty R. 56.1 ¶ 18.) IPL issued an invoice to Delahunty on November 1, 2016 for $2.75 million, which stated that IPL would retain title and that Delahunty would

receive 12.5% of the Painting. (Report at 6.) Subsequently, Delahunty made two payments to IPL. The first payment of $2.53 million was made on November 1, 2016. (Report at 6.) The remaining balance of $220,000 was paid with "funds on account" that Delahunty had with IPL. (Report at 6.) Delahunty, like Satfinance, never had physical possession of the Painting. (Report at 6.)

### D. Athena Agreement

Philbrick also wholly owned 18 Boxwood Green Limited ("Boxwood"), a limited liability company incorporated under the laws of the Bailiwick of Jersey. (Satfinance R. 56.1 ¶ 32; Satfinance Resp. to Athena R. 56.1 ("Statfinance 56.1 Resp."), ECF No. 196 ¶ 3.) In March 2017, Athena and Boxwood entered into a Loan and Security Agreement ("LSA") to provide Boxwood with a revolving loan facility ("Loan") with an initial amount of $10 million. (Satfinance R. 56.1 ¶ 34; Statfinance 56.1 Resp. ¶ 4.) Under the LSA, Boxwood pledged several artworks as collateral for the Loan. (Report at 7.) Joseph Betts, an independent director of Boxwood, signed the LSA. (Report at 7.) Philbrick personally guaranteed the debt and IPL provided a corporate guarantee of the debt. (Report at 7; Satfinance R. 56.1 ¶ 37.)

On April 7, 2017, IPL purported to transfer the Painting to Boxwood and Boxwood pledged the Painting to Athena as collateral on the Loan. (Satfinance R. 56.1 ¶ 36; Report at 7.) Under the LSA, "Boxwood represented and warranted that it was 'the sole and absolute lawful and beneficial owner' of the Painting and that it had 'the authority to sell and/or transfer good and marketable title to' the work." (Satfinance R. 56.1 ¶ 38.) The "transfer of title," signed by Philbrick on IPL's behalf, stated:

> For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and is set forth on the invoice attached hereto, on 7-April-2017, INIGO PHILBRIK LTD . . . transferred to 18 BOXWOOD GREEN LIMITED . . . all right title and interest to the [Painting].

(Report at 7; Delahunty R. 56.1 ¶¶ 37-41; Athena R. 56.1 ¶ 10.)  An invoice from IPL to Boxwood for $12.5 million for the Painting was attached to the transfer.  (Report at 7.)  That same day on April 7, 2017, Philbrick physically delivered the Painting to Athena's storage facility in New York.  (Report at 8.)

In October 2019, two years after entering into the LSA, Boxwood defaulted on the loan.  (Athena Memo., ECF No. 174 at 7.)  On October 14, 2019, Athena sent Boxwood, Philbrick, and IPL default notices.  (Report at 8.)  On October 18, 2019, Satfinance emailed Athena notifying it that Satfinance owned the Painting and demanding that Athena "not take any steps to purport to sell, transfer, pledge, mortgage, dissipate or in any way deal with the [Painting] without giving [Satfinance] fourteen days' notice in writing[.]"  (Satfinance R. 56.1 ¶ 43; Report at 8.)  Subsequently, New York County Supreme Court "entered a judgment for Athena and against Boxwood, IPL, and Philbrick in the amount of $14,306,800.47 ($13,500,000 of outstanding loan principal and the then-outstanding and accrued interest as of the date of the order)."  (Report at 8.)

### E.  Philbrick is Convicted of Wire Fraud

In April 2020, a criminal complaint was filed in this district against Philbrick charging him with one count of wire fraud and one count of aggravated identity theft in relation to his art business, including his dealings at issue here with the Painting.[2]  (Philbrick Compl., ECF No. 179-31.)  Philbrick pled guilty to one count of wire fraud in November 2021 and was sentenced to seven years imprisonment and ordered to pay forfeiture of $86,672,790.00.  (Report at 9; Philbrick Judgement, ECF No. 179-33.)  At his sentencing, Philbrick admitted to making "material misrepresentations and omissions to art collectors, investors and lenders to access art and obtain sale proceeds, fundings and loans."  (Report at 9.)  He also admitted to knowingly misrepresenting "the ownership of certain artworks; for example, by selling

---

[2] The complaint was unsealed on June 12, 2020.  (Report at 8.)

artworks and/or using artworks as collateral on loans without the knowledge of co-owners and without disclosing the ownership interest of third parties to buyers and lenders." (Report at 9–10.)

## F. Procedural Background

On June 2, 2020, Athena commenced this *in rem* action to quiet title to the Painting in New York State Supreme Court. (Report at 10, Satfinance Mot. for Summ. J. ("Satfinance SJ Mot."), ECF No. 177, at 7.) Satfinance removed the case to this Court on June 18, 2020. (Report at 10; Notice of Removal, ECF No. 8.) Delahunty joined the proceedings on June 23, 2020. (Report at 10; ECF Nos. 10–11.) On July 30, 2020, Delahunty filed its answer, which included a counterclaim seeking a declaration stating that it has a 12.5% ownership interest in the Painting. (Report at 10; Answer, ECF No. 26, at 6.) Satfinance filed an intervenor complaint on July 31, 2020 to claim full title to the Painting on the grounds that that it never transferred title to the Painting and that it remains the sole title holder, and is thus entitled to the return of its property. (Report at 10; Intervenor Compl., ECF No. 30; Satfinance SJ Mot. at 8.)

Fact discovery concluded on January 12, 2023 and expert discovery closed on May 4, 2023. (Report at 10, ECF Nos. 148, 164.) Each of the parties submitted motions for summary judgment on July 20, 2023. (*See* ECF Nos. 170, 173, 175.) After briefing and oral argument, Magistrate Judge Figueredo submitted the Report on October 2, 2024. (*See* Report; Oral Arg. Tr., ECF No. 257.) This Court heard additional oral argument on January 22, 2025. (Jan. 22, 2025 Oral Arg. Tr., ECF No. 281.)

## II. LEGAL STANDARDS

### A. Reports and Recommendation

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). When there are no objections to a magistrate judge's report, a district judge reviews the report for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. Feb. 7, 2006) (citations omitted). The court must review *de novo* the

portions of a report to which a party properly objects. *Id.* at 347. However, "[w]hen a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. Mar. 6, 2009). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

## B. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quotation omitted).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted). Rather, the opposing party must produce "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). In this regard, "[t]he mere existence of a scintilla of evidence supporting

the non-movant's case is [] insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quotation omitted). In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Id.*

## III.    DISCUSSION

The parties agree that Athena's security interest is limited to whatever Boxwood's rights were and that IPL originally obtained title and ownership of the Painting in 2016, when IPL purchased the Painting from Phillips. (Report at 14–15.) Thus, the issues for this Court to resolve are (1) whether Satfinance has full title in the Painting and (2) whether Athena has a security interest in the Painting at all. (*See id.* at 13.)

### A.  Satfinance Has Full Title to the Painting

Under New York law, a security interest is perfected at the time it attaches. *In re Overbaugh,* 559 F.3d 125, 129 (2d Cir. 2009). "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." *Id.* A security interest is enforceable when "(1) value has been given," "(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party," and "(3) the debtor has authenticated a security agreement." N.Y. U.C.C. §§ 9-203(a), (b); *see United States v. Mann*, 729 F. Supp. 3d 257, 267 (N.D.N.Y. April 5, 2024) (discussing U.C.C. § 9-203(b)); *see also Overbaugh,* 559 F.3d at 129; *see also Logan & Kanawha Coal Co., Inc. v. Banque Francaise Du Commerce Exterieur,* 868 F. Supp. 63, 66 (S.D.N.Y. Nov. 10, 1994). Lastly, "[a]s a general matter, a security interest cannot attach to property if the "debtor"—the person purporting to own the property—does not actually have either (1) a sufficient interest in the collateral, or (2) the right to transfer it to the creditor." *Mann*, 729 F. Supp. 3d at 268; *see* U.C.C. § 9-203(b); *see also Matter of Emergency Beacon Corp.,* 665 F.2d 36, 40 (2d Cir. 1981) ("Notwithstanding any agreement between the debtor and

9

the creditor, if the debtor has no rights in the collateral, no security interest in that collateral comes into existence").

Athena objects to Magistrate Judge Figueredo's analysis on the grounds that the terms of the Satfinance agreement were ambiguous and thus need to be submitted to a jury. (Athena Obj. at 10.) More specifically, Athena argues that (1) IPL was not a party to the agreement, thus rendering ambiguous whether there was any intent to transfer interest from IPL, and (2) if that intent is established, the evidence is contradictory as to what percentage interest actually transferred to Satfinance. (*Id.*)

First, Athena points out that the Satfinance agreement lists Philbrick, not IPL, as a party to the agreement and that it does not name a seller. (*Id.* at 11.) Athena also takes issue with Magistrate Judge Figueredo's reliance on the invoice as evidence that the agreement involved IPL, challenging that determination as an improperly resolved question of fact. (Athena Rep. at 7.) While it is true that whether "multiple writings should be construed as one agreement depends upon the intent of the parties" and "is typically a question of fact for the jury," it is also true that "if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (internal quotations omitted).

Under New York law, "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." *This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998). In other words, the "legally operative question" is simply "whether the contracts were part of a single transaction intended to effectuate the same purpose." *TVT Recs.*, 412 F.3d at 90. Here, the invoice and the agreement were explicitly delineated as part of the same transaction, intended to effectuate the same

purpose. (*See* Satfinance Invoice at 3 ("Partnership as detailed in side letter dated 11 August, 2016")). Thus, the invoice and agreement are and should be considered as part of the same contract.

Through that lens, it is clear that the parties meant to transfer an interest to Satfinance from IPL. The invoice is issued from IPL, lists IPL's bank account, and notes that "Full title [is] to be transferred from Inigo Philbrick Limited to Satfinance." (*Id.* at 2–3.) Satfinance made its payments to IPL's bank account. (Satfinance Payments, ECF No. 180-5.) That the agreement lists Philbrick—who wholly owned and operated IPL—as a party does not make the parties' intent ambiguous or create an issue of fact where there clearly is none.

In the same vein, there is no genuine ambiguity as to the parties' share in title. Athena argues that the Satfinance agreement contains "myriad contradictory provisions regarding ownership," noting that the agreement states that "Satfinance shall hold full title" while also stating on multiple occasions that Satfinance and Philbrick would share in ownership of the painting. (Athena Obj. at 11.) As Magistrate Judge Figueredo and Satfinance note, however, these are not contradictory statements at all. Rather, it is a well-accepted tenet of New York law that legal title and beneficial ownership are separate property rights, and that those rights can be disposed of separately. (*See* Report at 17–18 (citing cases).) Against this legal context, the agreement does not contain any contradictions regarding title at all: the parties explicitly state multiple times that Satfinance holds full title to the Painting. (*See* Satfinance Invoice at 2–3; Satfinance Agreement.) That Satfinance and IPL may have shared ownership interests does not undermine that conclusion. And given the clear legal delineation between title and ownership, the parties did not need to "mention[] the distinction between legal and equitable ownership" for the distinction to apply. (Athena Rep., ECF No. 269, at 9.)

Athena further submits that one specific provision in the agreement renders legal title ambiguous: the provision that states "both parties agree that their share in the title will not be diluted, transferred, or

otherwise encumbered." (*See* Athena Obj. at 11; Athena Rep. at 8–9.) But this provision is also not contradictory. Despite Athena's protests to the contrary, the natural reading of this provision is that the parties' shares, whatever they might be, will not be diluted, transferred, or otherwise encumbered. This does not necessitate the conclusion that each party has a particular share, or that "each party had a 'share in the title,'" as Athena posits. (Athena Obj. at 12.) The provision is executable when one party (here, Satfinance) holds full title, and is therefore not contradictory. Beyond this provision, as discussed above, there is no real ambiguity with respect to legal title; Athena's remaining examples of ambiguity are all statements regarding ownership, which is distinct. (*See* Athena Obj. at 11–12*); Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) ("Parties to a contract may not create an ambiguity merely by urging conflicting interpretations of their agreement.").[3]

In sum, the Satfinance agreement is not ambiguous, nor does it contain contradictory provisions regarding ownership and title. Satfinance obtained and holds full title in the Painting.

## B. IPL's Share of Ownership[4]

The record makes less clear what Satfinance's and IPL's exact shares of ownership in the Painting were. Under the terms of the agreement, IPL and Satfinance were to "jointly own the work" and share any profits from the Painting's sale equally. (*See* Satfinance Agreement.) On the other hand, Satfinance loaned IPL an additional $3 million towards IPL's share, which led to the statement that Satfinance had a "66% share in the work." (*See id.*; Satfinance Invoice; Report at 18.) Thus, it is a dispute of fact whether

---

[3] Plaintiffs cited *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525 (2d Cir. 1990), at oral argument and in its briefing, for the proposition that this Court may not consider extrinsic evidence (including the parties' invoice and correspondence) at the summary judgment stage. (Oral Arg. Tr. 25:18–22; Athena Obj. at 13.) But this is incorrect. *Burger King* stands for the proposition that summary judgment is *normally* inappropriate when a contractual term is ambiguous, but that a district court is only fully precluded from entering summary judgment if the extrinsic evidence is *conflicting. Burger King*, 893 F.2d at 528. As discussed, there is actually no ambiguity regarding the contractual terms at all, and Athena may not introduce ambiguity where there is none. Further, the "extrinsic evidence" here is actually not conflicting at all when properly viewed against the legal backdrop of the legal title/beneficial ownership distinction.

[4] The parties do not object to the findings in this section.

Satfinance had a 50% or 66% ownership interest, and whether IPL had a 50% or 34% interest. Regardless, IPL had sufficient ownership interest to transfer a 12.5% interest to Delahunty in accordance with the November 1, 2016 agreement. (*See* Delahunty Agreement.) Thus, as Magistrate Judge Figueredo concluded, IPL, Delahunty, and Satfinance each had an ownership interest in the Painting after the transaction between IPL and Delahunty. Since Athena could have obtained whatever security interest Boxwood had in the Painting, it is necessary to determine what ownership rights, if any, IPL transferred to Boxwood. (*See* Report at 19.)

## C. IPL's Sale to Boxwood Was a Fraudulent Conveyance[5]

Section 276 of New York Debtor and Creditor Law governs fraudulent conveyances. N.Y. Debt. & Cred. Law § 276. "To prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)). "Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." *Sharp*, 403 F.3d at 56 (quoting *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994)). "The burden of proving 'actual intent' is on the party seeking to set aside the conveyance." *Sharp*, 403 F.3d at 56 (quoting *McCombs*, 30 F.3d at 328).

Fraudulent intent "is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act." *Amusement Indus., Inc. v. Midland Ave. Associates, LLC*, 820 F. Supp. 2d 510, 530 (S.D.N.Y. Sep. 27, 2011); *see S.E.C. v. Smith*, 646 Fed. Appx. 42, 45 (2d Cir. 2016). As a result, "creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent." *Amusement Indus.*, 820 F. Supp. 2d at 530; *see Sharp*, 403 F.3d at 56. Factors that are considered "badges of fraud" include "(1) a close relationship between the parties to the transaction, (2) a

---

[5] The transfer between IPL and Boxwood was an actual, not constructive, fraudulent conveyance. (Report at 22 n.10).

secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Amusement Indus.*, 820 F. Supp. 2d at 530 (internal quotations and citations omitted); *see Sharp*, 403 F.3d at 56.

1. Satfinance and Delahunty Are Creditors Under the Fraudulent Conveyance Statute

"In order to bring a cause of action for fraudulent conveyance, the plaintiff must be a creditor of the transferor of the alleged fraudulent conveyance." *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006). A creditor is "a person that has a claim," which is "a right to payment." N.Y. Debt. & Cred. L. § 270(3)(c)–(d). This includes "one who has a right to maintain a tort action but has not recovered judgment at the time of the transfer." *Drenis*, 452 F. Supp. 2d at 428.

Athena argues that Satfinance and Delahunty are not creditors under the statute because they have not alleged any pre-existing tort claim other than the fraudulent conveyance itself, and they do not have a right to recovery any money that IPL owes them. (Athena Obj. at 19–20.) This is unavailing. First, Satfinance is a creditor of IPL in the most traditional sense of the term, in that it loaned IPL $3 million. (*See id.*) Further, Delahunty and Satfinance both purchased ownership interests in the Painting, which gives them creditor standing because any unlawful disposition of the Painting would impact their share of the proceeds and damage the values of their interests in the Painting. *See Perrone v. Amato*, No. 09CV0316TCPAKT, 2010 WL 11629624, at *11 (E.D.N.Y. Aug. 30, 2010) ("When Plaintiff signed the contract with Rose Ann Amato—and upon the transfer of the Home's title to her—he received rights in that Home and the proceeds therefrom. This gave him "creditor" status.").

## 2. There Is Clear Intent to Defraud on IPL's Part

Athena objects to Magistrate Judge Figueredo's reliance on Philbrick's plea colloquy to show intent to defraud, arguing that the evidence shows that Philbrick's intent was to defraud Athena, not Delahunty or Satfinance, and that the plea colloquy was too general to show an intent to defraud Satfinance and Delahunty. (*See* Athena Obj. at 21–22.) On the first point, Philbrick admitted in his plea that he "us[ed] artworks as collateral on loans without knowledge of co-owners." (Delahunty R. 56.1 ¶ 56.) This is a clear, direct admission of the very act Delahunty and Satfinance were subject to: IPL used the Painting as collateral on a loan without informing the Painting's co-owners, Satfinance and Delahunty. It is thus clear that included in Philbrick's plea was an admission to defrauding the relevant artworks' co-owners— including Satfinance and Delahunty. That Philbrick may have *also* intended to defraud lenders such as Athena does not mean he did not intend to defraud co-owners as well.

Second, Athena cites to no authority for the proposition that plea colloquies may not be used to demonstrate fraudulent intent. By contrast, there is ample authority to support the use of such statements to show intent, given that Philbrick's crime includes intent to defraud as a specific element and his guilty plea is an admission of all elements of the crime. *See United States v. Rosen*, 409 F.3d 535, 549 (2d Cir. 2005) ("A guilty plea is . . . an admission of all the elements of a formal criminal charge.") (quotation marks and citations omitted); *Masoud v. Holder*, 487 F. App'x 633, 635 (2d Cir. 2012) (noting that wire fraud includes "specific intent to defraud" as an element).

Thus, Philbrick's guilty plea establishes conclusively that IPL acted with an intent to defraud Satfinance and Delahunty.

## 3. Alter Ego Theory

Athena lodges various objections as to why it should be protected from the fraudulent conveyance statute. First, it argues that IPL and Boxwood were alter egos, and that their separate corporate identities

(and the IPL/Boxwood transfer) were therefore irrelevant.  (Athena Obj. at 14–14.)  Athena cites no authority for the proposition that alter egos are free to engage in any transactions they choose, protected from the fraudulent conveyance statute simply because they are vehicles for the same person.  By contrast, there is ample caselaw demonstrating that alter-ego entities can participate in fraudulent conveyances with each other.  *See, e.g., Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 CIV. 11765, 2002 WL 31050846, at *6 (S.D.N.Y. Sept. 12, 2002) (holding that plaintiff stated a claim for fraudulent conveyance between two corporations alleged to be alter egos); *Moss v. Garcia-Chamorro*, 974 N.Y.S.2d 62 (2013) (affirming judgment based on "piercing the corporate veil . . . and fraudulent conveyance").  As such, Athena's objection is without merit.

4. Indispensable Parties

Next, Athena argues that IPL and Boxwood were necessary parties to this action, such that this Court "cannot set the IPL-Boxwood conveyance aside without their participation in the case."  (Athena Obj. at 15.)  Under Federal Rule of Civil Procedure 19, a party is necessary to an action if the Court cannot grant complete relief to the present parties without it.  Fed. R. Civ. P. 19(a)(1); *see MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006).  "The only necessary parties to a fraudulent conveyance action are the transferee and any other party who may claim an interest in the property conveyed."  *Lyman Com. Sols., Inc. v. Lung*, No. 12 Civ. 4398, 2013 WL 4734898, at *8 (S.D.N.Y. Aug. 30, 2013).  However, "an earlier transferee who has parted with all interest in the transferred property is not necessary in a suit against a subsequent transferee."  *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 744 (Bankr. S.D.N.Y. 2008).  Both IPL and Boxwood received notice of this action, and declined to join to assert any claim.  (*See* Notice of Removal, ECF No. 8-1.)

Here, IPL is the transferor, not the transferee.  And since IPL transferred "all right title and interest" that it had in the Painting to Boxwood, it had no remaining interest in the Painting that would render it a

necessary party. (Delahunty R. 56.1 ¶¶ 37-41; Athena R. 56.1 ¶ 10.) Athena argues that IPL had an interest because it would regain its original interest in the Painting if the IPL/Boxwood transfer is deemed a fraudulent conveyance, but this is not the type of "interest" the rule considers. (*See* Athena Obj. at 16–17); *Lung*, 2013 WL 4734898 at *8 (holding that the transferor of property was not a necessary party). By Athena's logic, every transferor would be a necessary party to a fraudulent conveyance action because every transferor would have their original interests returned if the conveyance was set aside. That is not the rule. Thus, IPL is not a necessary party to this action on the basis that it was the transferor.

As the transferee, Boxwood would be a necessary party to this action unless it has "parted with all interest in the transferred property," thus making it an "earlier" transferee. *Fabrikant*, 394 B.R. 744; *see Skillen v. Endelman*, 39 Misc. 261, 79 N.Y.S. 413, 416 (Sup. Ct. 1902) ("A fraudulent grantee or transferee, after he has conveyed or transferred all the property to another . . . is not a necessary party."). Athena insists that Boxwood did not part with any of its interests in the Painting when it put the Painting up as collateral or when it defaulted. (Athena Obj. at 16.) Importantly, however, Boxwood parted with possession of the property when it turned the Painting over to Athena. *See Fabrikant*, 394 B.R. 721, 744–45; 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 160 ("While a grantee who has parted with possession of the property is a necessary party in some jurisdictions, it is usually the case that such a grantee no longer has any interest in the subject matter and therefore is not a necessary party.") Even if Boxwood had a genuine interest in the Painting after it pledged the Painting as collateral, it would have relinquished those claims when it defaulted on the loan and Athena obtained a judgment against it, extinguishing any right of Boxwood to sell the property. *Cf., e.g., In re Peak Hotels & Resorts Grp. Ltd.*, No. 17-12811, 2019 WL 1434316, at *3 (S.D.N.Y. Mar. 31, 2019) (discussing foreclosure as transfer of ownership rights); *In re Mills*, 50 N.Y.S. 966, 970 (Sup. Ct.), *aff'd*, 28 A.D. 258, 50 N.Y.S. 995 (App.

Div. 1898) (same).  Thus, Boxwood's transfer of the Painting to Athena renders Boxwood an intermediate

grantee, and not a necessary party.

5.  Athena's Other Arguments Are Waived

Athena also objects to Magistrate Judge Figueredo's findings on the ground that Athena was an

innocent purchaser for value and is therefore protected from a fraudulent conveyance claim under the

former New York Debtor and Creditor Law § 278.  (Athena Obj. at 23.)  Athena did not make this

argument to Magistrate Judge Figueredo in any of its briefing or at oral argument and has thus waived this

argument.[6]  *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068, 2009 WL 1360686

(S.D.N.Y. May 15, 2009) ("A party's failure to present timely arguments . . . to a magistrate judge prior

to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors,

waives that party's right to present those arguments or materials to the district court." (quoting 14 James

Wm. Moore et al., *Moore's Federal Practice* § 72.11[1][a] (3d ed.2000)); *Auto. Club of New York, Inc. v.

The Port Auth. of New York & New Jersey*, No. 11 iv. 6746, 2015 WL 3404111, at *6 (S.D.N.Y. May 27,

2015) ("[B]ecause this argument was not made before Magistrate Judge Pitman, it is waived.")

Athena also argues that the IPL/Boxwood conveyance should be set aside only partially, to the

extent necessary to satisfy Satfinance's and Delahunty's claims.  While Athena claims that it "consistently

objected to setting aside the IPL-Boxwood transaction as to Athena's property interests in *Humidity*," it

cites a section of its brief that argues only against setting aside the transaction *at all*.  (Athena Rep. at 13.)

Athena points to no direct statement to Magistrate Judge Figueredo that the IPL-Boxwood transaction

could or should be set aside only partially to protect any remaining interests of Athena.  Thus, this

argument is also deemed waived.

---

[6] As Delahunty correctly points out, the brief Athena cites as evidence that the argument was previously raised argues only that *Boxwood*—not Athena—was an innocent purchaser for value. (*See* Athena Rep. at 12; Mem. of L. in Opp. of Summ. J., ECF No. 206, at 17; *see also* Report at 27–32 (addressing Athena's arguments that Boxwood was a good faith purchaser for vailue).)

6. <u>Remaining Analysis</u>

Athena does not object to the remaining portions of the Report, include those finding that New York law applies and that Delahunty and Satfinance are not estopped from disputing any interest Athena has in the painting. (Report at 24–27; 32–36.) This Court has reviewed those sections for clear error and has found none. Thus, this Court adopts Magistrate Judge Figueredo's findings on those issues.

## IV.    CONCLUSION

Satfinance's motion for summary judgment is GRANTED. Satfinance has full legal title in the Painting.

Delahunty's motion for summary judgment is GRANTED to the extent Delahunty seeks a declaration that Athena has no rights or interest in the Painting.

Delahunty's motion is DENIED to the extent it seeks a declaration that it owns a 12.5% ownership interest in the painting that is not impeded by the rights of Satfinance.

The Clerk of Court is directed to close the motions (ECF Nos. 170, 173) accordingly.

Dated:    **MAY 2 9 2025**
      New York, New York


SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge